**IN THE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

KEVIN SOPER,                    *

        *Plaintiffs*,          *

        v.                     *     No. 1:26-cv-00069-JRR

                               *

WILLIE FARRAR, ET AL.,          *

        *Defendants*.          *

  *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM IN SUPPORT OF STATE DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Charlene Notarola, Clerk of the Circuit Court ("Clerk Notarcola"), and Robert Sentman, former Assistant State's Attorney and current Judge of the Circuit Court for Cecil County ("Judge Sentman") (collectively "State Defendants"), by their undersigned counsel, file this memorandum in support of their motion to dismiss the amended complaint.

**INTRODUCTION**

Mr. Soper has filed suit against the State Defendants for violations of 42 U.S.C. §§ 1983 and 1986 and related state tort claims arising out of his arrest and prosecution for disorderly conduct and wiretap charges. (ECF No. 1, ECF No. 21, ¶¶ 13-21.)  Previously, Mr. Soper had filed a case against the State of Maryland arising out of the same arrest and

prosecution[1] (Case No. 1:23-cv-3271-JRR).  The amended complaint is now the controlling pleading.  (ECF No. 21.)

Mr. Soper has filed a fifteen-count amended complaint.  Several of those counts are against the co-defendants only.  The following counts relate to the State Defendants:  Count II (Conspiracy to Interfere with Civil Rights; Judge Sentman); Count III (Conspiracy to Interfere with Civil Rights (1986 claim); Judge Sentman); Count IV (First Amendment Retaliation in Violation of Fourteenth Amendment; Judge Sentman); Count X (Civil Conspiracy; both); Count XI (False Imprisonment; Judge Sentman); Count XII (Malicious Prosecution; Judge Sentman); Count XIII  (Denial of Access to Courts; Clerk Notarcola); Count XIV (Fraud; Clerk Notarcola); and Count XV (Intentional Infliction of Emotional Distress; both).

Claims against the State Defendants are barred by absolute prosecutorial immunity, quasi-judicial immunity, and statutory personnel immunity. Also, the allegations in the complaint fail to state a claim upon which relief can be granted.

## ARGUMENT

### I.    STANDARD OF REVIEW.

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim

---

[1] Circuit Cout for Cecil County, Maryland, Case No. C-07-CR-23-000044 and C-07-CR-23-000258; convictions affirmed, Appellate Court of Maryland, September Term 2024, No. 1311 and No. 1751; petition for writ of certiorari denied, Supreme Court of Maryland, September Term 2025, Petition No. 0453.

showing that the pleader is entitled to relief." While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79 (2009).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to

3

reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## II. THE SUIT MUST BE DISMISSED BECAUSE THE DEFENDANTS ARE IMMUNE FROM SUIT.

### A. JUDGE SENTMAN HAS ABSOLUTE PROSECUTORIAL IMMUNITY.

#### 1. TRIAL PROSECUTORS HAVE ABSOLUTE IMMUNITY FOR CONDUCT ARISING FROM THEIR ROLE IN THE JUDICIAL PROCESS.

At common law, prosecutors are absolutely immune from civil liability for claims arising from their role in the judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976) (noting that prosecutors "enjoyed an absolute immunity from civil liability with respect to their prosecutorial conduct…" based upon the same considerations that underlie judicial and grand jury immunity namely, a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decision instead of exercising the independence of judgment required by his public trust.").

The doctrine of absolute prosecutorial immunity provides that "prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process" *Gill v. Ripley,* 352 Md. 754, 770 (1999). These functions include deciding whether to commence a prosecution, presenting evidence to a grand jury in the quest for an indictment, filing charges, preparing for and presenting the State's case at trial. *State v. Rovin I*, 472 Md. 317, 346 (2021). In *Nero v. Mosby*, the Fourth Circuit noted that the analysis for prosecutorial immunity looks to "the nature of the function performed", rather than the "harm that the conduct may have caused" or even "the question whether it was lawful."

890 F.3d 106, 118 (4th Cir. 2018) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).

In this case, the alleged wrongful actions against Judge Sentman involve his actions as a prosecutor in judicial proceedings. (ECF No. 21, at ¶¶ 13-14, 19.) The acts complained of related to his advisement to law enforcement to seek charges and his failure to provide discovery. Since the functions performed by Judge Sentman related directly to his role in the judicial process absolute immunity must apply. Mr. Soper's labelling these tasks as administrative or investigative is insufficient to defeat absolute prosecutorial immunity.

### 2. ALLEGATIONS OF MISCONDUCT DO NOT DEFEAT ABSOLUTE PROSECUTORIAL IMMUNITY.

Allegations of deliberate misconduct by the prosecutor do not defeat absolute prosecutorial immunity. In *Imbler*, 424 U.S. at 409, the alleged actions of the prosecutor were the presentation of false testimony and suppression of material exculpatory evidence. The Supreme Court recognized the concerns about extending absolute prosecutorial immunity for all prosecutorial conduct stating, "…to be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Imbler,* 424 U.S. at 427. Quoting Judge Learned Hand, the Supreme Court concluded, "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest

officers than to subject those who try to do their duty to the constant dread of retaliation."

