# In The Federal District Court for Maryland

| | | |
|---|---|---|
| Kevin A. Soper (Pro Se) | * | |
| | * | |
| v | * | Case Number 1:26-cv-00069 |
| | * | |
| Willie Farrar, Dale Money | * | |
| Robert Sentman, | * | Plaintiff consents to Magistrate Jurisdiction |
| Charlene M. Notarcola | * | Jury Trial Demanded |

## Plaintiff's Response to State Defendant's Motion to Dismiss the Second Amended Complaint

Plaintiff Kevin A. Soper files this Response in opposition to the State Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") (ECF No. 44).

## INDEX

**I. Introduction------------------------------------------------------------------------------------------------ 3**

**II. Standard of Review------------------------------------------------------------------------------------------ 4**

**III. Prosecutor Sentman Is Not Entitled to Absolute Prosecutorial Immunity for His Investigative and Advisory Conduct----------------------------------------------------------------------------------------- 5**

A. The Functional Approach: Investigative Acts Are Not Protected by Absolute Immunity------- 5

B. Sentman Acted as an Investigator, Not an Advocate, When He Directed VA Police to Seek Warrants----------------------------------------------------------------------------------------------------------- **6**

C. Sentman's Conduct Was Not Mere "Advisement" - It Was an Active Scheme to Trick the Court-------------------------------------------------------------------------------------------------------------- **7**

D. The State Removed the "Failure to Provide Discovery" From Its Immunity Argument - A Concession-------------------------------------------------------------------------------------------------------- **8**

E. Maryland Rule 4-212 Does Not Sanction the VA Officers' Misrepresentation------------------- **8**

F. The Grand Jury Indictment Was a Strategic Maneuver to Legitimize Void Warrants and Further Evidence of Malice------------------------------------------------------------------------------------------**10**

G. Prosecutor Sentman's Actions Were Grossly Negligent or Malicious---------------------------- **11**

**IV. Clerk Notarcola Is Not Entitled to Quasi-Judicial Immunity------------------------------------ 12**

A. Falsifying Court Records Is a Ministerial Act, Not a Quasi-Judicial Function----------------- **12**

B. The State Conceded This Point by Dropping the Word "Absolutely"---------------------------- 13

C. Intentional Falsification Is Not Protected Even Under Qualified Immunity-------------------- 13

**V. The State Defendants Are Not Entitled to Statutory Personnel Immunity---------------------- 14**

A. The SAC Alleges Specific Facts Demonstrating Malice and Gross Negligence---------------- 14

B. The State's Own Concessions Undermine Its Statutory Immunity Argument------------------- 16

**VI. The State Defendants Are Not Entitled to Qualified Immunity---------------------------------- 17**

A. Sentman's Actions Violated Clearly Established Constitutional Law---------------------------- 17

B. Notarcola's Actions Violated Clearly Established Constitutional Law-------------------------- 18

**VII. The SAC States a Claim for Intentional Infliction of Emotional Distress-------------------- 20**

A. The Conduct Was Extreme and Outrageous----------------------------------------------------------- 20

B. This Was Not "Routine" Conduct---------------------------------------------------------------------- 22

C. The Emotional Distress Was Severe-------------------------------------------------------------------- 22

**VIII. The Remaining Claims Against the State Defendants State Plausible Claims for Relief-- 23**

A. Count II — Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985) (Sentman)--------- 23

B. Count III — Failure to Prevent Conspiracy (42 U.S.C. § 1986) (Sentman)--------------------- 24

C. Count IV — First Amendment Retaliation (42 U.S.C. § 1983) (Sentman)---------------------- 24

D. Count X — Civil Conspiracy (Both)-------------------------------------------------------------------- 24

E. Count XI — False Imprisonment (Sentman)----------------------------------------------------------- 25

F. Count XII — Malicious Prosecution (Sentman)------------------------------------------------------ 25

G. Count XIII — Denial of Access to Courts (42 U.S.C. § 1983) (Notarcola)-------------------- 26

H. Count XIV — Fraud (Notarcola)------------------------------------------------------------------------ 26

**IX. The SAC States a Claim Upon Which Relief May Be Granted---------------------------------27**

A. The State's "Plausibility" Argument Misapplies Iqbal/Twombly-------------------------------- 27

B. The State's "He Is Responsible for His Own Conviction" Argument Is Irrelevant and Misleading------------------------------------------------------------------------------------------------ 28

C. Discovery Is Needed to Fully Develop the Facts----------------------------------------------------- 28

**X. Conclusion------------------------------------------------------------------------------------------------ 29**

---

# I. Introduction

The State Defendants, Robert Sentman, a former Assistant State's Attorney for Cecil County, Maryland (now a Circuit Court Judge, but who was serving as a prosecutor at the time of the conduct alleged herein) ("Prosecutor Sentman"), and Charlene Notarcola,

Clerk of the Circuit Court for Cecil County ("Clerk Notarcola"), seek dismissal of all claims against them based on four overlapping immunity theories: (1) absolute prosecutorial immunity; (2) quasi-judicial immunity; (3) statutory personnel immunity under the Maryland Tort Claims Act; and (4) qualified immunity. They also argue that the SAC fails to state a claim upon which relief may be granted and that the IIED claim is insufficiently pled.

Each of these arguments fails. The State Defendants' Motion should be denied for the following reasons:

First, Prosecutor Sentman is not entitled to absolute prosecutorial immunity for his investigative and advisory conduct in directing federal VA police officers to seek state arrest and search warrants. The Supreme Court in *Burns v. Reed*, 500 U.S. 478 (1991), squarely held that "advising the police in the investigative phase of a criminal case" is not "intimately associated with the judicial phase of the criminal process" and therefore does not qualify for absolute immunity. The Fourth Circuit has repeatedly confirmed this principle. Sentman's conduct occurred entirely before any probable cause determination, indictment, or judicial proceeding, placing it squarely in the investigative phase.

Second, Clerk Notarcola is not entitled to quasi-judicial immunity because the intentional falsification and backdating of court records is a ministerial act, not a discretionary judicial function. The Fourth Circuit in *McCray v. State of Maryland*, 456 F.2d 1 (4th Cir. 1972), held that "in respect to filing papers, the clerk has no discretion that merits insulation by a grant of absolute immunity; the act is mandatory."

Third, neither State Defendant is entitled to statutory personnel immunity because the SAC alleges specific, particularized facts demonstrating malice and gross negligence—including Prosecutor Sentman's knowing disregard of jurisdictional limits, charge-stacking of nine counts for a single act, refusal to provide discovery after Plaintiff's counsel withdrew, and direction of VA police to obtain void warrants through misrepresentation.

Fourth, neither State Defendant is entitled to qualified immunity because the SAC alleges violations of clearly established constitutional rights.

Fifth, the SAC states a plausible claim for intentional infliction of emotional distress. Maryland law recognizes that "the extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him." *Harris v. Jones*, 281 Md. 560, 569 (1977). The Defendants' abuse of their official authority to orchestrate a baseless prosecution using void warrants, falsify court records, and take advantage of a pro se defendant goes "beyond all possible bounds of decency."

Finally, the State's argument that "it is he, not the State Defendants, who are responsible

for the consequences of that conviction" is both legally irrelevant and factually misleading. The jury acquitted Plaintiff of the Disorderly Conduct charge, the charge that initiated the prosecution. This is a case of a verdict looking for evidence. The State Defendants' Motion should be denied in its entirety.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. In evaluating a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and "must draw all reasonable inferences [from those facts] in favor of the plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

At this stage, the Court may not resolve factual disputes. "The court may not . . . resolve disputes concerning the facts, for that is the function of the jury. *Baber v. Medical College of Virginia*, 2000 WL 586659, at *3 (4th Cir. May 5, 2000). All well-pled factual allegations must be accepted as true, and all reasonable inferences must be drawn in the Plaintiff's favor. The State Defendants' Motion improperly asks the Court to weigh evidence, resolve factual disputes, and make credibility determinations—all of which are improper at the pleading stage.

The SAC contains detailed, specific factual allegations supporting each claim against the State Defendants, including:

(1) the official VA Police report documenting Sentman's directive to VA officers to seek state warrants (SAC ¶ 13, 88, 93);

(2) the jurisdictional statute limiting the Circuit Court's authority, Md. Code Ann., Cts. & Jud. Proc. § 1-501 (SAC ¶ 88, 94, 99);

(3) Sentman's refusal to provide discovery after Plaintiff's counsel withdrew (SAC ¶ 99);

(4) Clerk Notarcola's backdating of a court entry by ten days (SAC ¶¶ 16-17, 108-109); and

(5) the inclusion of Sgt. Money's police experience and employment history in the warrant applications (SAC ¶ 14). These are not "bald accusations" or "mere speculation", they are specific, particularized factual allegations that must be accepted as

true at this stage.

## III. PROSECUTOR SENTMAN IS NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FOR HIS INVESTIGATIVE AND ADVISORY CONDUCT

### A. The Functional Approach: Investigative Acts Are Not Protected by Absolute Immunity

The State Defendants argue that Prosecutor Sentman is entitled to absolute prosecutorial immunity for "his advisement to law enforcement to seek charges and his continuation of the prosecution." (ECF No. 44-1, at 5.) This argument fails because Sentman's advisory conduct falls squarely outside the scope of absolute immunity.

