**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| KEVIN A. SOPER,<br><br>Plaintiff,<br><br>v.<br><br>WILLIE FARRAR and<br>DALE MONEY, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-00069-JRR |

**MEMORANDUM IN SUPPORT OF**
**FEDERAL DEFENDANTS' MOTION TO DISMISS**
**OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**Table of Contents**


I. INTRODUCTION ..... iii

II. FACTUAL BACKGROUND ..... 1

1. Soper's Conviction for violations of Maryland's Wiretap Act ..... 1
2. Soper's recording at the VA hospital and arrest. ..... 2

III. LEGAL STANDARDS ..... 3

A. Rule 12(b)(1) - Lack of Subject Matter Jurisdiction ..... 3

B. Rule 12(b)(6) - Failure to State a Claim ..... 4

C. Rule 56 - Summary Judgment ..... 5

IV. ARGUMENT ..... 6

A. Soper's violations of 42 U.S.C. § 1983 fail as a matter of law because § 1983 claims cannot be alleged against federal officials, only state officials. ..... 6

B. The Complaint fails to state a claim because there is no existing *Bivens* remedy for any count, and special factors counsel against extending *Bivens*. ..... 7

1. *Bivens* is not available where a case presents a "new context" and where "special factors counsel hesitation." ..... 8
2. A case presents a new context if it falls outside of the same factual and legal circumstances as the only three recognized *Bivens* remedies. ..... 8
3. Special factors counsel hesitation where implying a *Bivens* remedy would have an impact on the Government or the individual agents. ..... 10
4. Each of the counts in the Complaint alleging a constitutional or civil rights violation would require the Court to extend *Bivens* to a new context. ..... 11

a. There is no *Bivens* remedy for First Amendment retaliation or unlawful prior restraint under the First Amendment. ..... 11

b. There is no *Bivens* remedy for Fourth Amendment claims stemming from a search conducted with a warrant, or malicious prosecution. ..... 12

5. Because special factors counsel hesitation, the Court should decline to extend *Bivens*. ..... 14

C. Even if Plaintiff's constitutional and civil rights claims were viable under *Bivens*, Farrar and Money enjoy qualified immunity as to those claims. ..... 15

D. Even if Soper's § 1985 and 1986 claims were viable, Farrar and Money enjoy qualified immunity from those claims. ..... 18

E. To the extent any tort claim could be asserted, it should have been brought against the United States under the FTCA after exhausting administrative remedies, which Soper has not done. ..... 20

1. Soper's defamation claim is not viable. ... 21
2. Soper's false imprisonment claim is not viable. ... 23
3. Soper's malicious prosecution claim is not viable. ... 24
4. Soper's intentional infliction of emotional distress claim is not viable. ... 26
5. Soper's civil conspiracy claim is not viable. ... 28

F. Soper's claim that his journalistic materials were protected from search or seizure under the Privacy Protection Act is not viable. ... 28

# Table of Authorities

## Federal Cases

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982) .......... 4

*Anderson v. Creighton*,
483 U.S. 635 (1987) .......... 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 5

*Annappareddy v. Pascale*,
996 F.3d at 135 .......... 12, 13, 14, 15

*Annappareddy v. United States, No. 1:18-cv-03012-JFA*,
2023 WL 6538392 (D. Md. Aug. 3, 2023) .......... 14

*Annappareddy v. United States*,
No. 23-2027, 2025 WL 314110 (4th Cir. 2025) .......... 14

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)(h) .......... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Attkisson v. Holder*,
925 F.3d 606 (4th Cir. 2019) .......... 12

*Beaudett v. City of Hampton*,
775 F.2d 1274 (4th Cir. 1985) .......... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bivens v. Six Unknown Named Agents*,
403 U.S. 388 (1971) .......... 6, 7, 8, 13

*Bush v. Lucas*,
462 U.S. 367 (1983) .......... 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 5, 6

*Chappell v. Wallace*,
462 U.S. 296 (1983) .......... 8

*Correctional Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .......... 8, 7

*Dowe v. Total Action Against Poverty in Roanoke Valley*,
145 F.3d 653 (4th Cir. 1998) .................................................................................... 6-7

*Drewitt v. Pratt*,
999 F.2d 774 (4th Cir. 1993) ........................................................................................ 6

*Egbert v. Boule*,
596 U.S. 482 (2022) ........................................................................... 8, 7, 10, 11, 12, 14

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........................................................................................................ 4

*FDIC v. Meyer*,
510 U.S. 471 (1994) ...................................................................................................... 8

*Harlow v. Fitzgerald*,
457 U.S. 800–18 (1982) .............................................................................................. 24

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ........................................................................................ 5

*Hicks v. Ferreyra*,
965 F.3d 302 (4th Cir. 2020) ...................................................................................... 16

*Hunter v. Bryant*,
502 U.S. 224 (1991) .................................................................................................... 15

*Ibarra v. U.S.*,
120 F.3d 472 (4th Cir. 1997) ........................................................................................ 4

*Jackson v. United States*,
77 F. Supp. 2d 709 (D. Md. 1999) .............................................................................. 23

*Kokotis v. United States*,
223 F.3d 275 (4th Cir. 2000) ...................................................................................... 21

*Maron v. United States*,
126 F.3d 317 (4th Cir. 1997) ...................................................................................... 20

*Mays v. Smith*,
70 F.4th 198 (4th Cir. 2023) ....................................................................................... 10

*McCullough v. Anne Arundel Cty., Md.*,
No. 19-926, 2020 WL 836235 (D. Md. Feb. 20, 2020) .............................................. 23

*Meeks v. Larsen*,
611 F. App'x 277–84 (6th Cir. 2015) ......................................................................... 16

*Meyers v. Baltimore Cty., Md.*,
713 F.3d 723 (4th Cir. 2013) ...................................................................................... 15

*Minneci v. Pollard*,
565 U.S. 118 (2012) .................................................................................................. 8

*Orellana v. Godec*,
145 F. 4th 516 (4th Cir. 2025) ............................................................................... 12-13

*Papasan v. Allain*,
478 U.S. 265 (1986) .................................................................................................. 5

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................................................................................................. 15

*Presley v. City of Charlottesville*,
464 F.3d 480 (4th Cir. 2006) ..................................................................................... 4

*Revene v. Charles County Commissioners*,
882 F.2d 870 (4th Cir. 1989) ..................................................................................... 5

*Rich v. United States*,
158 F. Supp. 2d 619 (D. Md. 2001) .......................................................................... 23

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ..................................................................................... 4

