# Exhibit B

to the

Memorandum in Support of Federal Defendants'
Motion to Dismiss or, Alternatively, for Summary Judgment

*Soper v. Farrar, et al.*, No. 1:26-cv-00069-JRR (D. Md.)

## SECURITY AND LAW ENFORCEMENT

1. **REASON FOR ISSUE:** This handbook establishes procedures that implement the policies contained in VA Directive 0730, Security, and Law Enforcement. This Handbook contains specific requirements to meet VA's implementation requirements for Title 38 United States Code 902. The newly added material will be inserted where indicated to the VA Handbook 0730, August 11, 2000 edition.

2. **SUMMARY OF CONTENTS AND MAJOR CHANGES:**

a. **Summary.** This handbook contains procedures for physical security, law enforcement, and training activities for the Department's Security and Law Enforcement Program. It identifies responsibilities of the Office of Operations, Security, and Preparedness, (OSP) Office of Security and Law Enforcement (OS&LE) and field elements in ensuring the protection of persons and property on Department property.

b. **Major Changes added:**

(1). Carry of weapons off VA property by VA Police officers on official business.

(2). Arrest authority by VA Police on warrants issued by a competent judicial authority.

(3). Procedures for conducting investigations off VA property by VA Police officers.

(4) Uniform Allowance for field level VA Police officers.

3. **RELATED DIRECTIVES:** VA Directive 0730, Security and Law Enforcement.

4. **RESPONSIBLE OFFICE:** Office of Operations, Security, and Preparedness (OSP), Office of Security and Law Enforcement (OS&LE), Police Service (07B), is responsible for the material contained in this handbook.

5. **RESCISSION:** None

**CERTIFIED BY:**

/s/
**Stephen W. Warren**
**Executive in Charge and**
**Chief Information Officer**

**BY DIRECTION OF THE SECRETARY OF VETERANS AFFAIRS:**

/s/
**Kevin T. Hanretta**
**Assistant Secretary for**
**Operations, Security and Preparedness**

**Department of Veterans Affairs**
**Washington, DC 20420**

**VA HANDBOOK 0730/ 3**
**Transmittal Sheet**
**July 11, 2014**

**Summary of Changes in this Handbook**

Language in paragraph 3.e.(1-3) was updated
Language in paragraph 4, c and 4.d was updated
Language in paragraph 7.b.(1) was updated
Language in paragraph 7.b.(4) was updated
New Paragraph at paragraph 7.b.(5) was added
Language in paragraph 7.e.(1) was changed
Language in paragraph 7.e.(2)(a and b) and 7.e(3) was inserted
The following existing paragraphs are retained and were re-numbered:

Language in existing 7.e (1) and 7.e.(8) (a and b) has been incorporated into to the new 7.e(2)(a and b).
7.e(2) is now 7.e(4)
7.e(3) is now 7.e(5)
7.e(4) is now 7.e(6)
7.e(5) is now 7.e(7)
7.e(6) is now 7.e(8)
7.e(7) is now 7.e.(9)

New material was inserted into paragraphs 7.l.(1) through (6).
The following existing paragraphs are retained and were re-numbered:

7.l(2) is now 7.l(7)
7.l(3) is now 7.l(8)
7.l(4) is now 7.l(9)
7.l(5) is now 7.l(10)
7.l(6) is now 7.l(11)
7.l(7) is now 7.l(12)
7.l(8) is now 7.l(13)
7.l(9) is now 7.l(14)
7.l(10) is now 7.l(15)
7.l(11) is now7.l(16)
7.l(12) is now 7.l(17)
7.l(13) is now7.l(18)
7.l(14) is now 7.l(19)
7.l(15) is now 7.l(20)
7.l(16) is now 7.l(21

Paragraph 10.a and 10.b were completely revised..:
The following existing paragraphs are retained and were re-numbered:

10.b is now 10.c
10.c is now 10.d
10.d is now 10.e
10.e is now 10.f
10.f is now 10.g

Paragraph 12.a was updated with new material. All other existing language is retained and no re-numbering needed.

**SECURITY AND LAW ENFORCEMENT**

3. HUMAN RESOURCE ISSUES:

e. **Weapon Policy and Arrest Reporting Notification.** During initial processing, a VA Form 9044, Weapon Policy, Law Enforcement Jurisdiction, and Arrest Reporting, will be provided to each newly employed VA Police officer to read Part I, the notification, and to sign Part II, the acknowledgment of notification.

