# In The Federal District Court for Maryland

| | | |
|---|---|---|
| Kevin A. Soper (Pro Se) | * | |
| | * | |
| v | * | Case Number 1:26-cv-00069 |
| | * | |
| Willie Farrar, Dale Money | * | |
| Robert Sentman, | * | Plaintiff consents to Magistrate Jurisdiction |
| Charlene M. Notarcola | * | Jury Trial Demanded |

## Plaintiff's Response to VA Police Defendant's Motion to Dismiss the Second Amended Complaint

Plaintiff Kevin A. Soper files his Response in opposition to the VA Police Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") (ECF No. 52).

## Index


**I. Introduction** 3

**II. Standard of Review** 4

**III. The Defense Mischaracterizes the SAC's Core Allegation — Officers Acted Ultra Vires and Under Color of State Law, Not Within the Scope of Federal Employment** 4

**IV. No Westfall Act Certification Was Made — the FTCA Argument Fails** 6

A. The Statutory Requirement 6

B. No Certification Was Filed 6

C. Ultra Vires Conduct Cannot Be Within the Scope of Employment 7

D. What Federal Interest Supports Representing Employees Acting as Private Citizens? 7

**V. The Bivens Arguments Are Inapposite — the SAC Alleges Color of State Law, Not Federal Law** 7

A. The SAC's Theory Is State Action, Not Federal Action 8

B. VA Police Acted as Private Persons Under Color of State Law 8

C. The "Willful Participant" Doctrine Applies Here 9

D. No Memorandum of Understanding Exists 9

E. 38 U.S.C. § 901 and § 902 Limit VA Police Authority to Department Property 9

F. The Defense's Bivens Analysis Addresses the Wrong Legal Framework 10

**VI. The § 1983 Claims Are Properly Alleged Against Farrar and Money** 10

A. Federal Officers Acting Under Color of State Law Are Subject to § 1983 11

B. The SAC Alleges a Conspiracy with State Officials 11
C. The Officers Were "Off Duty" When Directed by the State Prosecutor 12
**VII. Qualified Immunity Does Not Bar Plaintiff's Claims** 12
A. The Statute Bars Immunity and Good Faith Defenses for Non-Judicial Officers 12
B. The "Suspect Exception" Does Not Apply Because the Warrants Were Void Ab Initio 13
C. The Defendants Knew Soper Was Press 13
D. The Federal Defendants Have Not Met Their Threshold Burden of Showing They Acted Within the Scope of Their Discretionary Authority 14
1. The Scope-of-Authority Exception to Qualified Immunity 14
2. The Federal Defendants Have Not Met Their Initial Burden 15
3. The "Private Persona" Principle 16
4. The SAC's Ultra Vires Allegations Are Accepted as True on a Motion to Dismiss 16
**VIII. VHA Directive 1078 Supports the Plaintiff's Position** 17
A. The Directive Does Not Prohibit Veteran Recording 17
B. The Defense Mischaracterizes the Directive 17
**IX. The Record** 18
A. Factual Corrections to the Defense's Recitation 18
1. The Probation Period Was 8 Months, Not 18 Months 18
2. The Phone Was Seized from Plaintiff's Wife Under Threat of Arrest, Not from Soper 18
3. The Phone Warrant Was Issued After the Phone Was Unlawfully Confiscated 19
4. The "Assimilative Crimes Act" Was Invoked Improperly 19
5. The Motion Contains Shifting and Contradictory Factual Characterizations of the Phone Seizure 19
B. The Phone Seizure Supports Malice 20
C. Defamation 20
D. False Imprisonment 21
E. Malicious Prosecution — Favorable Termination 21
F. Intentional Infliction of Emotional Distress 22
G. Civil Conspiracy 22
H. Non-Controlling Authority Cited by the Defense 22
**X. The Pending Habeas Proceeding** 23
**XI. In the Alternative, the Motion for Summary Judgment Should Be Denied as Premature** 23
**XII. Discovery Will Expose the Conspiracy and Animus** 24
**XIII. Conclusion** 24

# I. Introduction

The Federal Defendants, Captain Willie Farrar and Sergeant Dale Money, both VA police officers, have filed a boilerplate motion that fundamentally mischaracterizes the Second Amended Complaint ("SAC"). The Motion treats this case as a routine Bivens action arising from federal officers acting under color of federal authority. It is not. The SAC alleges that Farrar and Money acted ultra vires, outside the scope of their federal employment, and under color of state law, at the direction of a Maryland state prosecutor, to obtain state warrants from a Maryland state judge for a state criminal prosecution. No federal statute, regulation, or policy authorized their conduct.

The Motion's central mischaracterization is its assertion that "Plaintiff has alleged that the tortious conduct by Farrar and Money occurred within the scope of their employment." (ECF No. 52-1, at 20.) This is the opposite of what the SAC alleges. The SAC expressly states that Farrar and Money were "acting outside the scope of their authority as federal officers" (SAC ¶ 13) and that they "completely disregarded their statutory directive to 'first consult with the local Federal Assistant Attorney BEFORE proceeding with ANY prosecution." (SAC ¶ 13.) The entire basis of the claims against them is that they could not have been acting within the scope of their employment because their own policies, federal statutes, and Maryland law prohibited their actions.

The Motion also fails to address the most basic threshold issue: no Westfall Act certification was made. Without a certification by the Attorney General (or the delegated United States Attorney) that the officers were acting within the scope of their employment, the FTCA substitution mechanism does not apply, and the officers remain as individual defendants.

Finally, the Motion ignores that the SAC's claims against the Federal Defendants are narrowly focused on the ultra vires warrant actions, the obtaining of void state warrants and the unlawful seizure of Plaintiff's phone. The SAC does not extend to the State's obtaining of indictments(which supersede the probable cause finding of the warrants), the criminal prosecution following those indictments, or sentencing. The Defense's repeated references to "conviction" and "prosecution that resulted in conviction" conflate the scope of the SAC's claims against the Federal Defendants with the broader prosecution.

Plaintiff is a disabled veteran with service-connected PTSD whose ongoing medical treatment is now being provided outside of the VA system because of the Federal

Defendants' actions alleged here. The SAC's claims are viable and the Motion should be denied.

## II. Standard of Review

On a motion to dismiss under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true, and... construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. U.S., 120 F.3d 472, 474 (4th Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts hold pro se pleadings to "less stringent standards than a formal pleading drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The Federal Defendants' Motion is also brought in the alternative as one for summary judgment under Rule 56. Summary judgment is appropriate only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court cannot resolve disputed factual issues on summary judgment, and "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. As demonstrated below, the Defense's Motion presents material issues of fact that preclude summary judgment.