*Imbler,* 424 U.S. at 428 citing *Gregoire v. Biddle*, 177 F.2d 579, 581 (C.A.2 1949), *cert. denied*, 339 U.S. 949 (1950).  *See Yaselli v. Goff*, 12 F.2d, at 404; cf. *Wood v. Strickland*, 420 U.S., at 320, 95 S. Ct., at 1000.

Prosecutorial immunity "does not depend on whether a prosecutor acted with malice" or bad intent.   *Rovin*, 472 Md. at 345-46 citing *Gill*, 352 Md. at 770; *see also Buckley*, 509 U.S. at 271.  Public policy justifies immunity for even allegedly malicious acts because prosecutors must have "[i]ndependence of judgment . . . in deciding which cases to prosecute and in the manner." *Gill*, 352 Md. at 767.  If prosecutors had a more limited immunity from "malicious prosecution actions by erstwhile defendants," their worry about "'harassment by unfounded litigation would cause a deflection of the [prosecutors'] energies from [their] public duties.'" *Gill*, 352 Md. at 767 (quoting *Imbler,* 424 U.S. at 422-23 (1976)).  In *Imbler*, the prosecutors were accused of suborning perjury and like the allegations in this case, suppressing favorable evidence.  424 U.S. at 413.  Even if the prosecutors conspired with plaintiff's child's father, prosecutorial immunity would still apply.  *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (affirming prosecutor's entitlement to absolute immunity, where the plaintiff alleged that prosecutor conspired to present false testimony).

Despite the allegations of misconduct in this case, as in *Imbler*, Judge Sentman is entitled to absolute immunity as the conduct at issue arose from his role in the judicial process.  Accordingly, all claims against him must be dismissed. "Where the individual is entitled to a form of absolute immunity, e.g., prosecutorial immunity or judicial immunity,

6

neither the individual nor the State is civilly liable, even if the individual is also entitled to State Personnel Immunity under the MTCA [Maryland Tort Claims Act]." *Rovin*, 472 Md. at 348 citing *Parker v. State*, 337 Md. 271 (1995).

### B. CLERK NOTARCOLA IS ENTITLED TO IMMUNITY.

Mr. Soper's claims against Clerk Notarcola must be dismissed as they are barred by quasi-judicial immunity. Quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Moreover, quasi-judicial immunity "extends to the judge's subordinates for functions that are more administrative in character that have been undertaken pursuant to the judge's explicit direction." *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (alterations and quotation marks omitted).

"[C]ourt clerks are entitled to [absolute] judicial immunity 'when performing tasks that are integral to the judicial process[.]'" *D'Aoust v. Diamond*, 424 Md. 549, 599 (2012) (quoting *Gill v. Ripley*, 352 Md. 754, 771 (1999)). After all, "if immunity were not extended to clerks, courts would face the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts.'" *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir.1989)) (alteration in original); *see also Harmon v. Maryland Dep't of Health & Mental Hygiene*, No. CIV. A. ELH-13-605, 2013 WL 867992, at *4 (D. Md. Mar. 7, 2013) (citing *Sindram*).

The test for quasi-judicial immunity is "(1) whether the official's functions are similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exist to protect against constitutional deprivations." *Howard v. Food Lion Inc.*, 232 F. Supp.2d 585, 595 (M.D. N.C. 2002) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999)). A clerk of court who dockets a judge's order can adopt quasi-judicial immunity. *See Pope v. Fletcher-Hill*, No. 21-CV-2935-LKG, 2021 WL 5882464, at *2 (D. Md. Dec. 10, 2021).

Here, the allegations against Clerk Notarcola pertain to her performance of tasks integral to the judicial process. Mr. Soper claims that Clerk Notarcola improperly recorded the date of a court filing. (ECF No. 21, at ¶¶ 16-17.) The clerk's alleged actions are tasks integral to the judicial process. See *D'Aoust*, 424 Md. at 599 (citation omitted). Therefore, Clerk Notarcola is absolutely immune from the claims set forth in the complaint.

## C. THE STATE DEFENDANTS POSSESS STATUTORY PERSONNEL IMMUNITY.

Maryland's statutory personnel immunity has its source in Md. Code Ann., State Gov't. § 12-105, which provides that "State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article." St. Gov't § 12-105. Section 5-522(b) of the Courts and Judicial Proceedings Article, in turn, provides:

> State personnel, as defined in § 12-101 of the State Government Article, are immune from suits in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1

8

of the State Government Article, even if the damages exceed the limit of that waiver.