The Supreme Court uses a "functional approach" to determine whether a prosecutor's conduct is entitled to absolute immunity, looking to "the nature of the function performed," rather than "the identity of the actor who performed it," "the harm that the conduct may have caused," or even "the question whether it was lawful." *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)). Absolute immunity applies only to acts "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

The Supreme Court in *Burns v. Reed*, 500 U.S. 478 (1991), directly addressed whether a prosecutor's advice to police is protected by absolute immunity. The Court held:

> "We do not believe, however, that advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process,' *Imbler*, 424 U.S., at 430, that it qualifies for absolute immunity."

*Burns*, 500 U.S. at 494. The Fourth Circuit has repeatedly confirmed this principle. In *Safar v. Tingle*, 859 F.3d 241 (4th Cir. 2017), the court explicitly stated that "a prosecutor is not entitled to absolute immunity when providing advice to police during a criminal investigation." *Safar*, 859 F.3d at 247 (citing *Burns*, 500 U.S. at 492-96). Likewise, in *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), the Fourth Circuit held that "[a]ctions taken by a prosecutor after a probable-cause determination has been made generally are classified as 'advocative' functions" entitled to absolute immunity, implying that actions taken before a probable cause determination, such as advising police to seek warrants, are investigative and not entitled to absolute immunity. *Annappareddy*, 996 F.3d at 139 (quoting *Nero*, 890 F.3d at 118).

The D. Maryland has applied this same framework. In *McKinnon v. Brooke* (D. Md.

2024), the court explained: "Courts must use a 'functional approach' to 'determine whether a particular act is "intimately associated with the judicial phase."'" *McKinnon* (quoting *Nero*, 890 F.3d at 118) (quoting *Imbler*, 424 U.S. at 430). And in *Clark v. Christopher* (D.S.C. 2023), the court held that "prosecutors act outside their roles as advocates when supplying legal advice to police during a pretrial investigation." *Clark* (citing *Burns*, 500 U.S. At 492-96). There can be no question that his actions were pre-trial and non judicial. Prosecutor Sentman, months later, secured indictments for the same charges and added 3 additional Felony Wiretap charges.

### B. Sentman Acted as an Investigator, Not an Advocate, When He Directed VA Police to Seek Warrants

The SAC alleges that "Defendant Sentman, acting in an investigative capacity, advised and directed Defendants Farrar and Money to seek an arrest warrant from the state court." (SAC ¶ 14.) The SAC further alleges that Sentman "knew or should have reasonably known that VA Police are ineligible to obtain warrants from a State Judge pursuant to Md Law." (SAC ¶ 14.) The official VA Police report documents Sentman's directive: he "advised the VA officers to charge the Plaintiff in Maryland." (SAC ¶ 88.)

This conduct occurred entirely before any probable cause determination, indictment, grand jury proceeding, or judicial hearing. Sentman was not presenting evidence to a grand jury, filing charges, or preparing for trial, functions that would be protected by absolute immunity. See *State v. Rovin I*, 472 Md. 317, 346 (2021) (protected functions include "deciding whether to commence a prosecution, presenting evidence to a grand jury in the quest for an indictment, filing charges, preparing for and presenting the State's case at trial"). Rather, Sentman was advising and directing police officers before any prosecution was initiated, an investigative function that the Supreme Court and the Fourth Circuit have held is not entitled to absolute immunity.

The Supreme Court in *Kalina v. Fletcher*, 522 U.S. 118, 129-32 (1997), further confirmed this distinction, holding that a prosecutor who personally swore to the truth of facts in a warrant application was acting as a "complaining witness," not as an advocate, and was therefore not entitled to absolute immunity. While Sentman did not personally swear to the warrant application, he directed the officers who did, and he did so knowing that they lacked the legal authority to seek state warrants. His advisory role in the investigative phase is precisely the type of conduct that *Burns* and *Kalina* hold is not protected by absolute immunity.

### C. Sentman's Conduct Was Not Mere "Advisement" - It Was an Active Scheme to Trick the Court

The State Defendants attempt to characterize Sentman's conduct as routine

"advisement to law enforcement to seek charges." (ECF No. 44-1, at 5.) But the SAC alleges far more. Sentman directed the VA police officers to seek **two** warrants, an arrest warrant and a search warrant, from a Maryland state court, **as VA police officers**. (SAC ¶¶ 13-14, 46, 54.) Critically, the warrant applications contained Sgt. Money's experience and employment history as a police officer, not as an ordinary citizen. By presenting themselves as police officers, with the credentials, training, and authority that implies, the VA officers exploited the judge's natural deference to law enforcement in evaluating probable cause. Many State and Federal Courts affirm a warrant is void ab initio when obtained outside of statutory jurisdiction. The Illinois Court of Appeals articulates it perfectly, "When outside of his or her jurisdiction, a police officer's right to make an arrest is no greater than the right of a private citizen. Lahr, 147 Ill. 2d at 382-839(1992). An extraterritorial arrest will not be upheld if in making the arrest the officer uses the powers of his office to obtain evidence not available to a private citizen outside of his jurisdiction." Lahr, 147 Ill. 2d at 383. People v. Niedzwiedz, 268 Ill. App. 3d 119, 122, 644 N.E.2d 53 (1994).

This is not a case of a prosecutor "routinely speaking with law enforcement officers," as the State argues. (ECF No. 44-1, at 14.) The VA Police Report specifically states the they were told by Prosecutor Sentman to "pursue charges in Maryland", :It is a case of a prosecutor deliberately directing federal officers to misrepresent their authority to a state judge in order to obtain warrants they could not lawfully seek. The distinction is critical: a judge processes a warrant application from a sworn police officer differently than from an ordinary citizen. Maryland law itself recognizes this distinction, Rule 4-212 provides different procedural requirements for peace officers versus "a person." See *State v. Smith*, 305 Md. 489 (1986) ("The application shall contain a verified statement by a peace officer or a statement by a person, signed before the judicial officer under oath.").

The State's argument under Rule 4-212 proves too much. The State argues that "Rule 4-212 does not restrict warrant applications to state certified police officers and the application is open to individuals presenting probable cause." (ECF No. 44-1, at 11.) If "any person" can seek a warrant, then the VA officers had no need to present themselves as police officers with credentials, they could have simply filed as ordinary citizens. Their deliberate choice to invoke police authority under color of state law which they did not possess was not a mere procedural formality; it was a calculated act of deception designed to secure warrants that a judge might not have issued to ordinary citizens. This is not "routine" prosecutorial conduct, it is an active scheme to mislead the court, which goes "beyond all possible bounds of decency."

Sentman, as a Cecil County prosecutor, should have reasonably known the same jurisdictional limits. His failure to do so, or his willful disregard of them, constitutes either gross negligence or deliberate malice.

### D. The State Removed the "Failure to Provide Discovery" From Its Immunity Argument - A Concession

The State's First Motion to Dismiss described Sentman's protected conduct as including "his advisement to law enforcement to seek charges and his failure to provide discovery." (ECF No. 24-1, at 5 (emphasis added).) The State's Second Motion to Dismiss removed the phrase "his failure to provide discovery" and replaced it with "his continuation of the prosecution." (ECF No. 44-1, at 5.) This deliberate removal is a concession that the discovery failure is not protected by absolute immunity.

The SAC alleges that "Defendant Sentman's refusal to comply with his discovery obligations after Plaintiff's counsel withdrew" was "a deliberate act to take advantage of a pro se defendant and hinder his ability to prepare for trial." (SAC ¶ 99.) This is not a conclusory allegation, it describes a specific, deliberate course of conduct targeting a pro se defendant's ability to defend himself. This conduct is further evidence of malice and gross negligence that defeats statutory personnel immunity under the Maryland Tort Claims Act. See *Lee v. Cline*, 384 Md. 245, 268 (2004) (malice requires "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud"). Refusing to provide discovery to a pro se defendant whose counsel has withdrawn is precisely the kind of "knowing and deliberate wrongdoing" that demonstrates malice.

### E. Maryland Rule 4-212 Does Not Sanction the VA Officers' Misrepresentation

The State Defendants argue that "Pursuant to Maryland Rule 4-212, a Veteran's Administration law enforcement officer may seek the issuance of an arrest warrant." (ECF No. 44-1, at 11.) This argument is flawed for several reasons:

First, Rule 4-212 does not grant VA police officers the status of Maryland "peace officers." The rule provides that "a judicial officer may file a statement of charges" upon "written application containing an affidavit showing probable cause." *State v. Smith*, 305 Md. 489 (1986). The rule distinguishes between applications by peace officers and applications by "a person", a non-officer must sign "before the judicial officer under oath," whereas a peace officer's verified statement is treated differently. If the VA officers were acting as ordinary "persons" under Rule 4-212, they should have identified themselves as such, not as police officers with credentials and employment history.