*S.H.A.R.K. v. Metro Parks Serving Summit County*,
499 F.3d 553 (6th Cir. 2007) ..................................................................................... 30

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) .................................................................................................. 8

*Sennett v. United States*,
778 F. Supp. 2d 655 (E.D. Va. 2011) .................................................................. 29, 30

*Simmons v. Poe*,
47 F.3d 1370 (4th Cir.1995) ..................................................................................... 18

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .................................................................................................. 3

*Steel Co.*,
523 U.S. .................................................................................................................... 3

*Stuart v. Lowe's Home Cntrs., LLC*,
737 Fed. App'x 278 (6th Cir. 2018) ......................................................................... 24

*Stutzman v. Krenik*,
350 F. Supp. 3d 366 (D. Md. 2018) .......................................................................... 23

*Trerice v. Summons*,
755 F.2d 1081 (4th Cir. 1985) ................................................................................... 19

*Trerice*,
755 F.2d (4th Cir. 1985) ........................................ 19

*Tun-Cos v. Perrotte*,
922 F.3d 514 (4th Cir. 2019) ........................................ 7

*United Black Firefighters v. Hirst*,
604 F.2d 844 (4th Cir. 1979) ........................................ 5

*United States v. Stanley*,
483 U.S. 669 (1987) ........................................ 8

*White v. Pauly*,
137 S. Ct. 548 (2017) ........................................ 15

*Wilkie v. Robbins*,
551 U.S. 537 (2007) ........................................ 8

*Ziglar*,
582 U.S. ........................................ 8, 7, 8, 9, 10

*Zurcher v. Stanford Daily*,
436 U.S. 547 (1978) ........................................ 29

**Federal Statutes**

28 U.S.C. § 2401 ........................................ 21

28 U.S.C. § 2679 ........................................ 20

28 U.S.C. § 2680 ........................................ 22

38 U.S.C. § 902 ........................................ 17

42 U.S.C. § 1983 ........................................ 6, 15

42 U.S.C. § 1985 ........................................ 18

43 U.S.C. § 1986 ........................................ 7, 16

42 U.S.C. § 2000aa ........................................ 28, 29

## I. INTRODUCTION

Plaintiff Kevin A. Soper, acting *pro se*, is a convicted criminal who now challenges the entirety of the process—from his arrest to his indictment to his conviction—as the product of illegal civil conspiracy, a violation of his constitutional and civil rights, malicious prosecution, defamation, and so on. He brings claims against several defendants involved in different stages of his case leading to conviction. Two of those defendants are the Veterans Administration ("VA") police officers who arrested Soper and seized his phone under judicial warrants. Captain Willie Farrar and Sergeant Dale Money are alleged to have violated Soper's constitutional rights as a "citizen journalist," his civil rights, engaged in intentional tortious conduct toward Soper, and conspired against him. Of the twelve counts levied by Soper against Farrar and Money, not one is legally viable. This Court should dismiss each one for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and/or failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, grant them summary judgment under Federal Rule of Civil Procedure 56.[1]

## II. FACTUAL BACKGROUND

### 1. Soper's Conviction for violations of Maryland's Wiretap Act

On September 5, 2024, following a trial in the Circuit Court for Cecil County, a jury found Soper guilty of eight violations of Maryland's Wiretap Act, Maryland Code (1974, 2020 Repl. Vol.), §§ 10-401 to -414 of the Courts and Judicial Proceedings Article. The jury acquitted Soper of one count of disorderly conduct. *Soper v. State*, No. 1751, Sept. Term 2024, 2026 WL 63063, at *1 (App. Ct. Md. Jan. 8, 2026), *cert. denied,* 356 A.3d 26 (2026). On October 15,

[1] To the extent any argument also applies to the State of Maryland officials who are also Defendants in this case, the federal government does not object to those Defendants joining in this motion.

2024, the court sentenced Soper to eight concurrent sentences of 90 days, all of which were suspended in favor of 18 months of supervised probation.

**2. Soper's recording at the VA hospital and arrest.**

Soper's conviction, affirmed on appeal, arose from his decision to record interactions with medical staff and others on the campus of the Perry Point Veteran's Hospital ("Hospital"). Soper is a disabled veteran of the United States Navy and the United States Coast Guard, having served a total of nine years between both branches of the armed forces. Second Amended Complaint, ECF 38 ¶ 10.

On or about January 29, 2022, Plaintiff alleges he was "peacefully filming" at the Hospital facility, which Soper maintains "included filming on publicly accessible grounds and inside his doctor's office during a medical appointment." *Id.* ¶ 11. Soper maintains that this activity was "specifically lawful pursuant to" something he identifies as "VA Policy 1078." *Id.* According to Soper, "VA Policy 1098" purportedly "permits the recording of conversations during a medical appointment to ensure they can accurately recall specific instructions regarding prescription use and therapies." *Id.* Also according to Soper, a doctor on staff at the Hospital "was offended by the recording and VA Police responded." *Id.* Specifically, Sgt. Money was the VA police officer who responded to the call. *Id.*.

Soper also alleges that Farrar and Money, "motivated by personal animus toward Plaintiff's protected First Amendment activities, initiated a baseless investigation" into Soper. *Id.* ¶ 12. Within a few days, Farrar and Money both "secured an invalid arrest warrant," and when Soper was arrested his phone was seized from his wife, who had possession of it. *Id.*

According to Soper, Cpt. Farrar and Sgt. Money, "[a]cting outside the scope of their authority as federal officers," engaged to "conspire" with the State prosecutor to initiate a

criminal proceeding against Soper. *Id.* ¶ 13. Farrar and Money allegedly "went straight to a Maryland Judge to obtain an arrest warrant upon Sgt. Money's sworn affidavit." *Id.* Sgt. Money then allegedly "lied on the stand" about bringing other cases in Maryland courts while as a VA police officer. *Id.* According to Soper, Farrar and Money sought an arrest warrant from a state court and seized Soper's phone as part of his arrest. *Id.*

The background set forth by the Appellate Court of Maryland tells a different story. *See Soper*, 2026 WL 63063, at *1-2. For the purposes of this motion, however, that telling is irrelevant. Based on the facts as alleged in the Second Amended Complaint, Soper's claims against Cpt. Farrar and Sgt. Money should be dismissed in their entirety or, alternatively, summary judgment should be granted to these Defendants for the reasons set forth below.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). The threshold requirement that a plaintiff establish subject matter jurisdiction "spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 95 (internal quotations omitted). For that reason, "[t]he objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1) and 12(h)(3)).