(1) On an annual basis, in the month of October, all officers will read and sign a new VA Form 9044.

(2) The signed original (from initial processing) and current VA Form 9044 will be retained until the officer leaves employment.

(3) The following language is <u>added</u> to the existing VA Form 9044 (July 2004):

> "I understand that my VA-issued weapon will not be used for the off-duty carry provisions of the Law Enforcement Officers Safety Act (18 USC 926).
>
> "I will maintain reasonable care in safeguarding my duty weapons while carrying off of VA property".
>
> Should I receive authorization to bring my VA issued firearm to my domicile, I will use the issued child-safety trigger lock and secure the VA issued firearm from theft or misuse while storing at my residence (VA Handbook 0720, paragraph 3.d.3)
>
> "I will immediately report **<u>any</u>** incident involving my issued firearm to the appropriate management official. Incidents are defined as, but not limited to, any use of the duty firearm; attempted or actual theft; damage to the firearm or damage to personal property related to the firearm, and drawing or displaying the issued firearm."
>
> "I understand that a personally owned firearm will never be carried when wearing a VA Police uniform."

4. BASIC AND SPECIALIZED TRAINING

c. **Retraining & Recertification.** When a VA Police officer has been separated from a VA Police and Security unit for more than 6 months, the officer will be retrained and recertified on all department issued weapons before being issued a credential and badge set.

**d. Initial Entry and In-Service Training.** All VA Police officers will undergo a formal schedule of required initial entry training immediately upon employment and completed in accordance with guidance provided by the Law Enforcement Training Center (LETC).

Thereafter, continuing in-service training must be conducted to include required subjects as well as additional subjects determined locally as needed to maintain officer skills. Continuing in-service training must be accomplished in accordance with guidance from the LETC.

(1) Initial training for OC Projector and Baton certification must be provided by the LETC to newly appointed VA Police officers. Annual recertification training will be conducted by VA Police officers who are designated as Authorized Weapon Instructors by the Deputy Assistant Secretary/Director for Security and Law Enforcement in accordance with direction of the LETC. Also, all VA Police officers must complete training unit # 20 provided by the Law Enforcement Training Center (LETC) and pass the exam associated with carrying firearms off VA property, conducting investigations and making arrests.

(2) Initial firearms qualification must be accomplished by new police officers at the Law Enforcement Training Center, North Little Rock AR during the VA Police Basic Police Officer Course (BPOC). Upon return to the new officers' assigned location, they must qualify with their assigned VA issued firearm before carrying that firearm on duty.

(3) Officers must qualify with their VA issued firearm every 6 months under the direction of an OS&LE certified firearms instructor.

(4) Officers must fire a minimum of 800 rounds each fiscal year with their VA issued firearm.

(5) Officers must complete annual, semi-annual, and quarterly required firearms training as specified by the LETC. This training will be documented in the officers' training folder.

7. LAW ENFORCEMENT PROCEDURES

**b. Statutory Arrest Authority**

(1) Employees who are duly appointed as VA Police officers (38 USC 902) have the authority to enforce Federal laws and VA regulations with respect to acts occurring on Department property, to arrest persons on Department property for offenses committed on that property, and to make arrests on warrants issued by competent judicial authority.

(2) In the absence of an arrest warrant, VA Police officers may arrest only when:

(a) A felony is committed in the officer's presence or there is probable cause to believe that a felony has been committed and the person the officer intends to arrest committed the offense.

(b) The offense is a misdemeanor or infraction and is committed in the officer's presence. If the misdemeanor is not committed in the officer's presence, the known facts of the incident will be communicated to the U.S. Attorney for guidance and instructions for the appropriate action to be taken.

(c) In a proprietorial jurisdiction, VA Police officers are authorized to arrest solely for Federal offenses and violations of VA rules and regulations. The local VA Regional Counsel will be consulted to determine the extent of such common law, private citizens arrest authority. Accordingly, such arrest authority will be utilized only where absolutely necessary and maximum use of local law enforcement agencies made.

(3) VA Police may enforce the traffic and motor vehicle laws of the state or local government within the jurisdiction of which the VA property is located as authorized by an express grant of authority under applicable state or local law. This enforcement is limited to the issuance of a citation.

(4) VA Police officers will exercise arrest authority (on VA property) only following a successfully adjudicated cleared background check at the Moderate Background Investigation (MBI) level and the issuance of VA Form 10045, Police Officer credential and the police badge set.