Critically, the Defense's Motion relies on extrinsic facts, including the outcome of the state criminal appeal, the length of probation, and the circumstances of the phone seizure, that contradict the SAC's allegations and cannot be resolved at the pleading stage. Where the Defense relies on matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 12(d), and the court must afford Plaintiff a reasonable opportunity to present opposing evidence.

## III. The Defense Mischaracterizes the SAC's Core Allegation - Officers Acted Ultra Vires and Under Color of State Law, Not Within the Scope of Federal Employment

The Defense's Motion rests on a fundamental misreading of the SAC. The Motion asserts that "Plaintiff has alleged that the tortious conduct by Farrar and Money occurred within the scope of their employment, even though he brought those claims

individually." (ECF No. 52-1, at 20.) This is simply not alleged. The SAC alleges the exact opposite, that Farrar and Money were "acting outside the scope of their authority as federal officers" (SAC ¶ 13) and that they "completely disregarded their statutory directive to 'first consult with the local Federal Assistant Attorney BEFORE proceeding with ANY prosecution.'" (SAC ¶ 13.)

The SAC's allegations are clear and specific:

- Farrar and Money "went straight to a Maryland Judge to obtain an arrest warrant upon Sgt. Money's sworn affidavit." (SAC ¶ 13.)
- They acted "outside the scope of their authority as federal officers" and "conspired with Defendant Robert Sentman to initiate a state criminal prosecution against the Plaintiff in the Circuit Court for Cecil County, Maryland." (SAC ¶ 13.)
- The arrest warrant they obtained was "void ab initio" because, "[a]s federal law enforcement officers, Defendants Farrar and Money possessed no statutory authority under either Maryland law or federal law to seek or obtain a state-law warrant from a Maryland court." (SAC ¶ 46.)
- The search warrant for the phone was "void ab initio for the same reason the arrest warrant was void." (SAC ¶ 55.)

The Defense quotes selectively from the SAC but ignores these core allegations. For example, the Defense quotes the SAC's statement that Farrar and Money "secured an invalid arrest warrant" and that "his phone was seized from his wife" (ECF No. 52-1, at 2), but omits the SAC's express allegation that they acted "outside the scope of their authority as federal officers." The Defense also quotes 38 U.S.C. § 902(a)(1)(E) to argue that VA police may "conduct investigations, on and off Department property," but ignores that the SAC alleges they did far more than investigate, they sought and obtained state court warrants for a state criminal prosecution, conduct that no federal statute authorizes.

The Motion's argument depends on the premise that the officers acted within the scope of their federal employment. The SAC alleges the opposite. On a motion to dismiss, the court must accept the SAC's well-pleaded allegations as true, including the allegation that the officers acted ultra vires. The Defense cannot simply contradict the SAC's allegations and ask the court to accept the Defense's characterization instead.

Moreover, the SAC does not allege that Plaintiff contests the authority of his arrest based on the warrants, even though they were issued ultra vires. The officer who arrested Plaintiff with the arrest warrant is not named in the suit, as Plaintiff believes that officer acted in good faith in its execution. The problem arose when Farrar confiscated a phone from Plaintiff's wife **after** Plaintiff was arrested, claiming the confiscation was (1) "incident to arrest" even though the phone was taken from his wife under threat of arrest, and (2) that Plaintiff was being prosecuted under the "Assimilative

Crimes Act," which would never apply to a state prosecution. This display of both a lack of training and ill intent further supports the SAC's allegation that the officers acted outside the scope of their federal authority.

## IV. No Westfall Act Certification Was Made - the FTCA Argument Fails

### A. The Statutory Requirement

The Westfall Act provides that "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the action "shall be deemed an action against the United States" and "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The Attorney General has delegated this certification authority to the United States Attorney for the relevant district. See 28 C.F.R. § 15.4(a); Goldstein v. Moatz, 364 F.3d 205, 210 n.6 (4th Cir. 2004).

The certification is a prerequisite for FTCA substitution. As the Supreme Court held in Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995), the scope-of-employment certification is subject to judicial review. Without it, the federal employee remains the proper defendant. See also Ware v. Doane, 227 F. Supp. 2d 169 (D. Me. 2002) (In addition, upon certification 'the employee is dismissed from the action and the United States is substituted as defendant.' Conversely, if the certification is overruled, then immunity for the federal employee will not arise, the United States will not be substituted as the party defendant).

### B. No Certification Was Filed

The Defense's own Motion makes no certification that Farrar and Money were acting within the scope of their employment. The Defense asserts that "Soper's Second Amended Complaint contains allegations that only support the conclusion that both VA law enforcement officers were acting within the scope of their employment when they made an arrest and seizure of evidence based on judicially-issued warrants." (ECF No. 52-1, at 20.) But the Defense's assertion is not a certification, and the SAC does not support it. The SAC alleges the opposite, that the officers acted ultra vires and under color of state law.

Without a Westfall Act certification, the FTCA substitution mechanism does not apply. The officers remain as individual defendants, and the Defense's argument that the tort claims "should have been brought against the United States under the FTCA" fails at the threshold.

### C. Ultra Vires Conduct Cannot Be Within the Scope of Employment

Even if a certification had been filed, it would be subject to challenge because the SAC alleges ultra vires conduct. As the Fourth Circuit explained in Goldstein v. Moatz, "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions... His actions are ultra vires his authority and therefore may be made the object of specific relief." 364 F.3d at 222 (quoting Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689 (1949)).

The SAC alleges that Farrar and Money acted beyond their statutory authority under 38 U.S.C. § 902 and 38 C.F.R. § 1.218 by seeking state warrants from a Maryland court under false pretenses. Their conduct was ultra vires. Accordingly, even if the United States Attorney attempted to certify scope of employment, the certification would be subject to challenge on the ground that the officers' actions exceeded their statutory authority.

### D. What Federal Interest Supports Representing Employees Acting as Private Citizens?

Plaintiff was surprised that the United States Attorney's Office, rather than private counsel, appeared on behalf of Defendants Farrar and Money, given the SAC's express allegations that they acted under color of state law and ultra vires. The United States Attorney's Office typically represents federal employees when they are acting within the scope of their employment. The appearance of federal counsel without a Westfall Act certification creates an inherent tension: the government is effectively asserting scope of employment through its appearance, yet has not submitted to the statutory certification process and its judicial review.