Md. Code Ann., Cts & Jud. Proc. ("Courts") §5-522(b).  "The purpose of the [statutory personnel] immunity is not simply to protect judgmental decisions by officials.  Instead, the purpose of the [statutory personnel] immunity is to insulate state employees generally from tort liability if their actions are within the scope of their employment and without malice or gross negligence."  *Cooper v. Rodriguez*, 443 Md. 680, 725 (2015) (quoting *Lee v. Cline*, 384 Md. 245, 260-61 (2004)).

This immunity applies to all defendants.  *See* SG § 12-101(a)(1), (8), (11) (defining "State personnel" for purposes of the MTCA); Courts § 2-401(a) (appellate clerks are State employees); *see also McReady v. O'Malley*, 804 F. Supp. 2d 427, 444 (D. Md. 2011) (holding that state employees were entitled to statutory immunity when sued for making allegedly defamatory remarks within the scope of their employment).

Statutory personnel immunity—effectively a form of statutory state qualified immunity—extends to state tort and constitutional violations committed within the scope of a public employee's duties when the violations are made "without malice or gross negligence."  *Cooper*, 443 Md. at 725 (quoting *Lee*, 384 Md. at 260-61).  The same standards of malice and gross negligence apply to state common-law torts and violations of state constitutional rights.  *Newell v. Runnels*, 407 Md. 578, 640 n. 28 (2009).  Under this standard, a party alleging malice must allege facts demonstrating "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud."  *Lee*, 384 Md. at 268; *see Young v. City of Mt. Rainier*, 238

9

F.3d 567, 578-79 (4th Cir. 2001) (defining gross negligence as conduct "'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinary careful and prudent person under the same circumstances so as to furnish evidence of an indifference to consequences.'" (quoting *State v. Albrecht*, 336 Md. 475, 500 (1994)).

The complaint fails to allege any facts from which malice or gross negligence by any state defendant can be inferred. The complaint's allegations are conclusory rather than factual and fall well short of supporting any inference that the State Defendants acted deliberately or with malice or gross negligence.

As there are no facts to suggest that any state defendant acted with an evil intent or malice, or outside the scope of their public duties, the claims against them are legally insufficient to overcome statutory personnel immunity.

### D. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR ANY FEDERAL CLAIM.

With respect to any purported federal claim in the complaint, the State Defendants are entitled to qualified immunity. As State actors, these defendants are immune from claims for damages if their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has explained that "clearly established" means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

To defeat defendants' qualified immunity defense, plaintiff must demonstrate that defendants violated a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (defendant's right to qualified immunity is not defeated unless, as a preliminary matter, the facts "make out a violation of a constitutional right"). "The protection of qualified immunity applies regardless of whether the government official's error is [']a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.[']" *Id*. at 231 (citations omitted). "Qualified immunity [also] balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. at 231.

Moreover, the defense of qualified immunity is properly addressed at the pleadings stage where, as in this case, the government officials were acting in accordance with established law and policy. *See id*. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) ("Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"). To that end, the Supreme Court has "'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The purpose of the qualified immunity doctrine is to give State officials sufficient "breathing room" to make difficult discretionary decisions. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Al-Kidd*, 563 U.S. at 743).

While Mr. Soper alleges that him civil rights have been violated, he has failed to articulate a violation of any federal constitutional right and has further failed to plead facts that could plausibly establish that the right was clearly established at the time of any alleged violation thereof.  Accordingly, the State Defendants are entitled to qualified immunity as a matter of law as to all federal claims.

**III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Setting aside the various immunities that are available to defendants, the complaint also fails to state a claim upon which relief can be granted and is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  To state a claim for relief, a pleading:

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

The complaint should be dismissed because it fails to satisfy the "plausibility" standard adopted by the Supreme Court.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  This "plausibility" standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  That is, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it

12

stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation omitted).

In applying this standard, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50. "[I]n determining whether to dismiss the complaint," the Court may consider documents attached to the motion to dismiss that are "integral to and explicitly relied on in the complaint," *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) and "[w]hen the bare allegations of the complaint conflict with" those "exhibits or other documents," "the exhibits or documents prevail." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

When stripped of its conclusory statements, the complaint does not state a plausible claim for relief against any state defendant. Although Mr. Soper alleges that his constitutional rights were violated, the complaint does not contain a statement of facts that support these conclusory assertions. The allegations must be ignored because they lack the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wag More Dogs, LLC. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678).

## CONCLUSION

For the foregoing reasons, this Honorable Court should dismiss the amended complaint with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Wendy L. Shiff

_____

WENDY L. SHIFF
Federal Bar No. 09076
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

June 10, 2026                                    *Attorneys for Defendants*
                                                 *Charlene Notarcola and Robert Sentman*

## CERTIFICATE OF SERVICE

I certify that, on this 13th day of April, 2026 the foregoing was served by CM/ECF on all registered CMF users and by first-class mail on the following:

Kevin A. Soper
704 Cedarday Drive
Bel Air, Maryland  21015

/s/ Wendy L. Shiff

_____

Wendy L. Shiff

14

15