Second, the warrant applications contained Sgt. Money's "experience and employment history as a police officer." This detail is only relevant if the officers were presenting themselves as police officers exercising police authority, not as ordinary citizens filing a citizen's complaint. A non-law enforcement "person" would not include their work history on a warrant affidavit. The inclusion of police credentials in the warrant application is affirmative evidence that the VA officers were not acting under the "any

person" provision of Rule 4-212 but were instead exploiting their apparent authority as police officers under advisement of Prosecutor Sentman.

Third, the State's argument that "this includes Veteran's Administration police officers" (ECF No. 44-1, at 11) is unsupported by any citation to Maryland law defining VA police as "peace officers" or "law enforcement officers" for purposes of Maryland warrant procedures. VA police are federal officers with jurisdiction limited to their stautory federal property. They are not certified Maryland police officers and are not defined as "peace officers" under Maryland law. If the State Legislature wanted to carve out an exception for Veteran's Administrative Police Officers, they would have done so as they have for other Federal Law Enforcement Agencies. And, if the State Legislature had made such an exception, then the Veterans Administration related Federal Statutes and VA Police Policies would reflect an ability to do so. But, Federal Statutes and Policies regarding Veterans' Administration rather restrict VA Police Jurisdiction to Veteran's Administration physical properties, only excepting traffic law enforcement to be pursued in a State Court forum. Those same Federal Statues found in Title 38 also require that those VA Police Officers refer any criminal charging to the Federal Assistant U.S. Attorney before making any charges. Likely to prevent this sort of confusion. The AUSA in this case would likely have told the VA Officer Defendants to write a ticket for Disorderly conduct and it would have ended there. At minimum, the AUSA would have weighed the State Felony Wiretap charges using VA policies(VA Directive 1078), Federal Wiretapping Statutes VA Police Arrest Authority Statutes and policies and The Assimilative Crimes Act. Neither Maryland Law nor federal Statues allow a VA Police Officer to obtain warrants or bring any charges in a State Court.

Fourth, the State's argument fails because it ignores the context. Sentman did not merely advise the VA officers that they "could" seek a warrant, he directed them to do so while knowing, or being deliberately indifferent to, the fact that they lacked the legal authority to seek state warrants as police officers. If "any person" can seek a warrant, as the State argues, then there was no reason for the VA officers to invoke police credentials, unless the purpose was to deceive the judge into treating the application as one from a sworn law enforcement officer rather than an ordinary citizen. This deliberate misrepresentation is what elevates the conduct from mere "advisement" to an actionable abuse of authority. And Prosecutor Sentmans actions caused the VA Police Officer Defendant's to act under color of State law in furtherance of a conspiracy to violate the Plaintiff's Constitutional rights. "To act under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." United States v. Price, 383 U.S. 787, 794 - 795 (1966)

### F. The Grand Jury Indictment Was a Strategic Maneuver to Legitimize Void Warrants and Further Evidence of Malice

After the void ab initio warrants were returned executed, months later Prosecutor Sentman pursued all of the original charges and added additional charges, bringing the total to nine (9) charges, eight (8) felony counts under the Maryland Wiretap Statute and one (1) misdemeanor count of Disorderly Conduct, before a grand jury. (SAC ¶ 98.) The jury ultimately acquitted Plaintiff of the Disorderly Conduct charge, the charge that initiated the prosecution. (SAC ¶ 21.)

This decision to seek a grand jury indictment was not a legal necessity, it was a strategic maneuver. Under Maryland law, there is no constitutional or statutory requirement that charges be brought by grand jury indictment. The Maryland Court of Appeals has confirmed: "There is no provision of the Maryland Constitution requiring an indictment in any case." *State ex rel. Butler v. Warden of Maryland Penitentiary*, 195 Md. 713, 716 (1950). Maryland law provides that "whether to seek indictment or to charge by information is now at the election of the State's Attorney." *Moaney v. State*, 28 Md. App. 408, 415 (1975). The State's Attorney may charge by criminal information as an alternative to grand jury indictment. *State v. Samples*, 229 Md. App. 531 (2016); *State v. Graziano*, 71 Md. App. 652 (1987).

Prosecutor Sentman's deliberate choice to seek a grand jury indictment, rather than charging by information using the warrants, takes on added significance in light of the void *ab initio* warrants. By presenting the case to a grand jury, Sentman obtained a new charging document (the indictment) that was independent of the original void warrants. This was likely a calculated move to insulate the prosecution from challenges to the defective warrants, which is exactly what it did. As the SAC alleges, the warrants were obtained through misrepresentation of the VA officers' authority. A grand jury indictment, obtained after the fact, could not cure the original jurisdictional defect or the deception used to secure the warrants, it could only obscure it.

Moreover, the charge-stacking, from the original charges to a total of nine (9) charges for a single act of protected speech, demonstrates a punitive rather than prosecutorial motive. The decision to escalate from the initial charges to eight (8) felony counts and one (1) misdemeanor count, and to seek a grand jury indictment when one was not legally required, supports the inference that Sentman was motivated by malice or personal animus rather than a legitimate prosecutorial purpose. (SAC ¶ 99) But for the Warrants obtained, no further evidence to support the addition charges would have been available to Prosecutor Sentman. Discovery will reveal the full extent of Sentman's decision-making process in pursuing the grand jury indictment, including any communications regarding the void warrants and the decision to add charges.

## G. Prosecutor Sentman's Actions Were Grossly Negligent or Malicious

Even if Sentman's advisory conduct were entitled to qualified immunity (which it is not), the SAC alleges specific facts demonstrating that his actions were grossly negligent or malicious:

1. **Knowing disregard of jurisdictional limits**: A prosecutor's "fundamental duty is to know the jurisdictional limits of his own authority as set forth in the State's foundational statutes." (SAC ¶ 88.) Md. Code Ann., Cts. & Jud. Proc. § 1-501 grants Maryland circuit courts general jurisdiction "except where by law jurisdiction has been limited or conferred exclusively upon another tribunal." The Perry Point VA facility is a major federal installation within Cecil County. Sentman's failure to recognize, or willful disregard of, this jurisdictional limit constitutes an abdication of his professional duties. (SAC ¶ 88.)
2. **Charge-stacking and grand jury maneuver**: After the void warrants were returned executed, Sentman pursued all original charges and added additional charges, bringing the total to nine (9) charges, eight (8) felony counts under the Maryland Wiretap Statute and one (1) misdemeanor count of Disorderly Conduct, before a grand jury. (SAC ¶ 98.) The jury acquitted Plaintiff of the Disorderly Conduct charge. (SAC ¶ 21.) Maryland law does not require a grand jury indictment, "whether to seek indictment or to charge by information is now at the election of the State's Attorney." *Moaney v. State*, 28 Md. App. 408, 415 (1975). Sentman's deliberate choice to seek a grand jury indictment, after the void warrants were returned and months after the initial charges, was likely a calculated maneuver to obtain a new charging document independent of the defective warrants, insulating the prosecution from challenges to the void *ab initio* warrants. "This tactic serves no legitimate prosecutorial purpose and is instead designed to intimidate, harass, and financially overwhelm a defendant in retaliation for protected speech." (SAC ¶ 99.)
3. **Refusal to provide discovery**: Sentman's "refusal to comply with his discovery obligations after Plaintiff's counsel withdrew" was "a deliberate act to take advantage of a pro se defendant and hinder his ability to prepare for trial." (SAC ¶ 99.)
4. **Direction of VA police to obtain void warrants**: Sentman "advised and directed" VA officers to seek warrants they "knew or should have reasonably known" they were "ineligible to obtain." (SAC ¶ 14.)
5. **Strategic use of grand jury to legitimize void warrants**: Sentman pursued a grand jury indictment for nine (9) charges when Maryland law did not require one, obtaining a new charging document independent of the void warrants and adding additional charges to escalate the prosecution. (SAC ¶ 98; see Section III.F supra.)

These are not conclusory allegations of "malice", they are specific factual allegations of deliberate, wrongful conduct. Discovery will further reveal the full extent of the conspiratorial agreement between Sentman and the VA officers, Sentman's knowledge of the jurisdictional limits, his state of mind in directing the officers to misrepresent their authority, and his decision-making process in pursuing the grand jury indictment.

## IV. CLERK NOTARCOLA IS NOT ENTITLED TO QUASI-JUDICIAL IMMUNITY

### A. Falsifying Court Records Is a Ministerial Act, Not a Quasi-Judicial Function

The State Defendants argue that Clerk Notarcola is entitled to quasi-judicial immunity because her alleged actions, "improperly recorded the date of a court filing" (ECF No. 44-1, at 8), are "tasks integral to the judicial process." This argument fails because intentional falsification of court records is a ministerial act, not a discretionary judicial function.

The Fourth Circuit has squarely addressed this issue. In *McCray v. State of Maryland*, 456 F.2d 1 (4th Cir. 1972), the court held:

> "In the instant case, in respect to filing papers, the clerk has no discretion that merits insulation by a grant of absolute immunity; the act is mandatory... His duty, although associated with the court system, is not quasi-judicial... Clerical duties are generally classified as ministerial... and the act of filing papers with the court is as ministerial and inflexibly mandatory as any of the clerk's responsibilities."