A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Once a defendant makes this facial challenge to subject matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Under this analysis, a plaintiff receives the same procedural protection as would be afforded under Rule 12(b)(6) in that "the facts alleged in the complaint are assumed to be true." *Adams*, 697 F.2d at 1219.

Courts hold *pro se* pleadings to "less stringent standards than a formal pleading drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court has an obligation to construe pleadings of self-represented litigants liberally. *Id*. The court is not required, however, to "conjure up questions never squarely presented to them," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

**B. Rule 12(b)(6) - Failure to State a Claim**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of a plaintiff's complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 484 (4th Cir. 2006). When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true, and…construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997). Although a pleading called into question by Rule 12(b)(6) does not need to provide "detailed factual allegations," something "more than labels and conclusions" is required, and there must be factual allegations sufficient to "raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a pleading must contain "enough factual matter (taken as true) to suggest" the viability of the plaintiff's claims. *Id*. at 556.

In deciding a motion to dismiss, a court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. While a court must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999), a court need not accept legal conclusions unsupported by facts, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**C. Rule 56 - Summary Judgment**

On a motion for summary judgment, the moving party bears the burden of demonstrating that there are no genuine issues as to any material facts and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2); *see also*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the facts alleged in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "The mere existence of a scintilla of evidence in support of the plaintiff's position," however, will not bar summary judgment in favor of the defendants. *Id*. at 252. Where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case, with respect to which [he] has the burden of proof," the moving party is entitled to summary

judgment. *Celotex*, 477 U.S. at 323. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. District courts considering a motion for summary judgment have an "affirmative obligation…to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotations omitted).

## IV. ARGUMENT

At the core of this case is a reasonable arrest based on probable cause and a prosecution that resulted in conviction. The Complaint must be dismissed or summary judgment granted. The Second Amended Complaint asks the Court to extend *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), impermissibly into new contexts, despite strict admonitions from the Supreme Court that *Bivens* is not to be extended. In the alternative, Farrar and Money enjoy qualified immunity with respect to Soper's constitutional and civil rights claims. Those blanket doctrines and concepts aside, each of Soper's claims, including his tort claims, suffers from at least one flaw that renders that claim not viable under the law.

### A. Soper's violations of 42 U.S.C. § 1983 fail as a matter of law because § 1983 claims cannot be alleged against federal officials, only state officials.

Soper alleges several claims under 42 U.S.C. § 1983 against Farrar and Money. These include a claim for First Amendment retaliation under § 1983 (Count 1), prior restraint under the First Amendment under § 1983 (Count 8), and unlawful search and seizure in violation of the Fourth Amendment under § 1983 (Counts 5 and 6). Each of these claims fail to the extent they are based on § 1983.

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d

653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, § 1983 only provides a cause of action for violations committed by state actors; it does not apply to the actions of federal officials. *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) ("But § 1983 does not provide a cause of action against *federal* officials, and there is no analogous statute imposing damages liability on federal officials."). Defendants are federal officials. ECF 38 ¶¶ 5-6. Accordingly, Soper's § 1983 claims fail as a matter of law.

### B. The Complaint fails to state a claim because there is no existing *Bivens* remedy for any count, and special factors counsel against extending *Bivens*.

Even if Soper's allegations that Farrar and Money violated his constitutional rights are construed under *Bivens*, rather than § 1983, those claims still fail as a matter of law.

Under *Bivens*, plaintiffs may sue for damages if federal officials violate their constitutional rights. *See generally,* 403 U.S. at 388. *Bivens* is a judicially-created remedy that is severely limited in scope. *See Ziglar*, 582 U.S. at 135 ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.") (quoting *Iqbal*, 556 U.S. at 675). In construing this judicially created remedy, the current trend of the Supreme Court is to refuse to expand and indeed to substantially limit *Bivens* liability. *See*, *e.g.*, *Egbert v. Boule*, 596 U.S. 482, 501 (2022); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). This section proceeds first by setting forth the two-step analysis courts must conduct in evaluating *Bivens* claims, then explains why each alleged constitutional violation fails to establish entitlement to a *Bivens* remedy. In the instant case, each count presents a new *Bivens* context. Special factors counsel against extending *Bivens* to these new contexts. Thus, the Complaint must be dismissed for failure to state a claim.

### 1. *Bivens* is not available where a case presents a "new context" and where "special factors counsel hesitation."

To assess the availability of a *Bivens* claim, courts must conduct a two-step analysis. The first step asks whether the claim presents a "new context" that is different from the three recognized *Bivens* contexts. *Ziglar*, 582 U.S. at 138. The second step considers whether there are "special factors counselling hesitation" before extending *Bivens*, which may include availability of alternate relief. *Bivens*, 403 U.S. at 396. The answer to both questions must be no for a plaintiff to successfully establish a right to *Bivens* relief—even a finding that a case presents a recognized *Bivens* context fails to state a claim if special factors still counsel hesitation in applying *Bivens*. *Ziglar*, 582 U.S. at 138–39 (finding error where court of appeals dispensed with the special factors analysis after finding no new *Bivens* context). This section explains these two steps.

### 2. A case presents a new context if it falls outside of the same factual and legal circumstances as the only three recognized *Bivens* remedies.

There are only three recognized *Bivens* contexts. First, in *Bivens*, the Court recognized a remedy for a warrantless search without probable cause in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 389. Second, in *Davis v. Passman*, the Court recognized a *Bivens* claim for violation of the Equal Protection Clause of the Fifth Amendment when a Congressman fired an administrative assistant based on gender. 442 U.S. 228, 248–49 (1979). Finally, in *Carlson v. Green*, the Court extended *Bivens* to a case in which prison officials failed to provide an inmate with proper medical care in violation of his Eighth Amendment right to be free from cruel and

unusual punishment. 446 U.S. 14, 16–18 (1980). In fact, the Supreme Court has not approved any new application of *Bivens* since the 1980s. *Ziglar*, 582 U.S. at 135.[2]

Unless a case is nearly factually and legally identical, it is a new context. A context is "new . . . . [i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 582 U.S. at 139. Courts must examine the entire set of circumstances to make this assessment. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action. . ." and more. *Id.* at 139–40. Even cases involving the same right and mechanism of injury as in one of the three established *Bivens* cases may still present a new context if the circumstances are different. *Id.* at 139 (discussing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). *See also*, *Egbert v. Boule*, 596 U.S. 482, 501 (2022) ("[A] plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law." (internal quotations omitted)).