(a) Directors are authorized to suspend the arrest authority of any VA Police officer whose judgment or professional competence is in doubt.

(b) The basis for the suspension of arrest authority will be fully documented and necessary action, such as counseling, and/or appropriate in-service training, will be given to the employee to remedy the cause of arrest authority suspension.

(c) If the employee’s professional competence does not improve sufficiently to restore the arrest authority with a reasonable period of time, for example, 60 days, appropriate administrative action (which may include disciplinary or adverse action) will be taken.

(d) Any officer failing to successfully complete the basic course of training at the VA Law Enforcement Training Center will have the law enforcement authority withdrawn and the officer will no longer be qualified to perform law enforcement duties within VA.

(e) VA Police officers will not be deputized or appointed as special police officers or otherwise empowered with law enforcement authority by state, municipal, county, or other non-VA agencies for the purpose of enforcing state laws or local ordinances on VA property.

(f) Any state or local law enforcement authority held by a VA Police officer will not be exercised during scheduled tours of duty.

(5) A holding room will be established for the short term detention of subjects in custody. The design and furnishing of the holding room will be in accordance with the most current VA Office of Construction and Facility Management Space and Design criteria.(See Mission Critical Physical Security Design Manual, Chapter 5.12, “Police Operations and Holding Room;” http://www.cfm.va.gov/til/PhysicalSecurity/dmphysecmc_02.pdf, and VA Space Planning Criteria, Chapter 279-“Police Service” http://www.cfm.va.gov/til/space/SPchapter279.pdf, or successor documents.

**e. Arrest and Post Arrest Procedures**

(1) Off Property Arrests: VA Police officers do not have off property arrest authority under the governing statute (38 USC 902). This includes while in transit between Department properties or while conducting off property investigations. Any arrest actions that are required in those situations will be coordinated with the local agency of jurisdiction.

(2) On Property Arrests: Arrest procedures should be judiciously followed. In all circumstances warranting the arrest of an individual, the arresting VA Police officer must ensure that the rights and privileges guaranteed by the Constitution are protected at all times, including appropriate Miranda warnings

(a) An arrestee will be transported without unnecessary delay to a detention facility or to the appropriate judicial authority (U.S. Magistrate, local Magistrate, or local Judge) for an initial appearance, in accordance with law and established instructions.

(b) To the extent possible, persons arrested will be transported by the U.S. Marshals Service or local police. When such transport cannot be arranged, VA Police will transport the person arrested in accordance with instructions of the U.S. Attorney or local prosecutor. In some U.S. Districts, the U.S. Attorney may specify that the U.S. Marshal be called to transport arrested suspects, whereas in other U.S. Districts, the U.S. Attorney may prescribe that the arresting agency transport the offender.

(3) Warrant Arrests: Officers may arrest (on VA property) in accordance with a warrant issued by competent judicial authority. The following are the requirements for the use of this authority:

(a) The warrant must be confirmed and validated by the issuing agency or department holding the warrant. Date, time, and name of the official validating the warrant will be documented in the Uniform Offense Report (UOR).

(b) The issuing agency or department indicates that they will extradite if needed

(c) Local law enforcement or the U.S. Marshal is not immediately available to affect the arrest and transport the individual.

(d) VA Police officers will not conduct transports to off-property confinement facilities unless the minimum VA Police officer staffing requirement can be maintained at the facility. In all circumstances, the Chief of Police will make the decision.

(e) Establish and maintain current workable support agreements with law enforcement officials that address at least the following;

1. Officer involved shootings.

2. Support of investigations both on and off property.

3. Transportation of persons (as required).

4. Traffic control adjacent to VA property.

5. Arresting on local or state warrants.

6. Support and responsibilities in the event of VA facility emergencies.

**l. Investigations :**

(1) Persons appointed as VA Police officers are authorized to conduct investigations on and off VA premises into alleged violations of Federal law and VA rules occurring on Department property.

(2) Assignments that will lead to investigations off property will be approved by the Office of Operations, Security, and, Preparedness (OSP), Office of Security and Law Enforcement (OS&LE) in VA Central Office. Such authority will only be granted on a case by case basis and will only address incidents (or suspected incidents) occurring within VA's jurisdiction. This approval will be based on one or more of the following:

(a) Reason to believe there has been, is ongoing; or will be criminal activity that will immediately affect the safety and security of VA people or assets, or

(b) Major Felony Crime immediately impacting VA facilities that may cause harm to an individual. Includes evidence of an immediate threat to VA officials, or

(c) Imminent threat to the VA facility or loss of life of any person.