If the VA Police, acting as private citizens with no federal authority, went off of VA property and maliciously wrote a Federal Ordinance Violation for Disorderly Conduct in a road rage incident, while wearing their VA Police uniform, would the Federal Government defend them against suit then as well? The victim might have accepted the Violation initially because they saw a police uniform, but the officers were acting outside any federal authority. The same principle applies here: the officers' federal employment status does not transform ultra vires conduct into within-scope conduct merely because they wore their uniforms or asserted a falsified authority.

## V. The Bivens Arguments Are Inapposite - the SAC Alleges Color of State Law, Not Federal Law

### A. The SAC's Theory Is State Action, Not Federal Action

The Defense spends the majority of its brief arguing that no Bivens remedy exists for the claims alleged. But the Defense's Bivens analysis addresses the wrong legal framework. Bivens applies to federal officers acting under color of **federal** authority. The SAC alleges that Farrar and Money acted under color of **state** law, at the direction of a Maryland state prosecutor, in concert with state officials, to obtain state warrants from a state judge for a state criminal prosecution.

Section 1983 applies to "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives a person of constitutional rights. 42 U.S.C. § 1983. The Defense correctly notes that "§ 1983 only provides a cause of action for violations committed by state actors; it does not apply to the actions of federal officials." (ECF No. 52-1, at 6) (citing Tun-Cos v. Perrotte, 922 F.3d 514, 520 (4th Cir. 2019)). But that is not the end of the analysis. The question is whether the federal officers, by conspiring with state officials and acting outside their federal authority, became "private persons" acting under color of state law.

### B. VA Police Acted as Private Persons Under Color of State Law

In United States v. Price, 383 U.S. 787 (1966), the Supreme Court established that a private person who is a "willful participant in joint activity with the State or its agents" is acting under color of state law. As the Court held: "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." Id. at 794.

This principle extends to a federal officer who conspires with or acts in concert with state officials outside the scope of federal authority. The SAC alleges that Farrar and Money, acting outside the scope of their federal employment, conspired with State Prosecutor Sentman, who was acting in his investigative capacity, to obtain state warrants. Having no federal authority to do so, the VA Police were acting as private persons under color of state law, as defined by United States v. Price and Maryland law. Multiple courts have applied this principle to hold that private persons who conspire with state officials act under color of state law for purposes of § 1983. See, e.g., Sparkman v. McFarlin, 601 F.2d 261, 265 (7th Cir. 1979) ("Private persons are acting under color of law and may be sued under section 1983 when they conspire or participate in joint activity with state officials in prohibited conduct."); Verdi v. City of Philadelphia, 553 F. Supp. 334, 339 (E.D. Pa. 1982) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.").

### C. The "Willful Participant" Doctrine Applies Here

The SAC alleges specific facts demonstrating that Farrar and Money were willful participants in joint activity with state officials:

- State Prosecutor Sentman, acting in an investigative capacity, "advised and directed Defendants Farrar and Money to seek an arrest warrant from the state court." (SAC ¶ 14.)
- Farrar and Money "went straight to a Maryland Judge to obtain an arrest warrant upon Sgt. Money's sworn affidavit." (SAC ¶ 13.)
- The VA Police report itself documents Sentman's direction to the VA officers, providing direct evidence of the conspiratorial agreement. (SAC ¶ 88.)
- Farrar and Money later provided key testimony against Plaintiff at the state trial, further demonstrating their participation in the state prosecution. (SAC ¶ 89, 102.)

These allegations, accepted as true on a motion to dismiss, establish that Farrar and Money were willful participants in joint activity with the State of Maryland, rendering them "private persons" acting under color of state law for purposes of § 1983.

### D. No Memorandum of Understanding Exists

The VA Police Defendants cannot produce a Memorandum of Understanding ("MOU") or any contractual evidence that they were acting with the State of Maryland. This is significant because an MOU is one of the few exceptions where the State allows federal officers like VA Police to have any jurisdiction beyond that of a private citizen. The VA Police were effectively "off duty" when they were directed by Farrar and the State Prosecutor in his investigative capacity to obtain the two warrants. Without an MOU, the officers had no authority to act in a state capacity, and their conduct falls outside the scope of their federal employment.

### E. 38 U.S.C. § 901 and § 902 Limit VA Police Authority to Department Property

The statutory framework confirms that VA police authority is geographically limited. As the Federal Circuit explained in Preminger v. Secretary of Veterans Affairs, 498 F.3d 1265 (Fed. Cir. 2007):

> "We begin the forum analysis with 38 U.S.C. § 901, the statute pursuant to which the Secretary promulgated the regulation at issue. As already seen, it states that '[t]he Secretary shall prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on Department property.' 38 U.S.C. § 901(a)(1). The statute defines 'Department property' to mean 'land and buildings that are under the jurisdiction of the Department and are not under the control of the Administrator of General

> Services.' Id. § 901(a)(2). Consistent with the statutory charge, section 1.218 states, in relevant part, that its rules and regulations 'apply at all property under the charge and control of the VA (and not under the charge and control of the General Services Administration).' 38 C.F.R. § 1.218(a). The parties agree that VA Medical Centers, such as the Menlo Park Medical Center, constitute 'property under the charge and control of the VA.'"

Id. at 1272. The Defense cites 38 U.S.C. § 902(a)(1)(E) to argue that VA police may "conduct investigations, on and off Department property." But investigating is not the same as obtaining state court warrants and initiating a state criminal prosecution. Section 902 authorizes investigations "consistent with agreements or other consultation with affected Federal, State, or local law enforcement agencies." 38 U.S.C. § 902(a)(1)(E). No such agreement existed here. The VA Handbook 0730/3 cited by the Defense states that VA police officers "have the authority to enforce Federal laws and VA regulations with respect to acts occurring on Department property, to arrest persons on Department property for offenses committed on that property, and to make arrests on warrants issued by competent judicial authority." (ECF No. 52-1, at 17.) But obtaining state warrants from a Maryland judge for a state prosecution is not "enforcing Federal laws and VA regulations" or making "arrests on warrants issued by competent judicial authority", it is initiating a state criminal case, which no federal statute authorizes.

### F. The Defense's Bivens Analysis Addresses the Wrong Legal Framework

The Defense's extensive Bivens analysis - addressing "new contexts," "special factors," and the Supreme Court's reluctance to extend Bivens - is inapposite. The SAC does not seek a Bivens remedy for conduct under color of federal law. That is the reason that the Second Amended Complaint was introduced, it re-assigned the prior Biven's Claims. It seeks § 1983 relief for conduct under color of state law. The Defense's argument that "§ 1983 claims cannot be alleged against federal officials" (ECF No. 52-1, at 6) is correct as far as it goes, but it does not address the situation where federal officials step outside their federal role and act as private persons in concert with state officials. Under United States v. Price, such conduct is actionable under § 1983.