*McCray*, 456 F.2d at 3-4. The Fourth Circuit thus held that a clerk's duties related to filing and recording are "ministerial and inflexibly mandatory", not quasi-judicial, and are not entitled to absolute immunity.

Other courts have confirmed this principle. In *Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004), the court held that a clerk's "duty to maintain the official record was purely ministerial; he had no authority to resolve disputes between parties or to make substantive determinations on the worth or merits of a filing." *Snyder*, 380 F.3d at 288-89. In *Kane v. Yung Won Han*, 550 F. Supp. 120 (E.D.N.Y. 1982), the court held that a clerk who allegedly tampered with court records was "not entitled to judicial or absolute immunity" because the alleged conduct, tampering with court records, constituted "purely ministerial tasks." *Kane*, 550 F. Supp. at 125. In *Stahl v. Klotz* (E.D. Cal. 2020), the court held that "the preparation of accurate minute orders is essentially ministerial, not adjudicative, and therefore not covered by quasi-judicial immunity."

The key distinction is between discretionary and ministerial acts. Quasi-judicial immunity extends to clerks who exercise "discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). But when a clerk performs "ministerial tasks", acts that are "mandatory" and involve no discretion, quasi-judicial immunity does not apply. *McCray*, 456 F.2d at 3-4. The duty to accurately record and maintain court filings is precisely such a ministerial, mandatory duty.

The State Defendants cite *D'Aoust v. Diamond*, 424 Md. 549, 599 (2012), for the proposition that court clerks are entitled to absolute immunity "when performing tasks that are integral to the judicial process." But *D'Aoust* addresses routine clerical functions, not the intentional falsification or backdating of court records. There is a fundamental difference between a clerk who performs her duties accurately and one who deliberately alters the official record to obstruct a litigant's appellate rights. The former is integral to the judicial process; the latter subverts it.

### B. The State Conceded This Point by Dropping the Word "Absolutely"

The State's First Motion to Dismiss stated: "Clerk Notarcola is absolutely immune from the claims." (ECF No. 24-1, at 6 (emphasis added).) The State's Second Motion to Dismiss states: "Clerk Notarcola is immune from the claims." (ECF No. 44-1, at 7 (emphasis added).) The deliberate removal of the word "absolutely" is a tacit concession that absolute or quasi-judicial immunity may not apply to Clerk Notarcola's conduct.

### C. Intentional Falsification Is Not Protected Even Under Qualified Immunity

Even if Clerk Notarcola were entitled to qualified immunity (which she is not, for the reasons stated below), intentional falsification of court records is not a "good faith" act. The SAC alleges specific facts demonstrating that Notarcola:

1. **Intentionally altered records related to Plaintiff's Motion for Removal of the Judge** (SAC ¶ 108);
2. **Intentionally backdated a court entry related to a Recusal Motion by ten days** to "obstruct and confuse the record" (SAC ¶ 108; see also SAC ¶ 17); and
3. **Acted for the purpose of preventing Plaintiff from pursuing timely and effective appeals** (SAC ¶ 109).

These are not discretionary judicial functions. They are deliberate alterations of the official court record, acts that are ministerial, mandatory, and devoid of legitimate judicial discretion. The *D'Aoust* standard for quasi-judicial immunity does not extend to a clerk who falsifies records, because such conduct is not "integral to the judicial process", it is antithetical to it.

The SAC also alleges that Notarcola's act of altering official court records "was a non-

discretionary, ministerial function" and that "such actions are not protected by absolute or quasi-judicial immunity." (SAC ¶ 110.) This is a correct statement of law, supported by *McCray* and the other authorities cited above.

## V. THE STATE DEFENDANTS ARE NOT ENTITLED TO STATUTORY PERSONNEL IMMUNITY

### A. The SAC Alleges Specific Facts Demonstrating Malice and Gross Negligence

The State Defendants argue that the SAC "fails to allege any facts from which malice or gross negligence by either State Defendant can be inferred" and that the allegations are "conclusory rather than factual." (ECF No. 44-1, at 9-10.) This argument mischaracterizes the SAC.

Under Maryland law, statutory personnel immunity applies to acts "made without malice or gross negligence." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). To overcome this immunity, a plaintiff must allege facts demonstrating "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Lee v. Cline*, 384 Md. 245, 268 (2004). Gross negligence requires conduct "so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinary careful and prudent person under the same circumstances so as to furnish evidence of an indifference to consequences." *State v. Albrecht*, 336 Md. 475, 500 (1994); *Young v. City of Mt. Rainier*, 238 F.3d 567, 578-79 (4th Cir. 2001).

The State Defendants cite *Houghton v. Forest*, 183 Md. App. 15, 28 (2008), for the proposition that "the use of 'magic words' is insufficient to state a claim for malice or gross negligence." (ECF No. 44-1, at 10.) But the SAC does not rely on "magic words", it alleges specific, particularized facts demonstrating deliberate misconduct by both State Defendants:

**As to Prosecutor Sentman:**

1. **Knowing disregard of jurisdictional limits**: The SAC alleges that Sentman "willfully ignored the plain text of Maryland law" by initiating a state prosecution for crimes occurring on "the exclusive federal property of the Perry Point Veteran's Hospital facility." (SAC ¶ 99.) The SAC specifically identifies the jurisdictional statute, Md. Code Ann., Cts. & Jud. Proc. § 1-501, and explains how it limits the Circuit Court's jurisdiction "where jurisdiction has been 'conferred exclusively upon another tribunal.'" (SAC ¶ 88.) Sentman, as a Cecil County prosecutor, should have known the same. This is not a conclusory allegation, it is a specific factual assertion that Sentman violated a known statutory limit.

2. **Charge-stacking and grand jury maneuver**: The SAC alleges that Sentman secured "2 grand jury indictments against the Plaintiff for eight (8) counts under the Maryland Wiretap Statute and one count of Disorderly Conduct", nine separate charges for a single act of protected speech. (SAC ¶ 98.) The SAC alleges that "this tactic serves no legitimate prosecutorial purpose and is instead designed to intimidate, harass, and financially overwhelm a defendant in retaliation for protected speech." (SAC ¶ 99.) Critically, Maryland law does not require a grand jury indictment, Sentman could have charged by criminal information. *State ex rel. Butler v. Warden of Maryland Penitentiary*, 195 Md. 713, 716 (1950) ("There is no provision of the Maryland Constitution requiring an indictment in any case."); *Moaney v. State*, 28 Md. App. 408, 415 (1975) ("Whether to seek indictment or to charge by information is now at the election of the State's Attorney."). Sentman's deliberate choice to seek a grand jury indictment, after the void warrants were returned executed and months after the initial charges, was likely a calculated maneuver to obtain a new charging document independent of the defective warrants, thereby insulating the prosecution from challenges to the void *ab initio* warrants. This is a specific factual allegation of deliberate overcharging and procedural manipulation for an improper purpose.
3. **Refusal to provide discovery**: The SAC alleges that Sentman's "refusal to comply with his discovery obligations after Plaintiff's counsel withdrew" was "a deliberate act to take advantage of a pro se defendant and hinder his ability to prepare for trial." (SAC ¶ 99.) This alleges a specific act of deliberate misconduct targeting a pro se defendant's ability to defend himself, not a "magic word" recitation of malice.
4. **Directing VA police to obtain void warrants**: The SAC alleges that Sentman "advised and directed" VA officers to seek state warrants they "knew or should have reasonably known" they were "ineligible to obtain." (SAC ¶ 14.) This alleges specific conduct, the direction of federal officers to obtain warrants through misrepresentation of their authority.

**As to Clerk Notarcola:**

1. **Intentional falsification of court records**: The SAC alleges that Notarcola "intentionally falsified court records to prevent Plaintiff from appealing a critical motion." (SAC ¶ 16.) The SAC identifies two specific instances: (a) alteration of records related to the Motion for Removal of the Judge, and (b) backdating a court entry related to the Recusal Motion by ten days. (SAC ¶¶ 16-17, 108.)
2. **Deliberate obstruction of appeals**: The SAC alleges that Notarcola's falsification was done "for the purpose of defrauding the Plaintiff of his legal rights,

specifically his right to appeal and to have his motions adjudicated properly." (SAC ¶ 117.)

These allegations are not "conclusory." They identify specific conduct, specific dates, specific documents, and specific motives. They allege "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud", the exact standard set forth in *Lee v. Cline*. The State Defendants' assertion that the SAC "fails to assert why the defendants would want to harm him" (ECF No. 44-1, at 10) ignores the SAC's explicit allegation that the prosecution was initiated "out of personal animus and malice" toward Plaintiff's "protected First Amendment activities" (SAC ¶ 122) and that the conspiracy was designed "to retaliate against him and silence his protected speech." (SAC ¶ 87.) The long line of adverse actions and rush to prosecute, in totality, demonstrate "personal animus and malice". The VA Officers were offended by the Plaintiff videoing his VA Doctor's appointments, as was the Prosecutor. This was not a prosecution for a legitimate purpose in the State's interest, this is a case of a verdict looking for evidence.