[2] To the contrary, the Supreme Court has explicitly refused to extend *Bivens* in numerous cases since 1980. *See Bush v. Lucas*, 462 U.S. 367 (1983) (disallowing First Amendment claim in public employment); *Chappell v. Wallace*, 462 U.S. 296 (1983) (race discrimination claim against military superiors); *United States v. Stanley*, 483 U.S. 669 (1987) (substantive due process claim against military superiors and civilians); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (due process claim for denial of disability benefits); *FDIC v. Meyer*, 510 U.S. 471 (1994) (due process claim for termination from public employment); *Malesko*, 534 U.S. at 61 (Eighth Amendment claim against private operator of a halfway house); *Wilkie v. Robbins*, 551 U.S. 537 (2007) (due process claim against Bureau of Land Management); *Minneci v. Pollard*, 565 U.S. 118 (2012) (Eighth Amendment claim against private operators of a federal prison); *Ziglar*, 582 U.S. at 120 (2017) (due process claim by alien detainees held on immigration violation following the September 11, 2001 attacks); *Egbert*, 596 U.S. at 482 (First Amendment retaliation and against federal officers engaged in immigration-related functions for allegedly violating a plaintiff's Fourth Amendment rights). In *Ziglar*, the Court even expressed that, "in light of the changes to the Court's general approach to [and disfavor in] recognizing implied damages remedies, . . . the analysis in the Court's three Bivens cases might have been different if they were decided today." *Ziglar*, 582 U.S. at 134.

### 3. Special factors counsel hesitation where implying a *Bivens* remedy would have an impact on the Government or the individual agents.

In recent years, the Supreme Court has warned that nearly any impact of the implication of a *Bivens* remedy – including that a case arises in a new context itself – should be considered a special factor counseling hesitation.

The "special factors" analysis asks whether "there is *even a single reason* to pause before applying *Bivens* in a new context." *Mays v. Smith*, 70 F.4th 198, 205 (4th Cir. 2023) (quoting *Egbert v. Boule*, 596 U.S. 482, 499 (2022)). *See also*, *Egbert*, 596 U.S. at 496 ("A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" (quoting *Ziglar*, 582 U.S. at 136. The existence of "any special factor[] is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137. *Bivens* "does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Id.* at 496.

These special factors include "an assessment on [the decision's] impact on governmental operations systemwide," such as "the burdens on Government employees who are sued personality, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Ziglar*, 582 U.S. at 136. However, the Supreme Court has noted that it cannot offer "an exhaustive accounting of such scenarios, however, because no court could forecast every factor that might counsel hesitation." *Egbert*, 596 U.S. at 492–93 (internal quotations omitted). The inability to "predict the systemwide consequences of recognizing a cause of action under *Bivens*" itself "is a special factor that

forecloses relief." *Id.* at 493 (quoting with approval *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (*en banc*) ("The newness of this 'new context' should alone require dismissal.").

The special factors analysis also includes a consideration of whether there is an "alternative remedial structure[] in place," and while presence of a remedial scheme "alone…is reason enough" to deny a *Bivens* extension, the lack of availability of a remedy is not dispositive. *Egbert*, 596 U.S. at 493 (internal quotations omitted).

**4. Each of the counts in the Complaint alleging a constitutional or civil rights violation would require the Court to extend *Bivens* to a new context.**

Each of Soper's *Bivens* claims grounded in asserted violations of Soper's constitutional or civil rights arises in a new context for which there has been no previously recognized *Bivens* remedy.

**a. There is no *Bivens* remedy for First Amendment retaliation or unlawful prior restraint under the First Amendment.**

Counts 1 and 8 of the Second Amended Complaint are based on alleged First Amendment violations. The complaint alleges "adverse action against [Soper]" because the investigation and arrest by Farrar and Money was allegedly "motivated, in whole or in part" by Soper's "exercise of his First Amendment rights," and the "investigation, void ab initio warrants, and subsequent prosecution would not have occurred but for Plaintiff's protected activity of recording." ECF 38 ¶¶ 24-5 (Count 1). Soper further alleges that he was "a citizen reporter creating video content for public dissemination," and was "engaged in activity squarely protected by the First Amendment's guarantees of freedom of speech and of the press" of which Farrar and Money were aware. *Id.* ¶ 70 (Count 8). Both counts allege that Farrar and Money's seizing of Soper's camera phone "was the direct result of a retaliatory motive to punish Plaintiff for his

reporting activities." ECF 38 § 70-1 (Count 8). Both Counts rely heavily on allegations of the violation of Soper's constitutional rights. ECF 38 ¶¶ 23-26; 70-75.

These present new *Bivens* contexts that have previously been rejected by the Supreme Court. The Supreme Court has squarely held "that there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 499. In so holding, the Court not only found that a First Amendment *Bivens* claim is a new context, but also that, categorically, no *Bivens* claim is available for First Amendment claims. *Id.* at 499. (explaining that extending *Bivens* to the First Amendment context "would pose an acute risk of increasing [harassing litigation]" such that the implication of any remedy must be done by Congress, not courts).

#### b. There is no *Bivens* remedy for Fourth Amendment claims stemming from a search conducted with a warrant, or malicious prosecution.

Soper's Counts 5 and 6 seek a *Bivens* remedy for alleged Fourth Amendment violations. He alleges that Farrar and Money violated his Fourth Amendment rights by acting with personal animus against Soper and engaging in "forum shopping" by applying for and obtaining an arrest warrant from a Maryland state court, without "fundamental legal authority," ECF 38 ¶¶ 45-48, and sought and obtained a second warrant from a Maryland court to search the contents of Soper's phone. ECF 38 ¶ 54-55. Although *Bivens* was also a Fourth Amendment case, the similarities between *Bivens* and Soper end there, leaving Soper's case in a new context into which *Bivens* should not be extended.

The mere fact that a case is brought under the Fourth Amendment does not establish entitlement to a *Bivens* remedy. *See, e.g.*, *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (affirming dismissal of *Bivens* Fourth Amendment claim because the ranks of the defendants were higher and because case involved illegal electronic surveillance instead of a physical

search); *Annappareddy v. Pascale*, 996 F.3d at 135 ("[C]ourts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

A case presents a "new context" where, as here, a search is carried out with a warrant. *Orellana v. Godec*, 145 F. 4th 516, 525 (4th Cir. 2025) (holding that because search was conducted with a warrant, the "case involves a different right – and different policy implications – than *Bivens*."). In *Bivens*, federal agents conducted a search and arrest without a warrant. 403 U.S. at 389. The lack of a warrant was an essential part of the *Bivens* context, because "[w]hat *Bivens* involved was the Fourth Amendment right to be free of unreasonable *warrantless* searches and seizures." *Annappareddy*, 996 F.3d at 135.