(3) The process for gaining OS&LE approval of an off-property investigation is:

(a) The facility director and Chief of Police have determined the need for the off-property investigative work.

(b) The Chief of Police will contact the VA Integrated Operations Center (IOC). The IOC will make contact with the OS&LE Watch Officer in the VA Integrated Operations Center. The IOC is a 24 hour daily operation.

(c) Provide the OS&LE Watch Officer with sufficient information to justify the request. This includes, but is not limited to: suspect identification; events that have led the officer to conclude the necessity of the off-property work; expected outcome of the investigative work; the planned period of the off-property work.

(d) After receiving OS&LE approval, the Chief of Police will have the VA Police officer carry out the work.

(e) Approval will be documented concurrently by OS&LE (in an automated tracking system) and by the requesting VA Police Officer in the Veteran Affairs Police System Uniform Offense Report resulting from the investigation.

(f) The Chief of Police will ensure the VA Police officer provide a complete copy of the resulting investigative Uniform Offense Report to OS&LE. If the off-premises investigation was not successful, the report will still be submitted to OS&LE for tracking purposes.

(g) All approvals will be documented in the daily police journal and resulting uniform-offense report.

(4) The extent of VA Police involvement in investigative activities will be based on previously established threshold agreements with other Federal agencies. The following coordination must be accomplished to the fullest possible extent before initiating an off-property investigation;

Facility Leadership

United States Attorney's Office

Local law enforcement agency

VA Regional Counsel

VA Office of Inspector General

Other agencies as appropriate (, FBI, DEA, ATF etc).

(5) The Office of Security and Law Enforcement (OS&LE) coordinates or conducts investigations of all incidents involving VA Police officer use of firearms. This includes, but is not limited to:

(a) Officer involved shootings, whether on or off property

(b) Misuse of firearm, such as unauthorized display or drawing

(c) Loss or theft of the firearm, regardless of location

(d) OS&LE will generally not directly conduct or coordinate investigations of police officer off-duty incidents involving non-VA firearms under this process. However, the requirements of VA Directive and Handbook 0321, "Serious Incident Reports," must be followed as appropriate.

(6) Any firearm-related incident (discharge of a firearm except during authorized training) involving VA Police officers, regardless of location of occurrence, will be handled through the following process below:

(a) The VACO OS&LE Watch Officer will be immediately contacted through the VA Integrated Operations Center (VAIOC)

(b) The responsible VA Chief of Police or other facility management official will immediately gather and transmit to the OS&LE Watch Officer the following information:

(1) Training records-specifically date of last firearm training and qualification.

(2). In coordination with the Employee Health Clinician, the date of the most recent medical and psychological assessments of the involved officer(s).

(3). The length of VA service of the officer.

(4) Depending on the severity and complexity of the incident, OS&LE may dispatch an Agent to the facility to conduct an on-site review.
:

**10. WEAPONS**

a. Authorized Weapons.

(1) Police officers meeting the qualification and training requirements of VA Directive and Handbook 0720, "Program to Arm VA Police" and paragraph 3 of this Handbook, will be armed on duty with firearms.

(2) The type of firearm and ammunition must meet the specifications established by the Office of Security and Law Enforcement. In addition, all VA Police officers will be armed and trained in the use of the approved baton and chemical irritant projector.

(3) Uniformed officers will have a minimum of two intermediate weapons (baton and chemical irritant projector). Non-uniformed officers will possess at least one when armed.

b. **Carrying of Firearms:**

(1) Definitions:

(a) The term "carry" is defined as a VA Police officer being armed with a fully loaded Department-issued firearm and/or other weapons that are properly holstered and available for immediate deployment.

(b) Normal (on-property) carry: All persons with VA police officer appointments (38 USC 902) will be armed at all times while on duty with the Department-issued weapons described in this section. Exceptions may be made for situations where the presence of a firearm or other

weapons is inappropriate or may expose the officer to unnecessary risk or exposure, such as undercover or covert investigations.

(c) Off-property carry: Officers may be armed with the VA issued weapons while off of VA property in an official capacity or while on official travel status. Off-property carry is further divided into "routine" and "non-routine."