The Defense's Bivens arguments, under these facts, should be disregarded. The SAC does not rely on Bivens for its core theory of liability; it relies on § 1983 and state law. The Bivens analysis in the Motion addresses a legal framework that the SAC does not invoke for the primary claims against Farrar and Money.

## VI. The § 1983 Claims Are Properly Alleged Against Farrar and Money

### A. Federal Officers Acting Under Color of State Law Are Subject to § 1983

The Defense argues that "§ 1983 only provides a cause of action for violations committed by state actors; it does not apply to the actions of federal officials." (ECF No. 52-1, at 6) (citing Tun-Cos v. Perrotte, 922 F.3d 514, 520 (4th Cir. 2019)). This is a correct statement of law as applied to federal officials acting within the scope of their federal authority. But it does not address the situation where federal officials act outside the scope of their federal authority and in concert with state officials. In that scenario, the federal officials become "private persons" acting under color of state law under the United States v. Price doctrine. 383 U.S. 787, 794 (1966).

As discussed in Section V, the SAC alleges specific facts demonstrating that Farrar and Money were willful participants in joint activity with State Prosecutor Sentman. The SAC alleges that Sentman "advised and directed Defendants Farrar and Money to seek an arrest warrant from the state court" (SAC ¶ 14) and that the VA Police report documents this direction (SAC ¶ 88). These allegations, accepted as true, establish that Farrar and Money acted under color of state law, not federal law.

### B. The SAC Alleges a Conspiracy with State Officials

Count II of the SAC alleges a conspiracy under 42 U.S.C. § 1985 involving Defendants Farrar, Money, and Sentman. The SAC sets forth that "[t]he object of the conspiracy was to punish and deter the Plaintiff from exercising his rights under the First and Fourth Amendments" and that "[i]n furtherance of the conspiracy, the Defendants committed overt acts, including but not limited to, agreeing to initiate a baseless state prosecution, obtaining 2 void arrest warrants, and pursuing the charges against the Plaintiff." (SAC ¶¶ 29-30.)

The Defense argues that the § 1985 claim fails because the SAC does not allege class-based discriminatory animus. (ECF No. 52-1, at 18-19.) This argument misconstrues the unique statutory rights at issue and overlooks the well-pled facts of the SAC.

First, the SAC explicitly alleges that the conspiracy was motivated by targeted animus against Plaintiff's fundamental First Amendment constitutional activities as a citizen journalist (SAC ¶ 12). Defendants Farrar and Money were "motivated by personal animus toward Plaintiff's protected First Amendment activities" (SAC ¶ 12), and the subsequent bad-faith prosecution was weaponized "to punish and deter the Plaintiff from exercising his rights under the First and Fourth Amendments." (SAC ¶ 29.) Where a conspiracy is specifically designed to systematically target the exercise of fundamental constitutional liberties on public property, the animus is directed at the class of citizens actively exercising those fundamental rights.

Furthermore, the defense ignores that this incident did not occur in a vacuum; it occurred entirely on federal Veterans Affairs (VA) property, where Plaintiff possessed a

distinct, binding statutory right to be present to receive federal healthcare benefits. Under 42 U.S.C. § 1985(3), a plaintiff must show they were deprived of "exercising any right or privilege of a citizen of the United States." Unlike a general, unprotected political or economic group, military veterans possess a federally created, unique statutory status with concrete entitlements protected by federal law. By conspiring to strip an individual of a federally protected statutory entitlement on the very property dedicated to providing it, the Defendants demonstrated an invidious animus tailored to that status. Because a court reviewing a Rule 12(b)(6) motion must "accept the well-pled allegations of the complaint as true, and . . . construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff," *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997), Plaintiff has sufficiently alleged a deprivation of a federal right under § 1985(3) to survive dismissal.

In the alternative, should this Court find that Plaintiff's allegations under 42 U.S.C. § 1985(3) are technically deficient regarding the precise definition of a protected class, Plaintiff respectfully requests leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to clarify the conspiracy elements under the appropriate federal civil rights vehicles.

### C. The Officers Were "Off Duty" When Directed by the State Prosecutor

The SAC alleges that Farrar and Money were directed by State Prosecutor Sentman in his investigative capacity to obtain the two warrants. At that point, they were acting at the direction of a state official, outside any federal chain of command, and without a Memorandum of Understanding or any other contractual authorization to act with the State. The officers were effectively "off duty" in their federal capacity when they pursued the state warrants. Their conduct was that of private persons acting under color of state law, not federal officers acting under federal authority.

## VII. Qualified Immunity Does Not Bar Plaintiff's Claims

### A. The Statute Bars Immunity and Good Faith Defenses for Non-Judicial Officers

The Defense argues that Farrar and Money enjoy qualified immunity from all of Plaintiff's constitutional and civil rights claims, including Count 7, the Privacy Protection Act claim. (ECF No. 52-1, at 15-16.) But the PPA contains an express statutory bar on immunity defenses for non-judicial officers.

42 U.S.C. § 2000aa-6(c), titled "Official immunity," provides:

> "The United States, a State, or any other governmental unit liable for

> violations of this chapter under subsection (a)(1), may not assert as a defense to a claim arising under this chapter the immunity of the officer or employee whose violation is complained of or his reasonable good faith belief in the lawfulness of his conduct, except that such a defense may be asserted if the violation complained of is that of a judicial officer."

This statute **explicitly bars** both qualified immunity and good faith defenses for PPA claims against non-judicial officers. Farrar and Money are not judicial officers. The Defense's qualified immunity argument under Section IV.C of its Motion is inapplicable to Count 7. As the statutory text confirms, the "immunity of the officer or employee" and "his reasonable good faith belief in the lawfulness of his conduct" are not available defenses.

### B. The "Suspect Exception" Does Not Apply Because the Warrants Were Void Ab Initio

The Defense argues that Plaintiff falls within the PPA's "suspect exception," which applies when "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1). But this exception presupposes a valid probable cause determination. The SAC alleges that the warrants were void ab initio because the officers lacked any statutory authority to seek them. (SAC ¶¶ 46-47, 55.) If the warrants were void, there could be no valid probable cause determination supporting them.

Moreover, the "suspect exception" was designed to protect "innocent third parties in possession of documents and papers from governmental intrusions which would unnecessarily subject their files and papers to search and seizure." S.H.A.R.K. v. Metro Parks Serving Summit County, 499 F.3d 553, 567 (6th Cir. 2007) (quoting S. Rep. 96-874, at 14 (1980)). Plaintiff was not an innocent third party, he was the target. But the exception requires probable cause, and the SAC alleges the warrants were void for lack of authority. The Defense's argument assumes the validity of the warrants, which is the very question at issue.