### B. The State's Own Concessions Undermine Its Statutory Immunity Argument

The State Defendants have made two significant concessions in their Second Motion to Dismiss that undermine their statutory immunity argument:

1. **Removal of "failure to provide discovery"**: The State's First Motion to Dismiss included "his failure to provide discovery" as part of Sentman's protected conduct. The Second Motion removed this language. This is a concession that the discovery failure may not be protected by absolute immunity, and it is a concession that the discovery refusal is evidence of malice or gross negligence that defeats statutory personnel immunity.
2. **Removal of "absolutely" from Notarcola's immunity claim**: The State's First Motion stated Notarcola was "absolutely immune." The Second Motion states she is "immune." This is a concession that absolute or quasi-judicial immunity may not apply, and, if absolute immunity does not apply, the statutory personnel immunity analysis turns on whether Notarcola acted with malice or gross negligence, which the SAC specifically alleges.
3. **Addition of IIED section**: The State's Second Motion adds an entirely new section attacking the IIED claim, suggesting they recognize that the remaining claims, including the state tort claims, have sufficient merit to warrant separate attack.

## VI. THE STATE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED

## IMMUNITY

### A. Sentman's Actions Violated Clearly Established Constitutional Law

The State Defendants argue that Sentman is entitled to qualified immunity because his actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (ECF No. 44-1, at 11.) This argument fails because the constitutional violations alleged in the SAC were clearly established at the time of Sentman's conduct.

First, it was clearly established that a prosecutor acting in an investigative capacity advising and directing police to seek warrants before any probable cause determination, is not entitled to absolute immunity and is subject to liability for unconstitutional conduct. *Burns v. Reed*, 500 U.S. 478, 492-96 (1991); *Safar v. Tingle*, 859 F.3d 241 (4th Cir. 2017). Sentman cannot claim that his advisory conduct was protected by "clearly established law" when the Supreme Court and the Fourth Circuit have held that such conduct falls outside the scope of absolute immunity.

Second, it was clearly established that VA police officers are federal officers, not Maryland peace officers. The VA officers' authority is limited to federal property and federal law. Sentman, as a Cecil County prosecutor, should have known the same jurisdictional limits. No reasonable prosecutor would believe that directing federal officers to misrepresent themselves as state police officers to obtain state warrants was lawful. “Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of § 1983 actions”. Dennis v. Sparks, 449 U.S. 24 (1980)

Third, it was clearly established that the First Amendment protects the right to film government officials in public areas. The Plaintiff's filming at the Perry Point VA facility was "protected by the First Amendment" and "was specifically lawful pursuant to VA Policy 1078." (SAC ¶ 11.) Sentman's decision to direct VA officers to seek warrants and prosecute Plaintiff for this protected activity constitutes First Amendment retaliation, a clearly established constitutional violation. “Livestreaming a police traffic stop is speech protected by the First Amendment,” pointing out that “recording police encounters creates information that contributes to discussion about governmental affairs.” Sharpe v. Winterville Police Department (2023) The First, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh_Circuits have all already endorsed the right to record government officials in the course of their duties.

Fourth, a simple Google search by Prosecutor Sentman could have avoided the Constitutional violations the Plaintiff was subjected to. Maryland may have some limited concurrent jurisdiction at Perry Point but a Maryland Prosecutor should have known that the VA Police should not be directed to a Maryland Judge to secure warrants

posing as Maryland law enforcement. It could only be due to willful neglect or malice.

Fifth, no reasonable prosecutor could believe that orchestrating judicial deception via proxies was reasonable or lawful. “Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of § 1983 actions”. Dennis v. Sparks, 449 U.S. 24 (1980). “An analysis of state action is based on a two-part test. The loss of property must have resulted from the state's exercise of a right or privilege, a rule of conduct that the state imposes, or the actions of a person for whom the state is responsible. If that element is satisfied, courts should consider whether the party responsible for the deprivation of property was a state actor, which can be a state official, someone who cooperates or receives assistance from a state official, or someone whose conduct can be attributed to the state. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922 (1982) In Rossignol v. Voorhaar, 316 F.3d 516 (4th Cir. 2003), the Fourth Circuit clarified that even if an officer is technically off-duty or out of jurisdiction, their actions are "under color of law" if the total context of their behavior is purified by the "real or apparent authority" of the state. Because they are carrying out a directive from a State Prosecutor to execute warrants, they are explicitly cloaked in state authority. The State Prosecutor, being the architect of the investigation and direction to secure two warrants void ab ibitio, cannot rely on qualified immunity for a defense.

**B. Notarcola's Actions Violated Clearly Established Constitutional Law**

It was clearly established that a court clerk's intentional falsification of court records to obstruct a litigant's appellate rights violates the right of access to courts guaranteed by the Due Process Clause of the Fourteenth Amendment. The right of access to courts is "fundamental" and "deeply rooted in this Nation's constitutional tradition." The SAC alleges that Notarcola "intentionally and in bad faith deprived the Plaintiff of his clearly established constitutional right of access to the courts." (SAC ¶ 107.)

A reasonable official in Notarcola's position would have known that intentionally falsifying court records, including backdating entries by ten days and altering records related to pending motions, constitutes a violation of a litigant's constitutional rights. The SAC alleges that "a reasonable official in her position would have known that intentionally falsifying court records to prevent a litigant from pursuing an appeal is unlawful." (SAC ¶ 111.)

The State Defendants argue that. “Mr. Soper was able to pursue appeals of his criminal conviction.”(ECF No. 44-1, at 11-12.) But the SAC does not allege that Plaintiff was entirely denied the ability to appeal, it alleges that Notarcola's falsification of the record "prevented [Plaintiff] from pursuing timely and effective appeals" and "forced him to litigate based on a fraudulent record." (SAC ¶ 109.) The fact that Plaintiff ultimately pursued some appeals does not negate the constitutional injury caused by Notarcola's deliberate falsification of the official court record.

Immunity is an affirmative defense, not a Plaintiff pleading requirement, and cannot defeat a plausibly pleaded complaint as the Rule 12(b)(6) stage.

The State's Motion to Dismiss erroneously treats qualified immunity as a heightened pleading standard that Plaintiff must overcome within the four corners of the Complaint. This position fundamentally misconstrues federal pleading standards. The United States Supreme Court has repeatedly established that qualified immunity is an affirmative defense, and "the burden of pleading it rests with the defendant." Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). A plaintiff is under no obligation to anticipate or "plead around" an immunity defense in their initial complaint.

Consequently, the Fourth Circuit explicitly recognizes that when a qualified immunity defense is raised at this early procedural stage, "the defense faces a formidable hurdle and is usually not successful." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 396 (4th Cir. 2014); accord Harrold v. Hagen, No. 24-2073 (4th Cir. 2026) (emphasizing that summary dismissal under Rule 12(b)(6) on qualified immunity grounds is appropriate only when the face of the complaint fails to state a claim that is plausible). A motion to dismiss tests only the legal sufficiency of the complaint under the standard notice-pleading rules. At this procedural juncture, a court must accept all factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff.

Dismissal at the Rule 12(b)(6) stage on qualified immunity grounds is strictly limited to cases where the face of the complaint *unambiguously* establishes that the defense applies. Where the complaint states a legally sufficient, plausible narrative of a constitutional violation, the inquiry must proceed.

Here, Plaintiff's Complaint does not merely hint at a violation; it sets forth a highly specific, plausible narrative backed by documentary evidence. Plaintiff has alleged that Defendant Sentman stepped outside his judicial role to direct an investigative fishing expedition, using federal VA Police officers, who held no territorial state authority under Maryland Rule 4-601 yet asserted it, to cross out of their federal enclaves and execute an unlawful phone search and arrest.

Because these detailed, non-conclusory allegations state a plain, plausible violation of the First and Fourth Amendments, Defendant Sentman cannot use a Rule 12(b)(6) motion to prematurely shield himself from liability. The evaluation of his assertion of qualified immunity requires a factual record that can only be developed through discovery. Accordingly, the State's motion must be denied

## VII. THE SAC STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. The Conduct Was Extreme and Outrageous

The State Defendants argue that the SAC's IIED claim fails because it "provided conclusory allegations, but no specific facts, to show that the defendants' conduct was intentional and reckless, extreme and outrageous and led to severe and extreme emotional distress." (ECF No. 44-1, at 13-14.) This argument mischaracterizes the SAC and ignores Maryland law regarding abuse of official authority.

Under Maryland law, an IIED claim requires: (1) intentional or reckless conduct which is (2) extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Carter v. Aramark Sports and Entertainment Services, Inc.*, 153 Md. App. 210, 245 (2003) (citing *Manhiki v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (quoting *Harris v. Jones*, 281 Md. 560 (1977))). The State Defendants correctly note that the standard is "rigorous and difficult to satisfy." (ECF No. 44-1, at 14) (citing *Kentucky Fried Chicken v. Weathersby*, 326 Md. 663, 670 (1992)). But the standard was met here.