The Fourth Circuit refused to find the same *Bivens* context in *Annappareddy*, when the plaintiff tried to assert a *Bivens* Fourth Amendment claim for malicious prosecution and searches conducted with a warrant. *Annappareddy*, 996 F.3d at 136–37. ("[T]his case, by contrast, involves searches and a seizure conducted *with* a warrant."). The Fourth Circuit noted that searches with a warrant "implicate[] a distinct Fourth Amendment guarantee" than the one at issue in *Bivens* – "that 'no Warrants shall issue, but upon probable cause…governed by different legal standards.'" *Id.* (quoting U.S. Const. amend. IV). The Fourth Circuit underscored the legal significance of a warrant by observing, "the Fourth Amendment sharply distinguishes between with-warrant and warrantless searches," treating the introduction of a warrant as a signal moment in the proceedings. *Id.* at 135–36.

The instant case is very similar to *Annappareddy*. Like *Annappareddy*, Soper alleges that federal agents maliciously prosecuted him, executed with-warrant searches without probable cause, and seized evidence with a warrant against him to continue his criminal prosecution.

*Compare, e.g.*, ECF 38 ¶¶ 45-48 (alleging obtaining warrants without legal authority) *with Annappareddy*, 996 F.3d at 126 (noting Annappareddy's civil rights complaint alleged that "investigators and prosecutors, working together, violated his rights under the federal Constitution and Maryland law, fabricating evidence against him"). These allegations are materially different from *Bivens*, placing the case in a new context.

**5. Because special factors counsel hesitation, the Court should decline to extend *Bivens*.**

Although the Supreme Court has held that a claim being a "new context" it itself is a dispositive factor, there are additional special factors in this case that also should foreclose relief. *Egbert*, 596 U.S. at 493.

First, alternative remedial schemes exist that apply to Soper's claims. For example, the Federal Tort Claims Act ("FTCA") may provide a potential remedy for malicious prosecution claims. 28 U.S.C. §§ 2679, 2680(h) (allowing claims for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" stemming from "acts or omissions of investigative or law enforcement officers of the United States Government"). In the *Annappareddy* case, for example, the Fourth Circuit affirmed the district court's dismissal of malicious prosecution and evidence fabrication *Bivens* claims brought under the Fourth and Fifth Amendments, but Annappareddy was permitted to go to trial against the United States on his FTCA claims.[3] *See generally*, *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021) (affirming dismissal of *Bivens* claims); *Annappareddy v. United States*, No. 23-2027, 2025 WL 314110 (4th Cir. 2025) (affirming district court's judgment in favor of the United States on Annappareddy's malicious prosecution claims).

---

[3] He lost. *Annappareddy v. United States*, No. 1:18-cv-03012-JFA, 2023 WL 6538392 (D. Md. Aug. 3, 2023), *aff'd* No. 23-2027, 2025 WL 314110 (4th Cir. Jan. 28, 2025).

Second, the Fourth Circuit has held that the nature of a malicious prosecution case such as this one itself counsels hesitation. Evaluating a claim that challenges "investigative and prosecutorial functions" and would require discovery into evidence fabrication, grand jury indictments, and the process of securing a warrant, threatens "a wide-ranging dive into all actions taken by each actor as well as all evidence available to investigators, prosecutors, judges, and juries," which is a special factor counseling hesitation. *Annappareddy*, 996 F.3d at 137–38 (quoting *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019). Such an "after-the-fact inquir[y] pose[s] the kind of risk of intrusion on executive-branch authority to enforce the law and prosecute crimes that counsels against implying a cause of action for damages." *Id.* at 134–35 (internal quotations omitted).

In sum, Soper advances no viable *Bivens* claim and the claims alleging a violation of his constitutional and civil rights must be dismissed.

**C. Even if Plaintiff's constitutional and civil rights claims were viable under *Bivens*, Farrar and Money enjoy qualified immunity as to those claims.**

Farrar and Money are entitled to qualified immunity, and Soper's constitutional and civil rights claims—whether asserted under *Bivens* or 42 U.S.C. § 1983—must be dismissed. Where federal officers' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" they are protected from civil liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is more than a defense to liability; it is immunity from suit. *Id.* at 231. Because the benefit of such immunity is "effectively…lost if a court erroneously permits a case to proceed to trial," questions of immunity must be resolved as early as possible. *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (benefits of immunity lost); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (importance of resolving immunity issues early).

Qualified immunity does not apply if "(1) the official violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). Government officials are shielded from civil damages liability as long as their actions could have reasonably been thought to be constitutional. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The unlawfulness, and ultimately the applicability of qualified immunity, turns on the "objective legal reasonableness" of the officers' action. *Id.* at 639. The law governing the qualified-immunity inquiry is the same under *Bivens* as in the § 1983 context. *Hicks v. Ferreyra*, 965 F.3d 302, 307 (4th Cir. 2020).

Here, qualified immunity applies because the issuance of valid warrants based on probable cause show that probable cause supported Defendant's actions and thus the actions were reasonable. "[A] law-enforcement official 'ordinarily receives qualified immunity if he or she relies on a judicially secured warrant.'" *Meeks v. Larsen*, 611 F. App'x 277, 283–84 (6th Cir. 2015) (quoting *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir.2005)). Notably, Soper does not allege that Farrar and Money lied to secure judicial warrants or presented false evidence to obtain them. The basis of his claim that they lacked probable cause rests upon his twin allegations that (1) a specific VA policy, "VA Policy 1078," "permits the recording of conversations during a medical appointment to ensure they can accurately recall specific instructions regarding prescription use and therapies," ECF 38 ¶ 11, regardless of whether the medical professional provides consent; and (2) they "acted outside their scope as federal officers" by failing to "first consult with the

local Federal Assistant Attorney BEFORE proceeding with ANY prosecution" in violation of statutory law and an alleged "VA policy police manual." ECF 38 ¶ 11, 13.

First, Soper is simply incorrect that he has an unfettered right to record without the consent of VA medical staff during a VA medical examination. There is no "VA Policy 1078." There is VHA Policy Directive 1078(1), *Privacy of Persons Regarding Photographs, Digital Images, and Video or Audio Recordings* (Nov. 19, 2014). But that policy is directed to VA healthcare providers and employees as to what *they* can record within a VA medical center and which recordings are permissible. *See* Exh. A, VHA Policy Directive 1078(1) (available at https://www.va.gov/vhapublications/publications.cfm?pub=1&order=asc&orderby=pub_Number ). Nowhere does that policy permit Soper to record without the consent of the person being recorded or otherwise provide Soper the leeway to record that he claims.