1. The approval for a VA Police Officer to carry his/her firearm off VA property must be received from his/her Chief of Police or Designee prior to the officer leaving the facility during "routine or non-routine" duty-carry.

2. In all cases, the off-property carry will be documented in the Veteran Affairs Police System (VAPS).

(2) **Routine Off-Property Duty Carry:**

(a) The following routine circumstances for off property carry [10.b.(2) 1-7] are in addition to the requirements provided in VA Directive and Handbook 0720 "Program to Arm Department of Veterans Affairs Police", (http://www1.va.gov/vapubs/viewPublication.asp?Pub_ID=92&FType=2). [1] Revisions to off property carry authority that conform to this Handbook will be made in a future edition of VA Handbook 0720

(b) Officers may carry their issued duty weapon off VA property for the following routine official purposes (1 thru 7 below):

1. Servicing an official vehicle.

2. Search and Recovery of Critical Missing Patient.

3. In transit between VA facilities while on duty.

4. Transporting persons in an official capacity. This includes transportation of arrested persons; transportation of principals in an offense (victims, witnesses, suspects) as needed for investigative reasons.

5. Court appearances subject to any firearm restrictions established by the appropriate U.S. District or other local court system.

6. Authorized training travel (i.e. firing range or activities involving training with a firearm). VA Police Officers are not authorized to fly commercial aircraft while armed.

7. When conducting an official investigation off property, as defined in this Handbook under paragraph 7, "Law Enforcement Procedures.".

(c) Authority to fly on commercial aircraft while armed is limited to appropriately credentialed OS&LE Special Agents who have completed the required training course. OS&LE Special Agents may be armed anytime/anywhere. Facility level VA Police Officers are not authorized to fly armed.

(3) **Non-routine Off-Property Duty Carry:**

(a) The following activities are non-routine and require VACO approval. Approval for non-routine use will be documented in writing. The non-routine off-property carry will be documented in the Veterans Affairs Police System (VAPS). OS&LE will internally track such approvals. The Director, Police Service is the approval authority for non-routine off property carry.

(b) While representing the Department in an official capacity (i.e. funerals, official liaison events). OS&LE pre-approval must be gained if an officer will be attending a funeral or other special event as a representative of VA while carrying a firearm.

(c) OS&LE approval is not required for Officers to wear their official uniform at any funeral on their own personal time. However, the officer will not wear their duty or personal firearm when participating in such an occasion.

(d) Deployment/Response to a national emergency, as defined in the National Response Framework.

(e) Supporting the movement of medical caches and supplies, including decon units and mobile medical clinics and/or mobile pharmacies.

(f) Supporting executive protection details.

(g) Any other official function not listed above. OS&LE will be consulted early to determine the necessity of this use.

(4) **VACO Approval Procedures:**

The process for gaining OS&LE approval for non-routine off-property firearm carry is:

(a) The request will come from the Facility Director, Chief of Police or Authorized Designee.

(b) The OS&LE Watch Officer will be contacted through the VA Integrated Operations Center, which is staffed 24 hours daily.

(c) The request will include justification for the off-property carry; expected time frames; the names and identification of the involved police officer(s).

(d) Approval will be documented concurrently by the facility in the VAPS and by OS&LE in an automated tracking system.

(e) On a regular basis, approvals and outcomes will be audited.

(f) OSP/OS&LE may directly authorize off-property carry independently of this process.

## 12. POLICE UNIFORM AND APPEARANCE

### a. Use of Uniform Allowances

(1) VA Police officers must wear the uniform described in this Handbook (Appendix D, August 11, 2000 edition) while on patrol or similar assignments. Exceptions may be made at the facility level for detectives, criminal investigators, and physical security specialists whose primary duties are follow up investigation, security inspections, surveys, or audits. VA Police officers in those roles will wear business attire appropriate to their duties. Chiefs of Police may also choose to wear appropriate business attire while on duty and representing the facility and Department. The standards and requirements for VA Police uniforms are outlined in VA Handbook 0730 Appendix D, dated August 11, 2000.

(2) The authorized amount of the uniform allowance will be consistent with Office of Personnel Management regulations at 5 CFR 591.103 (see 38 USC 903).

(3) The officers will purchase the uniforms through a centralized system tied to the National Acquisition Center. The Chief of Police of each facility will coordinate and work with his/her management on funding.

(4) All items of uniform, except weapons, may be worn by VA Police officer’s enroute between home and facility.