### C. The Defendants Knew Soper Was Press

The SAC alleges that Farrar and Money were aware of Plaintiff's status as a citizen journalist at the time they sought the warrant and conducted the search. (SAC ¶ 65.) This awareness is confirmed by the warrant application itself, which states: "It is known to the Veteran's Affairs Police Department that Soper films himself while interacting with the public and posts the interactions on his you tube channel."

The Defendants were clearly aware of Mr. Soper's publishing activities. They would

have known, before the warrant was issued, that he had over 39,000 subscribers. Mr. Soper is "media" and deserved the protections afforded by the PPA. The fact that the Defendants knowingly seized the phone of a publisher, while admitting in the warrant application that his videos were publicly available on YouTube, supports the inference that the seizure was motivated by malice toward his protected press activities, not by a genuine investigative need. The information they sought was already publicly available. In other words, they assumed for purpose of malice to take his phone from her.

**D. The Federal Defendants Have Not Met Their Threshold Burden of Showing They Acted Within the Scope of Their Discretionary Authority**

Even apart from the PPA's statutory bar, qualified immunity is unavailable to Farrar and Money for a more fundamental reason: they have not met, and cannot meet, their threshold burden of demonstrating that they were acting within the scope of their discretionary authority when they sought the state warrants and seized Plaintiff's phone.

**1. The Scope-of-Authority Exception to Qualified Immunity**

The Fourth Circuit has squarely held that an official who acts beyond the scope of his discretionary authority is not entitled to qualified immunity. In In re Allen, 106 F.3d 582, 593 (4th Cir. 1997), the court stated:

> "We hold, therefore, that an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983."

The Fourth Circuit further established that the **burden is on the defendant** to demonstrate that the challenged conduct falls within the scope of his duties:

> "Before permitting an official to claim qualified immunity a court must determine that the official's acts were not clearly established to be beyond the scope of his authority. The defendant official bears the burden of demonstrating that the conduct of which the plaintiff complains 'falls within the scope of the defendant's duties.'"

Id. at 593 (emphasis added). This burden-shifting framework requires the defendant to first establish that he was acting within his discretionary authority before the burden shifts to the plaintiff to show a violation of clearly established law.

The Supreme Court established the foundation for this principle in Butz v. Economou, 438 U.S. 478, 495 (1978), holding that qualified immunity does not "abolish the liability of federal officers for actions manifestly beyond their line of duty." The Fourth Circuit in In re Allen drew directly on this Supreme Court precedent and common law principles, explaining that "it was well recognized at common law that a government official who

exceeded his authority enjoyed no immunity." In re Allen, 106 F.3d at 592; accord Johnson v. Phillips, 664 F.3d 232, 237 (8th Cir. 2011) (adopting In re Allen and citing Butz v. Economou for the proposition that qualified immunity does not protect actions "manifestly beyond their line of duty").

As the Eleventh Circuit has articulated the framework: "To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998); accord Estate of Cummings v. Davenport, 906 F.3d 934, 940 (11th Cir. 2018).

The reason for this threshold burden is straightforward: an official acting completely outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." Harbert, 157 F.3d at 1281.

**2. The Federal Defendants Have Not Met Their Initial Burden**

The Federal Defendants have not, and cannot, demonstrate that their conduct in seeking state warrants from a Maryland court fell within the scope of their discretionary authority. To the contrary, the SAC alleges that:

- 38 U.S.C. § 901 limits VA police authority to the "maintenance of law and order and the protection of persons and property on Department property." 38 U.S.C. § 901(a)(1). "Department property" means "land and buildings that are under the jurisdiction of the Department." Id. § 901(a)(2).
- 38 C.F.R. § 1.218(a) confirms that VA police rules "apply at all property under the charge and control of the VA (and not under the charge and control of the General Services Administration)."
- The Federal Circuit in Preminger v. Secretary of Veterans Affairs, 498 F.3d 1265, 1272 (Fed. Cir. 2007), confirmed this geographic limitation, noting that the statute "states that “the Secretary shall prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on Department property.”
- The VA Handbook 0730/3, cited by the Defense itself, states that VA police officers "have the authority to enforce Federal laws and VA regulations with respect to acts occurring on Department property, to arrest persons on Department property for offenses committed on that property, and to make arrests on warrants

issued by competent judicial authority." (ECF No. 52-1, at 17.) Seeking state arrest and search warrants from a Maryland judge for a state criminal prosecution is not "enforcing Federal laws and VA regulations" or making arrests "on warrants issued by competent judicial authority", it is initiating a state criminal case, which no federal statute authorizes.

- No Memorandum of Understanding ("MOU") or other contractual authorization exists permitting the VA Police to act in a state law enforcement capacity. An MOU is one of the few exceptions where the State allows federal officers like VA Police to have any jurisdiction beyond that of a private citizen. Without an MOU, the officers had no authority to act in a state capacity.

Because 38 U.S.C. § 901 and 38 C.F.R. § 1.218 limit VA police authority to Department property and the enforcement of federal laws and VA regulations, and because no MOU exists authorizing state law enforcement activity, the conduct alleged in the SAC, seeking state warrants from a Maryland court, conspiring with a state prosecutor, and initiating a state criminal prosecution, is "clearly established to be beyond the scope of their discretionary authority." In re Allen, 106 F.3d at 593. The Federal Defendants have not met their threshold burden. The qualified immunity analysis never reaches the second prong (whether the conduct violated clearly established law).

**3. The "Private Persona" Principle**

When a government official acts beyond the scope of his authority, he retains his "private persona" and is not entitled to qualified immunity any more than a private person would be. The logical underpinnings of this rule are well-recognized across the federal judiciary. As Judge Hartz observed when evaluating the national consensus, “These decisions find support in the intuition that a public official still has a private persona and when acting in that capacity the official should not be protected by qualified immunity any more than a private person would be... The scope-of-authority exception provides a natural place to draw the line between an official's two personas.' Stanley v. Gallegos, 852 F.3d 1210, 1221-22 (10th Cir. 2017) (Hartz, J.) (noting that over half the circuit courts of appeal recognize a scope-of-authority exception, explicitly citing In re Allen).

**4. The SAC's Ultra Vires Allegations Are Accepted as True on a Motion to Dismiss**

On a motion to dismiss, the court must accept the SAC's well-pleaded allegations as true, including the allegation that the officers acted "outside the scope of their authority as federal officers." (SAC ¶ 13.) The Defense cannot simply assert that the officers were acting within their discretionary authority and ask the court to disregard the SAC's contrary allegations. Under In re Allen, the burden is on the defendants to demonstrate that their conduct falls within the scope of their duties, and they have not done so.