Critically, Maryland law recognizes that the "extreme and outrageous character of the defendant's conduct **may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him**." *Harris v. Jones*, 281 Md. 560, 569 (1977) (emphasis added) (citing Restatement (Second) of Torts § 46, comment e). The *Harris* court further noted: "In cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts." *Harris*, 281 Md. at 569.

The D. Maryland has applied this principle in cases involving abuse of official authority. In *Thomas v. Baltimore Police Department* (D. Md. 2025), the court denied a motion to dismiss an IIED claim where officer defendants "used their authority as officers to falsify evidence" of the plaintiff's participation in a crime, resulting in wrongful imprisonment. The court found that the defendants' positions as law enforcement officers "enhance[d] the alleged extreme and outrageous character of their conduct" under the *Harris* abuse-of-authority standard. Similarly, in *Burgess v. Balt. Police Dep't*, 300 F. Supp. 3d 696 (D. Md. 2018), the court found that an IIED claim could survive where the defendant concealed exculpatory evidence and ignored a confession to the very crime for which the plaintiff was wrongfully imprisoned.

In *Wright v. Audisio* (D. Md. 2022), the court held that "in evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and their susceptibility to emotional distress, and the relationship between the defendant and plaintiff." Here, the context is critical: the State Defendants used their official authority to orchestrate a baseless prosecution, falsify court records, and take advantage of a pro se defendant who has a statutory right to access The Veteran's Administration properties,

particularly for his PTSD and mental health treatment, all in retaliation for protected First Amendment activity.

**B. This Was Not "Routine" Conduct**

The State Defendants attempt to minimize the IIED claim by arguing: "Prosecutors routinely speak with law enforcement officers. They routinely prosecute cases. Clerks routinely make docket entries." (ECF No. 44-1, at 14.) This argument is a transparent mischaracterization of the SAC's allegations. There is nothing "routine" about the conduct alleged here:

1. **Directing federal officers to misrepresent themselves as state police officers to trick a judge** into issuing warrants is not routine.
2. **Obtaining two void warrants** based on false representations of authority is not routine.
3. **"Charge-stacking" nine separate counts for a single act of protected speech** is not routine, it is a tactic designed to "intimidate, harass, and financially overwhelm a defendant." (SAC ¶ 99.)
4. **Strategically seeking a grand jury indictment when Maryland law does not require one** to obtain a new charging document independent of the void warrants is not routine, it is a calculated maneuver to insulate a prosecution built on defective warrants from judicial scrutiny. (SAC ¶ 98.) Maryland law provides that "whether to seek indictment or to charge by information is now at the election of the State's Attorney." *Moaney v. State*, 28 Md. App. 408, 415 (1975). Sentman's deliberate escalation to a grand jury indictment, adding charges to reach nine (9) total counts, demonstrates a punitive motive, not a legitimate prosecutorial purpose.
5. **Refusing to provide discovery to a pro se defendant after his counsel withdrew** is not routine, it is "a deliberate act to take advantage of a pro se defendant and hinder his ability to prepare for trial." (SAC ¶ 99.)
6. **Falsifying and backdating court records by ten days to obstruct appeals** is not routine, it is an intentional act of record tampering designed to deny a litigant access to the courts.

The State Defendants' characterization of these actions as "routine" would render the IIED tort meaningless whenever the defendant holds a government position. Maryland law does not grant government officials immunity from IIED liability simply because their wrongful conduct occurred in the course of their official duties. To the contrary, *Harris* holds that abuse of official authority enhances the outrageousness of the conduct.

The SAC alleges that "the conduct of all Defendants, including knowingly initiating a prosecution with 2 void warrants, specifically out of personal animus and malice,

falsifying official records to obstruct justice, and pursuing the unlawful case through trial, was intentional, reckless, extreme, and outrageous." (SAC ¶ 122.) The SAC further alleges that "the Defendants' conduct exceeds all possible bounds of decency and is atrocious and utterly intolerable in a civilized community." (SAC ¶ 123.) These allegations, combined with the specific factual context described above, are sufficient to state a plausible IIED claim.

### C. The Emotional Distress Was Severe

The State Defendants argue that the SAC's references to "anxiety, humiliation, loss of security, workplace harassment, and reputational harm" are insufficient to allege severe emotional distress. (ECF No. 44-1, at 15.) But the SAC alleges far more than generic emotional distress:

The SAC alleges that "as a direct and proximate result of the Defendants' extreme and outrageous conduct, the Plaintiff has suffered **severe and disabling emotional distress**." (SAC ¶ 125 (emphasis added).) The SAC also alleges the specific harms that caused this distress:

- Plaintiff was wrongfully prosecuted and convicted on charges initiated with void warrants (SAC ¶¶ 20, 98);
- Plaintiff was sentenced to 90 days incarceration (suspended) and 8 months of supervised probation, a "significant and continuing restraint on his liberty" (SAC ¶ 20);
- Plaintiff was forced to proceed pro se at trial after his counsel withdrew (SAC ¶ 18);
- Plaintiff was denied discovery by the prosecutor, deliberately taking advantage of his pro se status (SAC ¶ 99);
- Plaintiff's cellular phone was seized pursuant to a void search warrant and not returned until after trial (SAC ¶¶ 54, 72);
- Plaintiff was prevented from pursuing timely and effective appeals due to the Clerk's falsification of court records (SAC ¶ 109);
- Plaintiff suffered loss of liberty, the stigma and restrictions of a wrongful prosecution and conviction, and severe emotional distress (SAC ¶ 103).

The Fourth Circuit in *Gantt v. Security USA, Inc.*, 356 F.3d 547 (4th Cir. 2004), held that "recurring nightmares and other mental health issues" and "anxiety attacks" were sufficient to satisfy the "severe" distress element of an IIED claim under Maryland law. Here, the distress was not merely "anxiety" or "humiliation", it was the result of a deliberate scheme using the authority of the state to punish protected speech, resulting in wrongful prosecution, conviction, loss of liberty, and ongoing supervision. The SAC's allegations of "severe and disabling emotional distress" (SAC ¶ 125), combined with the

specific factual context of wrongful prosecution and conviction, satisfy the pleading standard for severe emotional distress at the motion to dismiss stage. Imagine the emotional toll a disruption in mental health care must feel like.

The State Defendants cite *Carter v. Aramark*, 153 Md. App. at 247, for the proposition that a "glaring lack of specificity" as to the severity of distress warrants dismissal. (ECF No. 44-1, at 14.) But *Carter* involved general, unspecified allegations of emotional distress, nothing comparable to the specific, documented harms alleged here (wrongful prosecution, conviction, incarceration, supervised probation, seizure of property, denial of appellate rights). The SAC's allegations are far more specific than those in *Carter*.

## VIII. The Remaining Claims Against the State Defendants State Plausible Claims for Relief

The State Defendants' Motion attacks the SAC through blanket immunity arguments and a dedicated section on IIED. But the State Defendants do not separately address Counts II, III, IV, X, XI, XII, XIII, and XIV. Each of these counts states a plausible claim for relief, as set forth below. The failure to specifically address these counts does not entitle the State Defendants to dismissal.

### A. Count II - Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985) (Sentman)

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy of two or more persons; (2) motivated by a class-based, invidiously discriminatory animus; (3) to deprive the plaintiff of equal enjoyment of rights secured by law; (4) resulting in injury to the plaintiff; (5) as a consequence of an overt act committed in connection with the conspiracy. Simmons v. Poe, 47 F.3d 1370, 1376-77 (4th Cir. 1995); City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 651 (8th Cir. 1989).

The SAC alleges each element. First, the SAC alleges a conspiracy between Sentman and VA officers Farrar and Money. (SAC ¶¶ 27-30.) Second, the SAC alleges the conspiracy was motivated by animus toward Plaintiff's First Amendment-protected activity, filming government officials, which constitutes class-based discriminatory animus against a citizen journalist exercising his constitutional rights. (SAC ¶¶ 28-29.) Third, the object of the conspiracy was to deprive Plaintiff of his First and Fourth Amendment rights. (SAC ¶ 29.) Fourth, the SAC alleges overt acts: agreeing to initiate a baseless prosecution, obtaining two void warrants, and pursuing the charges. (SAC ¶ 30.) Fifth, Plaintiff suffered injury to his person and property. (SAC ¶ 31.) Count II states a plausible claim.

### B. Count III - Failure to Prevent Conspiracy (42 U.S.C. § 1986) (Sentman)

A § 1986 claim requires: (1) the defendant had actual knowledge of a § 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the conspiracy; (3) the defendant neglected or refused to do so; and (4) a wrongful act was committed. Clark v. Clabaugh, 20 F.3d 1290, 1298 (3d Cir. 1994). A § 1986 claim is derivative of a § 1985 claim; if the underlying § 1985 conspiracy is adequately alleged, the § 1986 claim satisfies its prima facie requirements. Trerice v. Pedersen, 769 F.2d 1398, 1402 (9th Cir. 1985); Jones v. City of Wilmington, 299 F. Supp. 2d 380, 395 (D. Del. 2004) ("to adequately establish a violation of Section 1986, a plaintiff must show the existence of a Section 1985 conspiracy").