Second, Farrar and Money had the authority to work with local law enforcement officials with respect to Soper's alleged violation of Maryland law. That authority derives from statute, which provides that "[e]mployees of the Department who are Department police officers shall, with respect to acts occurring on Department property… conduct investigations, on and off Department property, of offenses that may have been committed on property under the original jurisdiction of Department, consistent with agreements or other consultation with affected Federal, State, or local law enforcement agencies…." 38 U.S.C. § 902(a)(1)(E). It also derives from applicable regulations governing VA police officers found at 38 C.F.R. § 1.218. And it derives from the VA Handbook 0730/3, which was in effect at all relevant times, and provides as follows:

> Employees who are duly appointed as VA Police officers (38 USC 902) have the authority to enforce Federal laws and VA regulations with respect to acts occurring on Department property, to arrest persons on Department property for offenses

> committed on that property, and to make arrests on warrants issued by competent judicial authority.

*See* Exh. B, VA Handbook 0730/3, at 6 ¶ 7.b(1) (2014) (available on the VA website at https://www.va.gov/vapubs/Search_action.cfm).

Defendants Farrar and Money acted within their authority to arrest Soper and seize evidence based on warrants issued by a Maryland court of competent jurisdiction. As such, they enjoy qualified immunity from suit and Soper's claims should be dismissed.

### D. Even if Soper's § 1985 and 1986 claims were viable, Farrar and Money enjoy qualified immunity from those claims.

Plaintiff also asserts a federal cause of action for a violation of his civil rights pursuant to 42 U.S.C. §§ 1985 and 1986. Plaintiff offers broad, conclusory allegations that Defendants Farrar and Money have acted in concert to deprive Plaintiff of his rights under the First and Fourth Amendments, and to "depriv[e] the Plaintiff of the equal protection of the laws and of his privileges under the Constitution." ECF 38 ¶ 28-29 (alleging a § 1985 conspiracy). Soper also alleges that Farrar and Money "had to power to prevent or aid in preventing the commission of these wrongs," meaning the conspiracy alleged with respect to the § 1985 claim, "but refused to do so." ECF 38 ¶ 34-35.

Soper's conspiracy claims are subject to dismissal because Soper has only made unsupported, conclusory allegations regarding a conspiracy without sufficient factual support. The Fourth Circuit has held that "[t]he law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a

consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir.1985)).

Under this standard, the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy" and has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id*. at 1377. Here, Soper has failed to put forth the facts required to support a conspiracy claim. He has only made unfounded conspiracy claims lacking support from the record evidence. In this sense he has failed to plead a cause of action under § 1985.

Additionally, Soper does not allege that he is a member of a protected class, or that the conspiracy was "motivated by some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) (cleaned up). For this reason, the claim also fails as a matter of law.

Even if Soper had pleaded a viable claim under § 1985, Farrar and Money are entitled to qualified immunity under that claim for the reasons described above. *See* Section II.B. For these same reasons, Soper's claim under § 1986 must also fail. The Fourth Circuit has recognized that "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." *Trerice*, 755 F.2d at 1085 (4th Cir. 1985) (citing 42 U.S.C. § 1986). Therefore, if the Court dismisses Soper's § 1985 claim, must also dismiss his § 1986 claim. *Trerice*, 755 F.2d at 1085.

### E. To the extent any tort claim could be asserted, it should have been brought against the United States under the FTCA after exhausting administrative remedies, which Soper has not done.

The Second Amended Complaint sets forth five tort claims against Farrar and Money: Defamation (Count 9), Civil Conspiracy (Count 10), False Imprisonment (Count 11), Malicious Prosecution (Count 12), and Intentional Infliction of Emotional Distress (Count 15). ECF 38 ¶¶ 78-112; 120-125. These claims fail individually, and also because Plaintiff has failed to bring these claims against the United States after exhausting administrative remedies.

Beginning with this last point, Plaintiff has alleged that the tortious conduct by Farrar and Money occurred within the scope of their employment, even though he brought those claims individually. Accordingly, those claims should have been brought against the United States, not Farrar and Money individually. The FTCA immunizes federal employees for "negligent or wrongful act[s] or omission[s]" committed "while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1) (2012); *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997). When federal employees are sued, the Attorney General certifies whether they were acting within the scope of their employment when the allegedly tortious acts occurred. *See* 28 U.S.C. § 2679(d); *Maron*, 126 F.3d at 321. The United States is then "substituted as the sole defendant," and "the plaintiff's sole route for recovery is the [FTCA]." *Id*. Here, Soper sued Farrar and Money in their individual capacities. But Soper's Second Amended Complaint contains allegations that only support the conclusion that both VA law enforcement officers were acting within the scope of their employment when they made an arrest and seizure of evidence based on judicially-issued warrants.

Even if the United States could be substituted as the appropriate defendant with respect to the tort claims at issue, the FTCA waives sovereign immunity for certain torts, provided that the

claims are first filed administratively with the relevant agency within two years of the date the cause of action arises, and the civil action is then filed in federal court within six months of the denial of the administrative claim by the agency. 28 U.S.C. § 2401(b). Failure to meet these requirements deprives a federal court of subject matter jurisdiction. *See Kokotis v. United States*, 223 F.3d 275, 278 (4th Cir. 2000) (stating that the timely filing of an administrative claim is a "key jurisdictional prerequisite"). As Soper has provided no basis to conclude that he submitted these tort claims to the VA, his claims were not administratively exhausted, and this Court lacks jurisdiction to hear these claims. However, even if Soper could maintain these tort claims against Farrar and Money individually, they each fail as a matter of law for different, and sometimes multiple, reasons.

**1. Soper's defamation claim is not viable.**

Soper has failed to plead an actionable claim for defamation. In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Indep. Newspapers, Inc. v. Brodie,* 966 A.2d 432, 448 (2009) (quoting *Offen v. Brenner,* 935 A.2d 719, 723–24 (2007)). For purposes of the first element, a "defamatory statement" is one that tends to expose a person to "public scorn, hatred, contempt, or ridicule," which, as a consequence, discourages "others in the community from having a good opinion of, or associating with, that person." *Brodie,* 966 A.2d at 448 (quoting *Offen,* 935 A.2d at 724). Under the second element, a "false" statement is one "that is not substantially correct." *Batson v. Shiflett,* 602 A.2d 1191,

1213 (1992). The plaintiff carries the burden to prove falsity. *Id; see also Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (2012).