Moreover, the SAC alleges that the officers acted "ultra vires" and against their own policies and federal statutes, and that they lied on the warrant affidavit regarding their authority. (SAC ¶¶ 13, 46-47, 55.) These allegations, accepted as true, establish that the officers' conduct was "manifestly beyond their line of duty" within the meaning of Butz v. Economou, 438 U.S. at 495, and "clearly established to be beyond the scope of their discretionary authority" within the meaning of In re Allen, 106 F.3d at 593.

Qualified immunity is unavailable to Farrar and Money.

## VIII. VHA Directive 1078 Supports the Plaintiff's Position

### A. The Directive Does Not Prohibit Veteran Recording

The Defense attached VHA Directive 1078 as Exhibit A, arguing that it does not permit Soper to record without consent. (ECF No. 52-1, at 16.) But the Directive's own Purpose section directly contradicts the Defense's position. It states:

> "**NOTE:** This policy specifically does not address Veterans, patients or their family members from recording providers or employees without their permission as no federal statute or regulation prohibits such action."

VHA Directive 1078, ¶ 1 (Nov. 29, 2021) (ECF No. 52-2, at 5). This language is unambiguous: the Directive does not prohibit veterans, patients, or their family members from recording providers or employees without permission. The Defense's argument that "Nowhere does that policy permit Soper to record without the consent of the person being recorded" (ECF No. 52-1, at 16) turns the Directive on its head. The Directive's purpose is to regulate what VA workforce members may record, not what veterans may record. The Directive expressly acknowledges that "no federal statute or regulation prohibits" veterans from recording without permission.

The Defense also argues that "There is no 'VA Policy 1078.'" (ECF No. 52-1, at 16.) But the Defense attached VHA Directive 1078 as its own Exhibit A, thereby acknowledging its existence and relevance. The Directive's transmittal sheet shows it was issued November 29, 2021, and rescinded the prior version, VHA Directive 1078(1), dated November 4, 2014. (ECF No. 52-2, at T-1.) The SAC's reference to "VA Policy 1078" is a reasonable shorthand for VHA Directive 1078, and the Defense's semantic argument is without merit.

### B. The Defense Mischaracterizes the Directive

The Defense states that the Directive "is directed to VA healthcare providers and employees as to what they can record within a VA medical center and which recordings

are permissible." (ECF No. 52-1, at 16.) This is correct as far as it goes, the Directive governs the VHA workforce. But the Defense ignores the critical Note in the Purpose section that expressly states the policy "does not address" veterans recording providers without permission because "no federal statute or regulation prohibits such action." The Defense, like the Maryland Appellate Court, ignores the purpose and veracity of Directive 1078. The Directive's own text defeats the Defense's argument that Soper's recording was unlawful.

The Directive expressly acknowledges that 'no federal statute or regulation prohibits' veterans from recording without permission, negating any theory of an expectation of privacy for the very employees the veteran Plaintiff recorded. If no federal statute or regulation prohibits the recording, then the VA employees being recorded cannot claim that the recording violated any law or regulation that would create a legally protected privacy interest. The Directive's express acknowledgment undermines the entire premise of the prosecution, that Soper's recording was unlawful, and supports the SAC's allegation that the prosecution was motivated by personal animus rather than any legitimate legal basis.

## IX. The Record

### A. Factual Corrections to the Defense's Recitation

The Defense's factual background contains several errors that must be corrected:

**1. The probation period was 8 months, not 18 months.** The Defense states that "the court sentenced Soper to eight concurrent sentences of 90 days, all of which were suspended in favor of 18 months of supervised probation." (ECF No. 52-1, at 2.) This is incorrect. The SAC alleges "eight (8) months of supervised probation." (SAC ¶ 20.) The probation period was originally set at 8 months, a fact confirmed in the State case when the State attempted to levy a "violation of probation" charge against the Plaintiff but failed due to the probationary period being set at 8 months. When the State received supporting documents regarding the 8-month probationary period, they dropped the VOP action.

**2. The phone was seized from Plaintiff's wife under threat of arrest, not from Soper.** The Defense states that "his phone was seized from his wife, who had possession of it." (ECF No. 52-1, at 2.) This omits the critical context: Defendant Farrar seized the phone from Plaintiff's wife under threat of immediate arrest. (SAC ¶ 12.) The seizure was not a voluntary surrender. The phone was not in Plaintiff's possession during his arrest, it was held by his wife. Farrar confiscated it from her by threatening to arrest her if she did not surrender it.

**3. The phone warrant was issued after the phone was unlawfully confiscated.** The timeline is critical. The phone was confiscated **before** a warrant was issued for its search. The phone warrant was issued after the phone was already unlawfully seized. This sequence supports the SAC's allegation that the seizure was a bad-faith act of retaliation, not a legitimate law enforcement action.

**4. The "Assimilative Crimes Act" was invoked improperly.** Farrar asserted that Plaintiff was being prosecuted under the "Assimilative Crimes Act," which would never apply to a state prosecution. The Assimilative Crimes Act, 18 U.S.C. § 13, assimilates state law into federal law for prosecutions in federal court for crimes committed on federal enclaves. It has no application to a state prosecution. Farrar's invocation of this statute demonstrates both a lack of training and ill intent, it was used as a pretext to justify the unlawful confiscation of the phone.

**5. The Motion Contains Shifting and Contradictory Factual Characterizations of the Phone Seizure.** The Defense's own Motion contains materially contradictory accounts of the phone seizure, which cannot be reconciled and present disputes of fact that preclude dismissal:

- On **page 1**, the Motion implies that the phone was seized from Mr. Soper, creating the impression that the seizure was incident to his arrest.
- On **page 2**, the Motion explicitly states that "his phone was seized from his wife, who had possession of it." (ECF No. 52-1, at 2.) This is a material dispute of fact. The phone was seized from Plaintiff's wife, who was standing nearby, under threat of arrest, not from Soper.
- On **page 3**, the Defense changes the facts again, stating: "According to Soper, Farrar and Money sought an arrest warrant from a state court and seized Soper's phone as part of his arrest." (ECF No. 52-1, at 3.) This implies the warrant was processed before the arrest, when in fact the phone was seized weeks before the phone warrant was issued. The chronology is inverted to make the seizure appear lawful.
- On **page 13**, the Defense compares the instant case to Annappareddy, stating that the officers "seized evidence with a warrant against him to continue his criminal prosecution." (ECF No. 52-1, at 13.) But no warrant existed for the phone at the time it was seized. The phone warrant was issued **after** the phone was already unlawfully confiscated.