The SAC alleges that Sentman "had intimate knowledge that the wrongs conspired to be done . . . were about to be committed," "had the power to prevent or aid in preventing the commission of these wrongs," and "neglected and refused to do so." (SAC ¶¶ 33-36.) As a prosecutor, Sentman had the authority to decline prosecution and to advise the VA officers that they lacked jurisdiction to seek state warrants, power he failed to exercise, instead directing the opposite. Count III states a plausible claim.

### C. Count IV - First Amendment Retaliation (42 U.S.C. § 1983) (Sentman)

To state a First Amendment retaliation claim under § 1983, a plaintiff must show: (1) he engaged in protected First Amendment activity; (2) the defendant took action that adversely affected his First Amendment rights; and (3) a causal relationship existed between the protected activity and the defendant's conduct. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005); Bailey-El v. Hous. Auth. of Balt. City, 185 F. Supp. 3d 661 (D. Md. 2016).

The SAC alleges each element. First, Plaintiff was "peacefully filming at the Perry Point Veteran's Hospital facility," activity "protected by the First Amendment and . . . specifically lawful pursuant to VA Policy 1078." (SAC ¶ 11.) Second, Sentman took adverse action by "initiating, instigating, and pursuing a criminal prosecution" against Plaintiff. (SAC ¶ 38.) Third, the SAC alleges that "Sentman's purpose in pursuing the prosecution was to punish and deter the Plaintiff's protected speech." (SAC ¶ 39.) Critically, the SAC alleges that Sentman "was acting in an investigative and administrative capacity, not as a judicial advocate" when he directed the officers to seek charges. (SAC ¶ 40.) Count IV states a plausible claim.

### D. Count X - Civil Conspiracy (Both)

Under Maryland law, civil conspiracy requires: (1) a combination of two or more persons by agreement or understanding; (2) to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal; and (3) actual legal damages

resulting to the plaintiff. MacKey v. Compass Marketing, Inc., 391 Md. 117, 137 (2006); Sirius Federal, LLC v. Jelen (D. Md. 2023); Middleton v. Koushall (D. Md. 2022). "Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established." Rojas v. Huntington Neighborhood Ass'n, Inc. (D. Md. 2022).

The SAC alleges all elements. First, it alleges a "combination and agreement" between Sentman, Notarcola, Farrar, and Money. (SAC ¶ 87.) Second, the purpose was unlawful, to "unlawfully prosecute the Plaintiff" in a court lacking jurisdiction, "with the goal of retaliating against him and silencing his protected speech." (SAC ¶ 87.) Third, the SAC identifies numerous overt acts, including Sentman advising the VA officers to obtain void warrants, the arrest and prosecution of Plaintiff, and Notarcola's falsification of court records. (SAC ¶ 89.) Fourth, Plaintiff suffered actual damages. (SAC ¶ 90.) The underlying tortious conduct, malicious prosecution, false imprisonment, fraud, and denial of access to courts, is sufficiently alleged in the other counts. Count X states a plausible claim.

### E. Count XI - False Imprisonment (Sentman)

To establish false imprisonment under Maryland law, "the plaintiff must prove that the defendant deprived him or her of his or her liberty without consent and without legal justification." State v. Roshchin, 446 Md. 128, 137 (2016); Herrington v. Red Run Corp., 148 Md. App. 357, 371 (2002); Johnson v. Valu Food, Inc., 132 Md. App. 118, 135 (2000). Where the arrest is based on a warrant that is void *ab initio*, there is no "legal justification" for the detention.

The SAC alleges that Sentman instigated Plaintiff's unlawful confinement by directing VA officers to obtain a state arrest warrant they had no authority to seek. (SAC ¶ 93.) The warrant was "void *ab initio*" because the VA officers lacked statutory authority to obtain state warrants, and the Circuit Court lacked jurisdiction over the alleged conduct. (SAC ¶ 94.) Because the warrant was void, Plaintiff's arrest and pre-trial confinement were "without legal justification." The unlawful imprisonment continued through the term of supervised probation. (SAC ¶ 94.) Count XI states a plausible claim.

### F. Count XII - Malicious Prosecution (Sentman)

Under Maryland law, malicious prosecution requires: (1) a criminal proceeding instituted or continued by the defendant; (2) termination in favor of the accused; (3) absence of probable cause; and (4) malice, or a primary purpose other than bringing an offender to justice. Heron v. Strader, 361 Md. 258, 264 (2000); Okwa v. Harper, 360 Md. 161, 183 (2000); Talley v. Anne Arundel County, Maryland (D. Md. 2023);

Annappareddy v. Arnold (D. Md. 2023).

The SAC alleges each element. First, Sentman "initiated and continued a criminal proceeding" by advising VA officers to obtain a warrant and later securing grand jury indictments. (SAC ¶ 98.) Second, the proceeding terminated in Plaintiff's favor: the jury acquitted him of the Disorderly Conduct charge. (SAC ¶ 101.) Third, there was no probable cause because the prosecution was brought in a court lacking jurisdiction and initiated with void warrants. (SAC ¶ 100.) Fourth, the SAC alleges malice through Sentman's "complete abdication of his professional duties," "charge-stacking" nine counts, refusal to provide discovery, and willful disregard of jurisdictional limits. (SAC ¶ 99.) Count XII states a plausible claim.

### G. Count XIII - Denial of Access to Courts (42 U.S.C. § 1983) (Notarcola)

To state a § 1983 denial of access to courts claim, a plaintiff must identify: (1) a "nonfrivolous," "arguable" underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but is not otherwise available. Christopher v. Harbury, 536 U.S. 403, 414-15 (2002); Lewis v. Casey, 518 U.S. 343, 351 (1996). The plaintiff must allege that the deprivation was the result of intentional conduct. Velasco v. Gonclavez (D. Conn. 2022).

The SAC alleges each element. First, Plaintiff's underlying claims, including his motion to remove the judge and his recusal motion, were nonfrivolous and arguable. (SAC ¶¶ 108-109.) Second, Notarcola's intentional acts, altering records related to the Motion for Removal and backdating a Recusal Motion entry by ten days, frustrated Plaintiff's ability to pursue timely appeals. (SAC ¶ 108.) Third, no adequate alternative remedy exists for the lost appellate opportunity. Fourth, the SAC alleges intentional conduct: Notarcola "intentionally and in bad faith" deprived Plaintiff of his right of access to the courts. (SAC ¶ 107.) The State's argument that Plaintiff "was able to pursue appeals" (ECF No. 44-1, at 11-12) does not negate the constitutional injury, Plaintiff was forced to litigate on a fraudulent record, which is precisely the harm the right of access protects against. Count XIII states a plausible claim.

### H. Count XIV - Fraud (Notarcola)

Common law fraud under Maryland law requires: (1) the defendant made a false representation; (2) the falsity was known to the defendant or made with reckless indifference to the truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury. Fairfax Sav., F.S.B. v. Ellerin, 94 Md. App. 685, 694 (1993); Wooten v. The Boppy Co., LLC (D. Md. 2024); Armellini v. Levin (D. Md. 2020).

The SAC alleges each element. First, Notarcola "made multiple false representations of material fact by intentionally entering incorrect information into the official court records." (SAC ¶ 115.) Second, "Notarcola knew these representations were false at the time she made them." (SAC ¶ 116.) Third, the false representations were made "for the purpose of defrauding the Plaintiff of his legal rights, specifically his right to appeal." (SAC ¶ 117.) Fourth, "Plaintiff justifiably relied upon the official court record, believing it to be true and accurate, which caused him to lose his opportunity to file a timely appeal." (SAC ¶ 118.) Fifth, Plaintiff "suffered actual damages, including the loss of his appellate rights and the associated costs." (SAC ¶ 119.) Count XIV states a plausible claim.

## IX. THE SAC STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. The State's "Plausibility" Argument Misapplies Iqbal/Twombly

The State Defendants argue that "when stripped of its conclusory statements, the SAC does not state a plausible claim for relief against any State Defendant." (ECF No. 44-1, at 13.) This argument misapplies the Iqbal/Twombly standard, which requires the Court to accept all well-pled factual allegations as true and draw all reasonable inferences in the Plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

The SAC is not a "formulaic recitation of the elements" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To the contrary, the SAC contains extensive, specific factual allegations, including:

- The **official VA Police report** documenting Sentman's directive to VA officers to seek state charges (SAC ¶¶ 13, 88, 93);
- The specific **jurisdictional statute** limiting the Circuit Court's authority, Md. Code Ann., Cts. & Jud. Proc. § 1-501, and the allegation that the alleged acts occurred on federal property (SAC ¶¶ 88, 94);
- The allegation that the VA officers' warrant applications included **Sgt. Money's police experience and employment history** (SAC ¶ 14);
- The allegation that Sentman **refused to provide discovery** after Plaintiff's counsel withdrew (SAC ¶ 99);
- The allegation that Sentman **pursued a grand jury indictment for nine (9) charges when Maryland law does not require one**, likely to obtain a new charging document independent of the void warrants (SAC ¶ 98);
- The allegation that Clerk Notarcola **backdated a court entry by ten days on the day of a Hearing with 2 confused Maryland Judges** (SAC ¶¶ 16-17, 108);
- The allegation that the Cecil County Sheriff's Office knew the jurisdictional limits

(stating "don't go there") (SAC ¶ 88);

- The allegation that the jury **acquitted Plaintiff of the Disorderly Conduct charge** that initiated the prosecution (SAC ¶ 21).