In addition, Farrar and Money enjoy qualified privilege under the Maryland law of defamation they fall under one of the four recognized privileges. These are (1) the public interest privilege, to publish materials to public officials on matters within their public responsibility; (2) the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others; (3) the fair comment privilege; and (4) the privilege to make a fair and accurate report of public proceedings. *Shirley v. Heckman*, 75 A.3d 421, 426 (2013).

Here, Soper alleges that Farrar and Money—though he does not indicate which Defendant made the statements—told local law enforcement that Soper was a "convicted" criminal while his appeal was pending, and that he was "dangerous to the public and police officers at large." ECF 38 ¶ 81. The statement that Soper had been convicted was true at the time, as Plaintiff himself admits (and remained true through his appeal). ECF 38 ¶ 82. In addition, Soper admits that these statements were made by Farrar and/or Money to local law enforcement authorities for the purpose of obtaining an arrest warrant for a criminal trespass charge. Providing information regarding pending or potential criminal charges was within Farrar and Money's "public responsibility" as law enforcement officers, and therefore they enjoy qualified immunity.[4]

---

[4] As noted above, if Soper were required to bring his tort claims against the United States because the Second Amended Complaint essentially alleges that Farrar and Soper acted as VA police officers when they engaged in the purportedly tortious conduct, the claim should be dismissed because Soper did not do so and cannot do so now. However, with respect to the defamation claim, there is an additional barrier to an action under the FTCA. A claim of defamation is excepted from the waiver of sovereign immunity and cannot be brought under the FTCA, even against a law enforcement official. 28 U.S.C. § 2680(h).

Soper's defamation claim against Farrar and Money should be dismissed.

**2. Soper's false imprisonment claim is not viable.**

Under Maryland law, to establish false imprisonment, "a plaintiff must show: (1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification. *McCullough v. Anne Arundel Cty., Md.*, No. 19-926, 2020 WL 836235, at *11 (D. Md. Feb. 20, 2020). The determination of "[w]hether legal justification exists depends on whether the officer acted with legal authority to arrest." *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 380 (D. Md. 2018) (*citing Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995)). In this regard, "a law enforcement officer is not liable for…tortious conduct performed during the course of his official duties unless he acted with 'actual malice.'" *Jackson v. United States*, 77 F. Supp. 2d 709, 715 (D. Md. 1999).

Maryland courts have defined "actual malice" to be "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, or ill-will or fraud....'" *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (citation omitted) (ellipses in original). And so, courts of this District have explained that a showing of actual malice requires proof that the law enforcement officer "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Rich v. United States*, 158 F. Supp. 2d 619, 629 (D. Md. 2001) (quoting *Lovelace v. Anderson*, 730 A.2d 774, 788-89 (Md. 1999), *rev'd on other grounds*, 655 A.2d 401 (Md. 1995)).

Soper has failed to allege—beyond conclusory statements—that either Farrar or Money were motivated by the requisite level of malice to avoid immunity. Even if Soper could allege specific acts of actual malice, he has not shown that they acted without authority when arresting

Soper and seizing his cell phone for evidence on the basis of judicial warrants. His claim of false imprisonment fails as a matter of law.

### 3. Soper's malicious prosecution claim is not viable.

Soper alleges that he was the victim of malicious prosecution. ECF 38 ¶¶ 96-103. In Maryland, a claim for malicious prosecution requires: "(1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Candelero v. Cole*, 831 A.2d 495 (2003) (cleaned up); *Bailey v. City of Annapolis*, 258 A.3d 894, 900 (2021). The malicious prosecution claim fails against Farrar and Money on at least three of the four elements.

First, for the reasons discussed above, Farrar and Money had probable cause to arrest Soper based on the issuance of a judicial warrant. Thus, the tort claim fails on the second element.

Second, there is no indication that Farrar and Money acted with malice. Merely reciting the elements of malicious prosecution, "without further explanation" or allegation of facts showing malice fails the 12(b)(6) standard. *Stuart v. Lowe's Home Cntrs*., LLC, 737 Fed. App'x 278, 281 (6th Cir. 2018) (granting motion to dismiss where "the complaint makes no factual assertion, nor provides any basis for the court to infer, that" defendant acted with malice). The Supreme Court has made clear that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982) (discussing discretionary function exception).

Here, Soper fails to offer anything more than conclusory statements to plead malice and bias and thus cannot survive a motion to dismiss. Maryland defines the element of malice as "a wrongful or improper motive in initiating legal proceedings against the plaintiff." *Montgomery Ward v. Wilson*, 664 A.2d 916, 924 (Md. 1995). The Court has explained that the malice element is meant to capture prosecutions "initiated upon weak and unsubstantial ground" in order to annoy, frighten, or coerce an individual. *Johns v. Marsh*, 52 Md. 323, 332, 1879 WL 6052, at *5 (Md. App. 1879). *See also Montgomery*, 664 A.2d at 924–25 (quoting *Johns*, 52 Md. at 332–33). A prosecution initiated to "'vindicate[e] public justice'" is not malicious. *Id*. (quoting *Johns*, 52 Md. at 332–33). Likewise, "negligence in instituting unjustified criminal proceedings against the plaintiff cannot satisfy the 'malice' element." *Id*. at 925.

Third, malicious prosecution requires termination of the proceeding in favor of the plaintiff. Concerning this fourth element, a criminal proceeding is terminated when any of the following occur: "a judge discharges the accused at a preliminary hearing, refusal of a grand jury to indict, the formal abandonment of the proceedings by the public prosecutor, quashing of an indictment or information, acquittal, or a final order in favor of the accused by a trial or appellate court." *State v. Meade*, 647 A.2d 830 (1994) (quoting Restatement (Second) of Torts, § 659) (cleaned up). Malicious prosecution cannot be found where a plaintiff was convicted on one charge and all others were dropped. *See Candelero v. Cole*, 831 A.2d 495, 500 (2003) (where plaintiff dismissed on all counts but one, the conviction was sufficient to defeat the claim) . Here, while found not guilty on a disorderly conduct charge, Soper admits that he was convicted on "state wiretap charges, [and] the court imposed a sentence of 90 days incarceration, suspended and eight (8) months of supervised probation." ECF 38 ¶ 20. The decision of the Appellate Court of Maryland states that he was convicted on eight counts under the Wiretap Act,

and not convicted of a single disorderly conduct charge. *Soper v. State*, 2026 WL 63063, at *1 Accordingly, Soper cannot establish the fourth element for a malicious prosecution case, and the claim must be dismissed.