These shifting factual characterizations, from "seized from Soper" (page 1) to "seized from his wife" (page 2) to "seized as part of his arrest" (page 3) to "seized evidence with a warrant" (page 13), demonstrate that the Defense cannot maintain a consistent account of the seizure. The contradictions themselves are material disputes of fact that preclude dismissal under Rule 12(b)(6) and summary judgment under Rule 56.

### B. The Phone Seizure Supports Malice

The circumstances of the phone seizure demonstrate malice and ill-will toward Plaintiff's protected press activities:

- The phone was confiscated from Plaintiff's wife after Plaintiff was already arrested, it was not incident to his arrest.
- Farrar claimed the confiscation was "incident to Soper's arrest," even though the phone was taken from his wife under threat of arrest.
- The Defendants admitted in the warrant application that they knew Soper published his videos to his YouTube channel, the information they sought was already publicly available.
- They assumed for purpose of malice to take his phone from her. The seizure had nothing to do with evidence the phone might contain, because the videos were already posted on YouTube.
- The phone warrant was issued after the phone was unlawfully confiscated, the warrant was a post hoc justification for an already-completed seizure.

These facts support the malice element for the tort claims and demonstrate that the seizure was motivated by animus toward Plaintiff's protected First Amendment activities, not by legitimate law enforcement needs.

### C. Defamation

The Defense argues that the statement that Soper was "convicted" was true. (ECF No. 52-1, at 22.) But the SAC alleges that these statements were made "during the pendency of the state appellate process" when "the proceedings were in an Appellate posture." (SAC ¶ 82.) The SAC also alleges more damaging statements, that Farrar and Money told local law enforcement that Soper was "dangerous to the public and police officers at large," which led to an armed tactical raid on Soper's home. (SAC ¶ 83.) The Defense does not address this allegation. The falsity of their statements in obtaining the warrants caused actual damages both financially and mentally.

The Defense also argues that the statements to law enforcement enjoy a "qualified privilege" under Maryland law. (ECF No. 52-1, at 22.) But qualified privilege is defeated by a showing of malice. The SAC alleges that the statements were made with malice, to portray Soper as dangerous and to provoke an armed response against him. The tactical raid on his home, with "an armored tactical vehicle, guns drawn and at ready and in military tactical gear" (SAC ¶ 83), demonstrates the foreseeable and actual harm caused by these false statements.

**D. False Imprisonment**

The Defense argues that the false imprisonment claim fails because Soper has not shown that Farrar and Money acted with "actual malice" or "without authority." (ECF No. 52-1, at 23.) But the SAC alleges that the warrants were void ab initio because the officers lacked statutory authority to seek them. (SAC ¶¶ 46-47.) If the warrants were void, there was no legal justification for the arrest and confinement. The SAC also alleges malice through the officers' personal animus toward Plaintiff's protected First Amendment activities (SAC ¶ 12), the improper invocation of the Assimilative Crimes Act, and the seizure of the phone from his wife under threat of arrest. These allegations are sufficient to survive a motion to dismiss.

**E. Malicious Prosecution - Favorable Termination**

The Defense argues that the malicious prosecution claim fails because Soper "was convicted on eight counts under the Wiretap Act" and "cannot establish the fourth element." (ECF No. 52-1, at 25-26.) But the Defense misapprehends the scope of the malicious prosecution claim against the Federal Defendants.

The VA Police Defendants' third reasoning rests on the State prosecutor obtaining two indictments to cover the malice shown by the known-to-them ultra vires warrants. The purpose of the warrants, including any legitimate assertion of probable cause, was abandoned by the Prosecutor when he obtained the indictments. The original basis for the prosecution was the "Disorderly Conduct" charge, which was the charge initially pursued based on the ultra vires warrants.

Critically, Plaintiff's "Disorderly Conduct" charge, the basis for the malicious prosecution from the start, was defeated in a jury trial. The jury found no probable cause that Plaintiff was disorderly. The jury's acquittal on the disorderly conduct charge constitutes a favorable termination as to that charge. The malicious prosecution claim is properly pled within the confines of the VA Police Defendants actions in obtaining two void warrants and Sentman's direction to do so.

The Defense relies on Candelero v. Cole, 831 A.2d 495 (Md Ct App. 2003), for the proposition that "malicious prosecution cannot be found where a plaintiff was convicted on one charge and all others were dropped." (ECF No. 52-1, at 25.) But Candelero does not control here. In Candelero, the plaintiff was convicted of one charge and the others were dropped, there was no acquittal. Here, Plaintiff was **acquitted** by a jury of the disorderly conduct charge, the charge that initiated the prosecution. A jury acquittal is a far stronger form of favorable termination than a dropped charge. The Defense's reliance on Candelero is misplaced.

### F. Intentional Infliction of Emotional Distress

The Defense argues that the IIED claim fails because the conduct was not "extreme and outrageous" and the emotional distress was not "severe." (ECF No. 52-1, at 26-27.) But the SAC alleges that Farrar and Money knowingly initiated a prosecution with two void warrants, specifically out of personal animus and malice, seized Plaintiff's phone from his wife under threat of arrest, and made false statements to local law enforcement that led to an armed tactical raid on his home. (SAC ¶¶ 122-124.) Plaintiff is a disabled veteran with service-connected PTSD whose ongoing treatment is now being provided outside of the VA system because of the Federal Defendants' actions.

The Defense compares this case to cases involving medical malpractice and employment disputes (ECF No. 52-1, at 26-27), but those cases are factually inapposite. The conduct alleged here, initiating a baseless prosecution with void warrants, seizing a journalist's phone under threat of arrest, and making false statements that provoked an armed raid on a disabled veteran's home, exceeds all possible bounds of decency.

### G. Civil Conspiracy

The Defense argues that the civil conspiracy claim fails because there is no viable underlying tort. (ECF No. 52-1, at 28.) But as demonstrated above, the underlying tort claims survive. The SAC alleges specific facts demonstrating a confederation between Farrar, Money, Sentman, and Notarcola to accomplish an unlawful purpose, the prosecution of Plaintiff on void state warrants for protected conduct on federal property. (SAC ¶¶ 85-90.) The civil conspiracy claim is viable.