These are not "bald accusations" or "mere speculation." They are specific, particularized factual allegations that, accepted as true and viewed in the light most favorable to the Plaintiff, plausibly suggest that the State Defendants are liable for the misconduct alleged.

### B. The State's "He Is Responsible for His Own Conviction" Argument Is Irrelevant and Misleading

The State Defendants conclude their plausibility argument with the assertion: "Mr. Soper was convicted of a crime. His appeals failed. It is he, not the State Defendants, who are responsible for the consequences of that conviction." (ECF No. 44-1, at 13.) This argument is both legally irrelevant and factually misleading.

**Legally irrelevant**: Whether Plaintiff was convicted is irrelevant to whether the State Defendants' actions in initiating and pursuing the prosecution were lawful. An arrest and loss of phone and it's data, obtained through the use of void warrants, jurisdictional overreach, charge-stacking, and discovery violations does not retroactively immunize the defendants from civil liability for their misconduct. The question before this Court is not whether Plaintiff was guilty, it is whether the State Defendants violated his constitutional rights in the process.

**Factually misleading**: The State omits the critical fact that "the state criminal proceedings specifically regarding the Disorderly Conduct charge was terminated in the Plaintiff's favor. The jury found the Plaintiff 'not guilty' of the Disorderly Conduct charge." (SAC ¶ 21.) The Disorderly Conduct charge was "the allegation in which the prosecution was initiated." (SAC ¶ 21.) The State's assertion that "it is he, not the State Defendants, who are responsible for the consequences of that conviction" ignores the fact that the jury rejected the foundational charge of the prosecution, and, ignores the SAC's allegation that the remaining conviction was obtained through the use of void warrants, jurisdictional defects, discovery violations and malice or gross neglect. It's not the conviction that is the complaint.

### C. Discovery Is Needed to Fully Develop the Facts

At this stage, the Court must accept the SAC's well-pled allegations as true and draw all reasonable inferences in the Plaintiff's favor. Many of the key facts relevant to the State Defendants' immunity defenses cannot be fully developed without discovery, including:

- The full extent of the conspiratorial agreement between Sentman and the VA officers;
- Sentman's knowledge of the jurisdictional limits of the Perry Point VA facility;
- The circumstances of Notarcola's alteration of court records, including who directed or authorized the backdating;
- The extent and circumstances of Sentman's discovery violations;
- Sentman's decision-making process in pursuing the grand jury indictment, including any communications regarding the void warrants and the decision to add charges;
- The content of the warrant applications, including the specific representations about the VA officers' authority;
- The communications between Sentman and the VA officers before the warrants were sought.

The State Defendants' Motion asks the Court to resolve these factual disputes in their favor at the pleading stage, an improper request under Rule 12(b)(6). The proper course is to deny the Motion, allow discovery, and address any remaining immunity issues at summary judgment if necessary

## X. THE MOTION PRESENTS MATERIAL ISSUES OF FACT THAT CANNOT BE RESOLVED AT THE PLEADING STAGE

The State Defendants' Motion relies on factual assertions that directly contradict the SAC and cannot be resolved on a Rule 12(b)(6) motion. "The court may not . . . resolve disputes concerning the facts, for that is the function of the jury." Baber v. Medical College of Virginia, 2000 WL 586659, at *3 (4th Cir. May 5, 2000).

**First**, the State asserts that Sentman's conduct involved "his actions as a prosecutor in judicial proceedings." (ECF No. 44-1, at 5.) But the SAC alleges that Sentman directed VA officers to seek warrants before any probable cause determination, conduct in the investigative phase. Whether Sentman was acting as an investigator or an advocate is a disputed factual question that cannot be resolved by accepting the State's characterization over the SAC's allegations.

**Second**, the State asserts that "Mr. Soper was able to pursue appeals of his criminal conviction." (ECF No. 44-1, at 11–12.) This directly contradicts the SAC. The SAC alleges that the appeal the Plaintiff was deprived of was an interlocutory appeal to the full Circuit Court, which carried a 10-day filing deadline under Maryland Rules. Notarcola's backdating of the ruling by exactly ten days rendered that appeal untimely. Plaintiff currently challenges his convictions in a federal habeas corpus petition now pending. The State's assertion that Plaintiff "was able to pursue appeals" is immaterial and cannot be resolved on the pleadings.

**Third**, the State relies on extrinsic facts not contained in the SAC, specifically, Footnote 1's citation to criminal case numbers, appellate decisions, and a certiorari denial. (ECF No. 44-1, at 11 n.1.) Under Rule 12(d), if the court considers matters outside the pleadings, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). And, the State's argument is immaterial to the allegations in the SAC, noted above.

**Fourth**, the State argues that Sentman's actions "do not violate clearly established statutory or constitutional rights." (ECF No. 44-1, at 11.) This implicitly assumes the warrants were validly obtained. The SAC alleges the warrants were void ab initio due to misrepresentation of authority and jurisdictional defects. Whether the warrants were valid or void is a material factual dispute.

**Fifth**, the State argues that "Prosecutors routinely speak with law enforcement officers . . . Clerks routinely make docket entries." (ECF No. 44-1, at 14.) Whether the specific conduct alleged, directing federal officers to misrepresent themselves as state police, charge-stacking nine counts, backdating court records by ten days, was "routine" is a factual question that cannot be resolved by generalization. These material factual disputes require denial of the Motion or conversion to summary judgment under Rule 12(d).

## XI. CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss the Second Amended Complaint should be denied in its entirety.

1. **Prosecutor Sentman is not entitled to absolute prosecutorial immunity** because his advisory conduct in directing VA police to seek warrants occurred in the investigative phase, before any probable cause determination, and is not "intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 494 (1991); *Safar v. Tingle*, 859 F.3d 241 (4th Cir. 2017); *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018).
2. **Clerk Notarcola is not entitled to quasi-judicial immunity** because the intentional falsification and backdating of court records is a ministerial act, not a discretionary judicial function. *McCray v. State of Maryland*, 456 F.2d 1, 3-4 (4th Cir. 1972).
3. **Neither State Defendant is entitled to statutory personnel immunity** because the SAC alleges specific, particularized facts demonstrating malice and gross negligence, including but not limited to Prosecutor Sentman's knowing disregard of concurrent jurisdictional limits, charge-stacking and grand jury maneuver to legitimize void warrants, discovery violations, and direction of VA police to obtain void warrants through misrepresentation. *Lee v. Cline*, 384 Md. 245, 268

(2004); *Moaney v. State*, 28 Md. App. 408, 415 (1975).

4. **Neither State Defendant is entitled to qualified immunity** because the SAC alleges violations of clearly established constitutional rights, including the right to be free from First Amendment retaliation, the right to due process, and the right of access to the courts.
5. **The SAC states a plausible claim for intentional infliction of emotional distress** because the Defendants' abuse of official authority to orchestrate a baseless prosecution, falsify court records, and take advantage of a pro se defendant constitutes "extreme and outrageous" conduct under Maryland law. *Harris v. Jones*, 281 Md. 560, 569 (1977); *Thomas v. Baltimore Police Department* (D. Md. 2025).
6. **The SAC states plausible claims upon which relief may be granted** because it contains specific, particularized factual allegations, not conclusory recitations, that, accepted as true, allow the Court to reasonably infer that the State Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
7. Plaintiff further reserves the right to seek leave of Court to further amend the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), including in response to any rulings on the pending Motion to Dismiss, should the Court identify any deficiency that could be cured by amendment. The Fourth Circuit has consistently held that "[d]enial of leave to amend is generally warranted only when the amendment would be futile." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). Under Rule 15(a)(2), "the court should freely give leave when justice so requires," and Plaintiff respectfully requests that the Court preserve his ability to seek such leave if the circumstances warrant.

The State Defendants' Motion asks this Court to resolve factual disputes, weigh evidence, and make credibility determinations, all of which are improper at the pleading stage. The proper course is to deny the Motion and allow discovery to develop the full factual record.

**Respectfully submitted,**

Kevin A. Soper, Pro Se 10/5/2026
Date

704 Cedarday Drive
Bel Air, Maryland 21015
newlifebearing@yahoo.com

# Certificate of Service

Plaintiff in the above captioned case hereby certifies and affirms that all parties appearing in this case were served the above "Plaintiff's Response to Defendant's Motion to Dismiss the Second Amended Complaint" electronically via the Court's ECF filing system.

**Signed(Plaintiff)** ________________________ 10/5/2026
**Kevin A. Soper** **Date**

704 Cedarday Dr
Belair, Md. 21015
newlifebearing@yahoo.com