**4. Soper's intentional infliction of emotional distress claim is not viable.**

In Count 15 of the Second Amended Complaint, Soper alleges that Farrar and Money intentionally inflicted emotional distress by "knowingly initiating a prosecution with 2 void warrants, specifically out of personal animus and malice…and pursuing the unlawful case through trial" was intentional and outrageous conduct that caused severe emotional distress. Soper's claim fails as a matter of law.

The elements of the tort of intentional infliction of emotional distress ("IIED"), first recognized in Maryland in *Harris v. Jones*, 380 A.2d 611 (1977), are: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." (Citing *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (Va. 1974).) "Extreme and outrageous" conduct is such that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 380 A.2d 611 (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). "Whether the conduct complained of meets this test is, in the first instance, for the court to determine[.]" *Batson*, 602 A.2d at 1191.

In the 40 years since the Maryland Supreme Court recognized the tort of IIED, it has upheld such claims only a handful of times. *See Faya v. Almaraz,* 620 A.2d 327 (1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo–Torres v. Nickel,* 584 A.2d 69 (1991) (reversing dismissal

when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.,* 538 A.2d 1175 (1988) (cause of action for IIED could exist when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.,* 492 A.2d 1270 (1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide). The Maryland Supreme Court has emphasized that "the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. v. Weathersby,* 607 A.2d 8 (1992).

The behavior in this case does not rise to the level of extreme or outrageous conduct. Farrar and Money executed judicial warrants in the arrest of Soper and in obtaining evidence from his cell phone, all of which led to his conviction under Maryland wiretap laws, as Soper admits. ECF 38 ¶ 20.

Moreover, even if Soper had sufficiently pleaded that Farrar and Money engaged in extreme or outrageous conduct, he failed to sufficiently plead that he suffered severe emotional distress. Maryland courts have repeatedly held that a complaint alleging intentional infliction of emotional distress must allege and prove the elements for that tort "with specificity." *Foor v. Juvenile Services Admin.*, 552 A.2d 947, *cert. denied*, 558 A.2d 1206 (1989). Soper offers a conclusory allegation that he suffered severe emotional distress. ECF 38 ¶ 124. The allegation is without specificity or detail, and it is insufficient to survive a motion to dismiss.

**5. Soper's civil conspiracy claim is not viable.**

Soper alleges that Farrar and Money engaged in a vast, wide-ranging civil conspiracy with the other Defendants for the purpose of bringing a false and malicious prosecution against Soper, for which he admitted he was convicted. His claim fails as a matter of law.

A claim for civil conspiracy requires proof of the following elements: "(1) A confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) Actual legal damage resulting to the plaintiff." *Van Royen v. Lacey,* 277 A.2d 13, 14–15 (1971) (cleaned up); *Damazo v. Wahby,* 270 A.2d 814 (1970).

Maryland courts have consistently held that "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.,* 665 A.2d 1038, 1044–45 (1995); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (2007). Where, as here, there is no legally viable tort alleged to support a civil conspiracy claim, then the claim must fail. *Lloyd*, 916 A.2d at 284. Soper does not have a viable tort claim for defamation, false imprisonment, malicious prosecution, or IIED, for the reasons discussed above. Accordingly, his civil conspiracy claim fails, as well.

**F. Soper's claim that his journalistic materials were protected from search or seizure under the Privacy Protection Act is not viable.**

Soper claims that he is entitled to bring an action against Farrar and Money under the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, *et seq.*, over the seizure of what he claims are journalistic materials intended to be covered by the PPA. ECF 38 ¶¶ 61-68. However, this

Court need not delve into whether the materials were sufficiently "journalistic" under the PPA, because Soper's criminal activity places him entirely within an exception to the PPA.

The PPA was passed in response to *Zurcher v. Stanford Daily,* 436 U.S. 547 (1978), a Supreme Court decision upholding the constitutionality of a search of the *Stanford Daily* newspaper. *See* S. Rep. 96–874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3950–51. In *Zurcher,* police officers obtained a warrant to search the newspaper's offices for photographs revealing the identities of persons who assaulted police officers during a demonstration. Reversing the district and appellate courts, the Supreme Court held that the search did not violate the Fourth Amendment, even though none of the newspaper's members were suspected of involvement in the unlawful activity. *See Zurcher,* 436 U.S. at 553–60. In response, Congress enacted the PPA to afford "the press and certain other persons *not suspected of committing a crime* with protections not provided currently by the Fourth Amendment." *See* S. Rep. 96–874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3950 (emphasis added); *see also Sennett v. United States*, 778 F. Supp. 2d 655, 661 (E.D. Va. 2011), *aff'd,* 667 F.3d 531 (4th Cir. 2012) (discussing history and exceptions to the PPA). Specifically, the statute states:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate commerce....

42 U.S.C. § 2000aa(a). While these protections include materials searched or seized by warrant, there is an exception that applies in this case.

PPA's prohibition against obtaining PPA-protected materials by search and seizure is subject to the "suspect exception." *Sennett*, 778 F. Supp. 2d at 662. Under this exception, even where "work product materials" or "documentary materials" are seized, the PPA is not violated

if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." *Id.* (citing § 2000aa(a)(1), (b)(1)). The "suspect exception" advances the goal of the PPA, which is "to protect *innocent* third parties in possession of documents and papers from governmental intrusions which would unnecessarily subject their files and papers to search and seizure." *S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 567 (6th Cir. 2007) (quoting S. Rep. 96–874, at 14 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3961) (emphasis added).

In this case, Soper was a suspect who was the target of a criminal investigation to which the search and seizure of the cell phone specifically related. As discussed above, there was probable cause to search his cell phone based on a judicial warrant. His cell phone was searched to establish the unlawful recording activity that later led to his conviction for wiretap offenses. Accordingly, Soper falls squarely within the exception to the general protections of the PPA. This claim should be dismissed.

## IV. CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety or enter summary judgment in favor of Defendants.

Date: October 6, 2026

Respectfully submitted,

Kelly O. Hayes
United States Attorney

*<u>/s/ Theodore W. Atkinson</u>*
Theodore W. Atkinson
(Bar No. 32225)
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4921
theodore.atkinson2@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on October 6, 2026, I caused a copy of the foregoing to be served on Plaintiff by filing a copy of the same through this Court's CM/ECF system, in accordance with Local Rule 102(1)(c).

*/s/ Theodore Atkinson*
THEODORE W. ATKINSON
Assistant United States Attorney