### H. Non-Controlling Authority Cited by the Defense

The Defense relies on several non-controlling authorities:

- **McCullough v. Anne Arundel Cty., Md.**, No. 19-926, 2020 WL 836235 (D. Md. Feb. 20, 2020) - a District Court case, not controlling.
- **Rich v. United States**, 158 F. Supp. 2d 619 (D. Md. 2001) - a District Court case, not controlling.
- **Stutzman v. Krenik**, 350 F. Supp. 3d 366 (D. Md. 2018) - a District Court case, not controlling.
- **Sennett v. United States**, 778 F. Supp. 2d 655 (E.D. Va. 2011) - a District Court case, not controlling.
- **Stuart v. Lowe's Home Cntrs., LLC**, 737 F. App'x 278 (6th Cir. 2018) - a Sixth Circuit case, not controlling in the Fourth Circuit.(Unpublished)

While these cases may be persuasive, they are not binding on this Court. The Defense's reliance on them does not establish that the tort claims fail as a matter of law.

## X. The Pending Habeas Proceeding

The Defense repeatedly cites Soper's conviction as if it is final and unchallengeable. (ECF No. 52-1, at 1-2, 13, 25.) But there is a pending federal habeas corpus petition in this same court challenging that conviction. The Defense's reliance on the conviction as a barrier to the malicious prosecution claim, specifically the "termination in favor of the plaintiff" element, may be premature if the habeas petition succeeds.

The pending habeas proceeding also bears on the Defense's argument that "Soper was able to pursue appeals of his criminal conviction." The State Defendants' Motion similarly asserted that Soper was able to pursue appeals (ECF No. 44-1, at 11-12), but the SAC alleges that the appeal Plaintiff was deprived of was an interlocutory appeal to the full Circuit Court, which carried a 10-day filing deadline under Maryland Rules. Clerk Notarcola's backdating of the ruling by exactly ten days rendered that appeal untimely. Plaintiff's federal habeas corpus petition is now pending in this same court. The Defense's assumption that the conviction is final and unchallengeable is premature.

## XI. IN THE ALTERNATIVE, THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS PREMATURE

To the extent the Court considers the Federal Defendants' alternative request for summary judgment, it must be denied. "Conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); accord Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013) ("the second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery'"). The Fourth Circuit has warned that ruling on summary judgment before discovery is akin to "forcing the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).

No discovery has occurred in this case. The SAC alleges a conspiracy between federal officers and a state prosecutor, ultra vires conduct, misrepresentations on warrant affidavits, and personal animus toward Plaintiff's protected press activities, all of which require discovery to develop. The existence vel non of a Memorandum of Understanding between the VA Police and Maryland law enforcement, internal VA communications regarding the warrant applications, training records, and the timeline of the phone seizure relative to the warrant are all matters uniquely within the Defendants' control. Summary judgment on this record would be premature. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986) (summary judgment appropriate only "after adequate time for discovery").

Should the Court nonetheless convert the Motion to one for summary judgment, Plaintiff respectfully requests a stay pursuant to Fed. R. Civ. P. 56(d) to conduct the discovery necessary to oppose summary judgment.

## XII. Discovery Will Expose the Conspiracy and Animus

Discovery will likely expose more of the conspiracy between the State and the VA Police private actors and is also likely to disclose the animus by all the Defendants. The VA Police report, which documents State Prosecutor Sentman's direction to the VA officers to seek state warrants (SAC ¶ 88), is but one piece of evidence. Discovery may reveal additional communications between the VA officers and state officials, internal VA communications about the officers' authority (or lack thereof) to seek state warrants, and further evidence of the personal animus that motivated the prosecution.

The Defense's Motion for Summary Judgment is premature. The material factual disputes, whether the officers acted within the scope of their employment, whether they had authority to seek state warrants, whether an MOU existed, whether the phone seizure was motivated by malice, and whether the officers knew Soper was press, cannot be resolved without discovery. Summary judgment should be denied at this stage.

### XIII. Conclusion

For the foregoing reasons, the Federal Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 52) should be denied in its entirety.

1. The Motion mischaracterizes the SAC's core allegation. The SAC does not allege that the officers acted within the scope of their employment, it alleges the exact opposite: that they acted ultra vires and under color of state law.
2. No Westfall Act certification was made. Without certification, the FTCA substitution mechanism does not apply, and the officers remain as individual defendants.
3. The *Bivens* arguments are inapposite. The SAC alleges color of state law, not federal law. Under *United States v. Price*, 383 U.S. 787 (1966), the officers acted as private persons willfully participating in joint activity with state officials.
4. No Memorandum of Understanding exists authorizing the VA Police to act in a state capacity. The officers were effectively "off duty" when directed by the State Prosecutor to obtain the warrants.

5. 38 U.S.C. § 901 and § 902 limit VA police authority to Department property and the enforcement of federal laws and VA regulations. Seeking state warrants from a Maryland court is outside this authority.

6. Qualified immunity does not bar Plaintiff's claims. 42 U.S.C. § 2000aa-6(c) expressly bars immunity and good faith defenses for non-judicial officers on the PPA claim. More broadly, under In re Allen, 106 F.3d 582, 593 (4th Cir. 1997), and Butz v. Economou, 438 U.S. 478, 495 (1978), the Federal Defendants have not met their threshold burden of demonstrating that they acted within the scope of their discretionary authority, and their ultra vires conduct is "manifestly beyond their line of duty".

7. VHA Directive 1078 expressly states that it "does not address Veterans, patients or their family members from recording providers or employees without their permission as no federal statute or regulation prohibits such action."

8. The tort claims survive. The Defense's factual recitation contains errors (18 months vs. 8 months probation; phone seized from wife under threat of arrest, not from Soper; phone warrant issued after unlawful confiscation; improper invocation of the Assimilative Crimes Act).

9. The malicious prosecution claim satisfies the favorable termination element because Plaintiff was acquitted by a jury of the disorderly conduct charge, the charge that initiated the prosecution.

10. The non-controlling authorities cited by the Defense (McCullough, Rich, Stutzman, Sennett, and Stuart) are not binding on this Court.

11. A pending federal habeas corpus petition in this same court challenges the underlying conviction.

12. Discovery will likely expose more of the conspiracy and animus, and the Motion for Summary Judgment is premature.

13. Plaintiff incorporates and preserves all arguments from the SAC.

**Respectfully submitted,** [signature] 10/29/2026

Kevin A. Soper, Pro Se — Date

704 Cedarday Drive
Bel Air, Maryland 21015
newlifebearing@yahoo.com

# Certificate of Service

Plaintiff in the above captioned case hereby certifies and affirms that all parties appearing in this case were served the above "Plaintiff's Response to VA Police Defendants' Motion to Dismiss the Second Amended Complaint" electronically via the Court's ECF filing system.

**Signed(Plaintiff)** ____________________ 10/29/2026
**Kevin A. Soper** **Date**

704 Cedarday Dr
Belair, Md. 21015
newlifebearing@gmail.com